Robert S. Coldren, Esq., Bar No. 81710
C. William Dahlin, Esq., Bar No. 91269
Mark D. Alpert, Esq., Bar No. 138152
HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 Sandpointe, Fourth Floor
Santa Ana, California 92707
Telephone: (714) 432-8700
Facsimile:  (714) 546-7457

Attorneys for Plaintiff Surf and Sand, LLC

UNITED STATES DISTRICT COURT OF CALIFORNIA

NORTHERN DISTRICT OF CALIFORNIA

SURF AND SAND, LLC, a California Limited Liability Company,

    Plaintiff,

v.

CITY OF CAPITOLA; and DOES 1 through 100, inclusive,

    Defendants.

Case No.: C07 05043 RS

COMPLAINT FOR:
(1) VIOLATION OF CIVIL RIGHTS - EQUAL PROTECTION (42 U.S.C. § 1983);
(2) VIOLATION OF FIFTH AMENDMENT (PRIVATE TAKING);
(3) VIOLATION OF FIFTH AMENDMENT (FACIAL TAKING);
(4) VIOLATION OF CIVIL RIGHTS - DUE PROCESS (42 U.S.C. § 1983); and

REQUEST FOR JURY TRIAL

Plaintiff Surf and Sand, LLC, states and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this proceeding under 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 *et seq.* Surf and Sand further alleges this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

///

///

2. Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b) in that the named defendants are located within the Northern District, and the action arises out of events in Santa Cruz County.

## PARTIES

3. Surf and Sand, LLC ("Surf & Sand") is a California Limited Liability Company managed by Ronald Reed. Surf and Sand LLC owns and operates Surf and Sand Mobilehome Park (the "Park"), a mobilehome park located and doing business in the City of Capitola, County of Santa Cruz, California. Ronald Reed is the controlling principal of Surf & Sand.

4. Surf and Sand is informed and believes, and thereon alleges, that Defendant, City of Capitola (hereafter "Defendant" or "City") is and at all times mentioned herein, was a duly incorporated municipal corporation located within the State of California in the County of Santa Cruz.

5. Surf and Sand is informed and believes, and thereon alleges, that each of the Defendants named herein as Does 1 through 100, inclusive, were and are in some manner responsible for the acts, omissions and actions as hereafter alleged and for the harm or damage caused by Defendants to Surf and Sand and are, therefore, jointly and severally liable for and all damages or harm caused to Surf and Sand.

6. Surf and Sand is informed and believes, and thereon alleges, that at all times herein mentioned the Defendants, and each of them, including the fictitiously named Defendants, were the agents, employees or officers of each of the remaining Defendants, and, in doing the things hereafter alleged, were acting within the scope, course and purpose said agency or employment, and were acting within the apparent scope of said agency, employment and position and acted with the permission and consent of each of the remaining defendants.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

7. Surf and Sand MHP was built by the Reed family approximately 50 years ago and is still owned by the Reed family. The Park is located on some of the most

valuable ocean front property in America, in Santa Cruz County.

8. Until approximately 1981 the Park operated, without rent control, in unincorporated Santa Cruz County. In or about 1982, the County of Santa Cruz adopted a Mobilehome Rent Control Ordinance.

<u>The Capitola Rent Control Ordinance</u>

9. In the mid-1990s, the Park became part of the City of Capitola and therefore became subject to the City's already existing Rent Control Ordinance ("RCO"). The City initially adopted mobilehome rent control in 1979 and has had some form of mobilehome rent control continuously in place since that time. Since at least 1994, the Capitola Ordinance has limited annual "automatic" CPI adjustments to no more than sixty percent (60%) of the increase in the CPI.

10. In applying the RCO, the City has officially determined that the question or issue of whether application of the RCO causes a taking is "irrelevant" to its administrative rent increase process. Consistent with its interpretation and application of the RCO, the City has established that rent increases under the RCO will be based on the determination of whether the Park owner is earning a "fair return." There is no definition of that term and the standard does not consider the issue of whether the application of rent control has caused a taking.

11. The RCO specifies in Section 2.18.400 that:

"If such a distinction is relevant, fair rate of return shall be determined with reference to reasonable investment rather than property value."

12. In addition, Section 2.18.410 of the RCO specifies that:

"It will be presumed that application of this chapter and previous rent review ordinances has resulted in a fair rate of return. A park owner who believes that presumption can be overcome may apply to the city council for determination of the <u>minimum increase necessary to produce a fair rate of</u>

1  return." (emphasis added)

13. In Section 2.18.410, the RCO states:

"If the application is successful, rents shall be increased to the minimum amount necessary to produce a fair rate of return."

14. As a result, the RCO, by its explicit terms, prevents the City from considering the underlying value of the property in determining a rent increase and requires the City to keep rents at the lowest level possible that would provide a "fair return" on "reasonable investment," rather than account for the underlying value of the property or alternative uses.

15. Because the Reeds built the property many (50+) years ago, their actual investment, even adjusted for inflation, is a small fraction of the actual underlying, unregulated value of the property.

16. As a result of the statutory framework of the RCO, space rents have fallen further and further below fair market rents over time. Space rents are currently, on average, in the range of fifteen percent (15%) of fair market value.

17. The application of the RCO has forced Surf & Sand to bear the burden of a massive subsidy of space rent. The City and its RCO have deprived Surf & Sand of the vast majority of the value of the subject property.

18. In addition, residents of the Park have benefited from huge transfer premiums in the sale of home, representing a transfer of the underlying value of the property from park owner to tenants. Surf & Sand is informed and believes that when homes are sold in place, only a very small percentage – less than 10% - of the sale price represents the actual value of the home. The remainder is the "transfer premium" based on the value of discounted future rent. The RCO, as it has been interpreted and applied by the City, renders it impossible for the Park owner to receive a rent adjustment in an amount that will prevent this enormous subsidy from continuing to be borne by the Reeds and their park.

///

## The Capitola Park Closure Ordinance Is Adopted

19.  The City adopted a Park Closure Ordinance ("PCO") in or about 1993. The PCO specifies the procedures under which a Park owner can close a mobilehome park. The PCO specifies a burdensome closure procedure, which, among other things, requires Park owner to (1) provide an appraisal of every mobilehome by an appraiser selected by the City (2) pay for a relocation specialist approved by the City and, most importantly, (3) establishes proposed measures to "mitigate" the adverse impacts of a park closure upon the mobilehome park residents.

20.  The Park owner is required to provide a Relocation Impact Report ("RIR") to the City. Under the PCO, the City will not even consider the RIR until the applicant has submitted to the City both a draft RIR which applicant believes meets the requirements of Municipal Code Section 17.90.030, and a written statement that such draft RIR is being filed pursuant to Government Code Section 65863.7.

21.  The PCO requires a Park owner to pay "relocation costs" which include (1) paying the residents for the "value" of their mobilehome and paying the residents the cost of acquiring a comparable mobilehome or other comparable property. Because the application of the RCO has artificially inflated the "in place" value of mobilehomes in the City, the PCO effectively transfers the vast majority of the land value of the mobilehome from Plaintiff as the Park owner to the tenant. The cost of acquiring "alternative comparable housing" would require Plaintiff as the Park owner to pay the fair market value of acquiring comparable housing, the net effect of the demanded relocation costs would be to force the Park owner to buy its own property from the residents, the vast majority at the fair market value of the underlying property, in order to close the Park. The Park owner would have to pay these funds, in almost all cases, to residents who have already benefited enormously from the space rents which are a fraction of fair market value.

22.  The PCO has an exemption for payment of such relocation costs, but only based on a showing that "imposition of any relocation obligations would

eliminate substantially all reasonable use or economic value of the property for alternate uses." This exemption would therefore only be available to prevent the confiscation of almost one hundred percent (100 %) of the economic value of the property.

### The City Facilitates the Conversion of Mobilehome Parks to City and Tenant Ownership

23. Surf and Sand is informed and believes that as the RCO, individually and in concert with the PCO, became more and more confiscatory, the City sought mechanisms to protect the purported "equity" of tenants, many of whom have paid tens of thousands of dollars more for mobilehomes than such are worth in order to obtain price fixed rent. Surf and Sand is informed and believes that the City of Capitol determined that mobilehome parks would eventually have to be converted to publicly owned assets and/or tenant owned assets to allow tenants to keep the value of the underlying property the City took from park owners for said tenants in the first place. The adoption of the PCO and confiscatory application of the RCO were designed to "protect" this alleged "equity" and force Park owners to sell their parks to the City or to resident organizations at prices that were vastly below their fair market value.

24. The City's strategy has been hugely successful, resulting in the conversion of all but two mobilehome parks to either City or tenant ownership without compensating the private park owners for the conversion of their property to public and/or private use.

25. Surf and Sand is informed and believes that in or about 2006 and 2007, the City "facilitated" and supported the confiscation of Turner Lane Mobilehome Park. Surf and Sand is informed and believes that the City facilitated the acquisition of Turner Lane by residents in a two step process. First, the City facilitated the purchase of Turner Lane from its owner to a non-profit corporation or similar entity at a price that reflected the rent-controlled value of Turner Lane rather than its true

market value. Second, the City facilitated and supported the conversion of Turner Lane to resident ownership pursuant to California Government Code § 66427. The conversion allows residents to purchase lots they had previously rented for a fraction of their true market value. The City facilitated the permanent confiscation of a privately owned mobilehome park from Park owner to tenants. The City caused the conversion of privately held property for the private use of the tenants. The harm to the Park owner was greater than if the City had simply condemned Turner Lane because the City did not have to compensate the Park owner the fair market value of the property. The City took the property without compensation.

26. The confiscation of Turner Lane is only the most recent example of the City's consistent pattern of conduct whereby the City has undertaken to confiscate property of Park owners for the purpose of giving that property to tenants.

### The City Prevents Surf & Sand Mobilehome Park Conversions

27. Surf and Sand concluded that subdividing the Park was the only economically feasible method of recovering the beneficial ownership, control and underlying value of their property. On or about August 3, 2007, the owners of Surf and Sand took the first steps toward an attempt to initiate the process of subdividing the Park, holding a tenant meeting for the purposes of initiating a survey of residents required to subdivide the Park under California Government Code § 66427. Within a week of that meeting, the City adopted an "urgency Ordinance" regulating the conversion of mobilehome parks to resident ownership ("Conversion Ordinance") The Conversion Ordinance has the purpose and effect of making an owner-initiated conversion of a mobilehome park to resident ownership practically impossible, unless the Park owner will agree to and accept terms of conversion agreeable to a majority of park residents. In other words, the City has adopted additional new legislation to compel Plaintiff to deed its property to tenants a fraction of the land's true value.

28. The Conversion Ordinance establishes notice and disclosure requirements that require Plaintiff as a Park owner to spend tens of thousands of

dollars simply to proceed with a resident vote. The City purported to adopt an "urgency" ordinance even though its stated purpose was to assure compliance with statewide subdivision statutes that already exist. The Conversion Ordinance includes a presumption that any conversion that does not have the majority approval of park residents is not a "bona fide" conversion. While the Conversion Ordinance provides that the presumption is "rebuttable," it does not state how the presumption is rebuttable or any criteria for such a determination.

29. Surf & Sand is informed and believes and thereon alleges that the Conversion Ordinance was not adopted to assure compliance with existing state law. Rather, it was adopted to make conversion (by subdivision) economically and legally impractical and to give the tenants, rather than the Park owner, the right to decide whether Surf and Sand would be subdivided.

30. No studies were undertaken by the City to assess the merits of mobilehome park subdivisions, the burdens imposed by the new regulatory scheme upon innocent property owners, or the private transfer of wealth being promoted by this proposed legislation.

### Disparate Treatment Of Privately Owned Mobilehome Parks

31. Surf and Sand is informed and believes and thereon alleges that the City does not uniformly apply the RCO, the PCO and other relevant laws to all landlords within the City and, more importantly, to all mobilehome parks within the City. Surf and Sand is informed and believes that the City does not apply its laws governing the setting of rents, the closure of mobilehome parks (or the elimination of park spaces within a mobilehome park) or the subdivision of mobilehome parks in the same manner for privately owned parks as it does to City-owned or tenant owned parks. For example:

   a. Surf & Sand is informed and believes and thereon alleges that the City actively supported the subdivision of Turner Lane after the Park was sold to a

non-profit organization, but the City actively opposed the subdivision of Surf and Sand, adopting an urgency ordinance in order to prevent the subdivision; and

    b.    Surf and Sand is informed and believes and thereon alleges that the City-owned mobilehome parks have been allowed to eliminate available mobilehome spaces, convert mobilehomes spaces for use as other purposes, such as storage, thereby reducing the availability of affordable housing, though such alternatives are not equally available, and in similar terms, to Surf and Sand.

32.    The City has engaged in a course of conduct designed to effectively confiscate privately held mobilehome parks for the benefit of park tenants and to require Plaintiff and other park owners to provide "affordable housing" stock for the City. In the process, the City has taken the vast majority of the value of Surf & Sand's property without compensation.

## FIRST CAUSE OF ACTION

### (Denial of Equal Protection - As Applied - 42 U.S.C. § 1983)

33.    Surf and Sand realleges the allegations contained in paragraphs 1 through 32 of this Complaint and incorporates same by reference as if fully set forth herein.

34.    Surf and Sand is informed and believes, and thereon alleges, that Defendants' actions and positions in applying the RCO, PCO and adopting the Conversion Ordinance, as alleged herein, were designed to deprive and deny Surf and Sand equal protection under the law as guaranteed by the Fourteenth Amendment of the United States Constitution. *Willowbrook v. Olech*, 528 U.S. 562, 564-565 (2000).

35.    Surf and Sand is informed and believes and thereon alleges that the purpose for treating Surf and Sand differently from other property owners within the City of Capitola, including resident-owned and City-owned mobilehome parks, is to facilitate the City's efforts and goals to convert Surf and Sand's property to the use and benefit of tenants. The City by: (1) intentionally depriving such Park owners of the economic value of their assets; (2) preventing such Park owners from closing the Parks; and (3) preventing the conversion of Parks in order to force Park owners to sell

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

their property to the City or tenant-supported entities at a small fraction of their value has de facto confiscated and taken Plaintiff's property. In particular, the City adopted the Conversion Ordinance to prevent Surf and Sand from proceeding with the subdivision conversion of the Park, even though only a few months before it had approved the subdivision of Turner Lane under exactly the same existing state law.

36. The City's differential treatment of Surf and Sand is for reasons wholly unrelated to any legitimate state objective. The City has intentionally caused the de facto conveyance of the property of Surf and Sand (and similarly situated Park owners) to be given to tenants and the City's actions were undertaken with the purpose of continuing to prevent conversion of Plaintiff's property through the application of the RCO, the adoption of the PCO, and the adoption of the Conversion Ordinance.

37. As a direct and proximate result of the above-described actions by Defendants and each of them, Surf and Sand has been damaged in an amount not fully known but believed to be in excess of Twenty Million Dollars ($20,000,000) and within the subject matter jurisdiction of this Court, all subject to proof at the time of trial herein.

38. Surf and Sand has incurred and will continue to incur, attorneys' fees, expert witness fees, and other fees and costs, as a result of this proceeding, in amounts that cannot yet be ascertained but which are recoverable pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

## SECOND CAUSE OF ACTION
### (Violation of Civil Rights under 42 U.S.C. § 1983
### And The Fifth Amendment "Private Taking of Property"

39. Surf and Sand realleges and repeats the allegations contained in paragraphs 1 through 38 hereinabove and incorporates same by reference as if fully set forth herein.

40. Surf and Sand is informed and believes, and thereon alleges, that

Defendants' actions and positions, as alleged herein, constitute a private taking of property for the private use of the Park residents, in violation of the Fifth Amendment, applied to state action pursuant to 42 U.S.C. § 1983, as set forth in *Armendariz v. Penman*, 75 F.3d 1311, 1320-21 (9th Cir. 1996); *99 Cents Only Stores v. Lancaster Redevelopment Agency*, 237 F. Supp. 2d 1123 (U.S. Dist. 2001).

41. Surf and Sand is not required to seek compensation in State Court proceedings before seeking compensation in Federal Court because the "private taking" cannot be constitutional even if compensated *Armendariz, supra*, 75 F.3d 1311, 1321, fn. 5, citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194-197, 105 S.Ct. 3108 (1985).

42. As a direct and proximate result of the above-described actions by Defendants and each of them, Surf and Sand has been damaged in an amount not fully known but believed to be in excess of Twenty Million Dollars ($20,000,000) and within the subject matter jurisdiction of this court, all subject to proof at the time of trial herein.

43. Surf and Sand has incurred and will continue to incur, attorneys' fees, expert witness fees, and other fees and costs, as a result of this proceeding, in amounts that cannot yet be ascertained but which are recoverable pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

### THIRD CAUSE OF ACTION

**(Violation of Civil Rights under 42 U.S.C. § 1983**

**And Violation of the Fifth Amendment for Facial Taking**

44. Surf and Sand refers to, realleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 43 of this Complaint.

45. Surf and Sand is informed and believes, and thereon alleges, that the City's application of the RCO, PCO and conversion constitute a facial taking of property and is contrary to the Fifth Amendment of the United States Constitution on the following grounds:

a.  The adoption of the Conversion Ordinance forces Surf and Sand to continue in operation as a mobilehome park by eliminating the only economically possible alternative to continued operation and takes from Surf and Sand the right to decide whether and on what terms to sell its property.  The Conversion Ordinance gives the Park residents the right to determine whether such a sale can occur and under what terms.  The adoption of the Conversion Ordinance appropriates Surf and Sand's right to sell its property to persons of Plaintiff's choice and the City has thus "[extinguished] a fundamental attribute of ownership," in violation of federal and state Constitutions. *Agins v. Tiburon*, 447 U.S. 255 (1980).

b.  The combined effect of the City's regulation is to compel Surf and Sand to bear a disproportionate individual cost of the City's alleged efforts to provide affordable housing. (*Armstrong v. United States*, 364 U.S. 40 (1960));

c.  The effect of adoption of the Conversion Ordinance, when combined with the effect of the RCO, the PCO, and the California Mobilehome Residency Law ("MRL"), is to take all or substantially all of the fundamental attributes of property ownership from Surf and Sand.  The City has confiscated the overwhelming majority of the value of Plaintiff's property.  The PCO and Conversion Ordinance deny Surf and Sand the right to stop doing business as a mobilehome park and the MRL forces Surf and Sand to grant an indefinite right of possession to Park tenants at space rents which are a minuscule fraction of fair market value.  For all intents and purposes, the City has appropriated the Park for the benefit of the tenants and for the stated purpose of protecting affordable housing for the City.  Property consists mainly of three powers: possession, use, and disposition. *U.S. v. General Motors Corp.*, 323 U.S. 373, 377-378 (1945).  The MRL, combined with the RCO, the PCO and the Conversion Ordinance have deprived Surf & Sand of its rights and possession.  With the adoption of the Conversion Ordinance, the City has effectively deprived Surf and Sand the right of any economic use and disposition;

d.  Based on combined effect of the consideration of the overall

impact of the City's regulations as set forth herein, the nature of the state interest in regulation, and the reasonable expectations of the owner, as well as other factors recognized by the courts as part of the balancing analysis undertaken to determine a taking under cases such as *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104 (1978); *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302 (2002) and California State Courts in *Kavanau v. Santa Monica Rent Control Board* (1997) 16 Cal. 4th 761, 775-76, Plaintiff's property has been taken.

46. Surf and Sand has been damaged by the taking of its property in an amount to be proven at trial, but Surf and Sand is informed and believes it has been damaged in an amount of not less than Twenty Million Dollars ($20,000,000).

47. Surf and Sand has incurred and will continue to incur attorneys' fees, expert witness fees, and other fees and costs, as a result of this proceeding, in amounts that cannot yet be ascertained but which are recoverable pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

## FOURTH CAUSE OF ACTION

### (Violation of Civil Rights under 42 U.S.C. § 1983
### And Violation of the Fifth Amendment - Due Process)

48. Surf and Sand refers to, realleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 47 of this Complaint.

49. Surf and Sand alleges that the actions of the City in adopting the Conversion Ordinance and the Conversion Ordinance itself are arbitrary, capricious and unreasonable, as alleged herein and in the following additional respects:

  a. The Conversion Ordinance purports to determine whether a subdivision is a "bona-fide" effort by the Park owner to subdivide the Park or, instead, an effort to avoid the impact of the RCO, but the only stated criteria in the Conversion Ordinance for determining whether the conversion is "bona-fide" is whether a majority of residents support conversion of the Park;

  b. The Conversion Ordinance purports to adopt a "rebuttable

presumption" that a conversion is not bona fide where a majority of residents do not support the conversion, but sets forth no grounds or basis for the Park owner to rebut the presumption or any criteria for the City to determine whether the presumption has been rebutted;

    c.    The Conversion Ordinance establishes notice and disclosure requirements that require a Park owner to spend tens of thousands of dollars simply to proceed with a resident vote, while not applying the same requirements to prior park conversions, including a conversion approved only months before by City, and without making any findings explaining why such disclosure requirements should vary based on who owns the mobilehome park being converted;

    d.    The City purported to adopt an "urgency" ordinance even though its stated purpose was to assure compliance with subdivision statutes that already existed, with the plain purpose of preventing Surf and Sand from proceeding with subdivision, except on such terms as would be dictated by the City and Park residents.

50.    Surf and Sand has been damaged by the denial of its rights of due process in an amount to be proven at trial, but Surf and Sand is informed and believes it has been damaged in an amount of not less than Twenty Million Dollars ($20,000,000).

51.    Surf and Sand has incurred and will continue to incur attorneys' fees, expert witness fees, and other fees and costs, as a result of this proceeding, in amounts that cannot yet be ascertained but which are recoverable pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff prays for judgment as follows:

1.    For a declaration by this Court that Defendant's actions regarding enactment, interpretation and enforcement of the RCO, PCO and Conversion Ordinance are unconstitutional and unlawful, deprive Plaintiff of fundamental constitutional and statutory rights and that Defendants' actions constitute a denial of equal protection under the law, a private taking and a facial taking of property under the United States Constitution;

2. For a declaration that the Defendant's Mobilehome Rent Control Ordinance, Park Closure Ordinance and Conversion Ordinance cannot legally be applied to Plaintiff;

3. For a declaration that the Defendants' adoption of the Conversion Ordinance was unconstitutional and is therefore void and unenforceable;

4. For monetary damages in the amount of $20,000,000.00, or such sum as is proven at trial;

5. For preliminary and permanent injunctive relief, according to proof;

6. For reimbursement of reasonable attorney's fees, and such other costs as are recoverable pursuant to 42 U.S.C. § 1983 et seq. and Section 798.85 of the California Civil Code;

7. For costs of suit incurred herein; and

8. For such other and further relief as the Court deems just and proper.

Dated: September 26, 2007

HART, KING & COLDREN

By: _____
Robert S. Coldren
C. William Dahlin
Mark D. Alpert
Attorneys for Plaintiff Surf and Sand, LLC

## REQUEST FOR JURY TRIAL

Plaintiff Surf and Sand, LLC, a California Limited Liability Company hereby requests trial by Jury in the foregoing matter.

Dated: September 26, 2007

HART, KING & COLDREN

By: _____
Robert S. Coldren
C. William Dahlin
Mark D. Alpert
Attorneys for Plaintiff Surf and Sand, LLC

38019.004 \ 2

16

*COMPLAINT*