1  Henry E. Heater (State Bar #99007)
   Linda B. Reich (State Bar #87619)
2  Endeman, Lincoln, Turek & Heater LLP
   600 "B" Street, Suite 2400
3  San Diego, California 92101-4508
   (619) 544-0123
4  Fax (619) 544-9110

5  John G. Barisone (State Bar #087831)
   City Attorney, City of Capitola
6  Atchison, Barisone, Condotti & Kovacevich
   333 Church Street
7  Santa Cruz, California  95060-3811
   (831) 423-8383
8  Fax (831) 423-9401

9  Attorneys For Defendant
   City of Capitola

10

11

                   **IN THE UNITED STATES DISTRICT COURT**

12                 **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13  SURF AND SAND, LLC, a          )  CASE NO. C07 05043
    California Limited Liability   )
14  Company,                       )
                                   )  Judge:  Richard Seeborg
15          Plaintiff,             )
                                   )
16  CITY OF CAPITOLA, and DOES 1   )  **E-FILING**
    through 10, Inclusive          )
17                                 )  Date:  December 12, 2007
            Defendants.            )  Time:  9:30 a.m.
18                                 )  Dept:  3, 5th Floor
                                   )
19                                 )  ACTION FILED: 10/01/07

20  _____

21

22

23             **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**
               **IN SUPPORT OF MOTION TO DISMISS**
24

25

26

27

   I:\1280.010\Pleadings\003 Defs RFJN.wpd
28

1    I, Henry E. Heater declare:

2        1.    I am counsel for Defendant City of Capitola ("City") herein.

3        2.    City hereby requests the Court to judicially notice the following attached

4    documents pursuant to Federal Rules of Evidence., Rule 201:

5            Exhibit "A" - City's mobilehome rent stabilization ordinance codified as
                Capitola Municipal Code Chapter 2.18.

6

7            Exhibit "B" - City's mobilehome park closure ordinance codified as
                Capitola Municipal Code Chapter 17.90

8            Exhibit "C" - City's mobilehome park conversion ordinance codified as
                Capitola Municipal Code Chapter 16.70

9

10        I declare under penalty of perjury, under the laws of the State of California, that

11    the foregoing is true and correct.

12                                Respectfully Submitted,

13    Dated: November 7, 2007            Henry E. Heater
                                        Linda B. Reich
14                                      Endeman, Lincoln, Turek & Heater LLP

15                                      John G. Barisone
                                        City Attorney, City of Capitola
16                                      Atchison, Barisone, Condotti & Kovacevich

17

18                                By: _____
                                        Henry E. Heater
19                                      Attorneys for Defendant City of
                                        Capitola
20

21

22

23

24

25

26

27    I:\1280.010\Pleadings\003 Defs RFJN.wpd

28            DEFENDANTS' REQUEST FOR JUDICIAL NOTICE
                IN SUPPORT OF MOTION TO DISMISS

                                                        C07 05043 RS

**EXHIBIT A**

**Capitola Municipal Code**

| Up | Previous | Next | Main | Collapse | Search | Print | No Frames |

Title 2 ADMINISTRATION AND PERSONNEL

## Chapter 2.18 MOBILE HOME PARK RENT STABILIZATION

### Note

\*    Prior ordinance history: Ord. 459 as amended by 465, 518, 521, 545, 598, 626, 649 and 748.

### Article I. Miscellaneous

### 2.18.110 Findings.

The city council finds and determines that:

A.    There is presently, within the city and surrounding areas, a shortage of spaces for the location of mobile homes, resulting in a low vacancy rate and, but for this chapter, rapidly rising space rents.

B.    Mobile home owners have invested substantial sums in their mobile homes and appurtenances.

C.    Alternative sites for the relocation of mobile homes are difficult to find, and moving and installation of mobile homes is expensive, with possibilities of damage to the units.

The council does, accordingly, adopt the mobile home park rent control provisions of this chapter. (Ord. 770 § 1 (part), 1994)

### 2.18.120 Excluded parks—Homeowner owned spaces.

This chapter does not apply to the following mobile home parks:

A.    Parks with ten or fewer spaces for rent;

B.    Spaces within a park during the time that they are owned by the person(s) or entity who owns the mobile home located thereon. ("Homeowner owned spaces." A former park owner is not a "homeowner" for purposes of this section.)

C.    Effective March 1, 1997, homeowner controlled parks. "Homeowner controlled" means that:

1.    At least fifty-one percent of the spaces therein are homeowner owned spaces, and

2.    The ultimate authority (majority voting power) to set park rules and control any common area in the park rests with homeowners and/or an entity one hundred percent controlled by homeowners.

If a homeowner controlled park or space later ceases being a homeowner controlled park, rent limitations under this chapter shall be computed as if the park or space had never been homeowner controlled. (Ord. 770 § 1 (part), 1994)

### 2.18.130 Prohibition.

Except as allowed in this chapter, mobile home park owners and their agents are prohibited from collecting, or attempting to collect, any increases for rents relating to any nonexempt spaces. (Ord. 770

§ 1 (part), 1994)

## Article II. Base Rent and Yearly Rental Adjustment

### 2.18.200 Exempt space defined.

"Exempt space" as used in this chapter, means, for the applicable period of time, any space which is exempt from the rent increase limitations of Sections 2.18.130 and 2.18.220, (or was exempt under previous versions of those sections) as a result of state or federal law (see, for example, Civil Code Sections 798.17 and 798.45) or an exemption specified by Capitola Ordinance (see Municipal Code Section 2.18.120, Excluded Parks, and Ordinance No. 746, Mediation Agreement Exemption). Nothing in this section shall be construed to exempt "exempt spaces" from service reduction limitations (Section 2.18.250) or other provisions of this chapter, such as those concerning required information (Section 2.18.510). (Ord. 770 § 1 (part), 1994)

### 2.18.210 Rent and limited period rent defined.

"Rent," as used in this chapter, means the charge by the park owner for the use of mobile home spaces. It does not, include previously levied surcharges, RV storage income, laundromat income, income resulting from utility fees billed separately to a tenant in accordance with Civil Code Section 798.41, or fees, assessments or other charges billed separately to a tenant in accordance with Civil Code Section 798.49.

"Rent" includes base rent and any applicable limited period rent increase. A "limited period" rent increase is a rent increase approved by the city council in a specified amount pursuant to Article III (Limited Period Rent Increases) or Article IV (Fair Rate of Return), upon condition that it may be imposed only for a period of time specified in the approval. (Ord. 770 § 1 (part), 1994)

### 2.18.220 Maximum base rent increase.

Except as provided in Articles III and IV, the maximum annual increase that may be imposed on the base rent on any nonexempt space shall be equal to sixty percent of the change in the consumer price index for the immediately preceding September to August period, or a maximum annual increase of five percent of existing base rent, whichever is less. No such rent increase may be imposed pursuant to this section without prior city manager review and approval of the proposed new rent roster to see that the calculations were made in accordance with this section. Park owners are advised to submit such applications as soon as such C.P.I. information is available (typically about September 15th) so that they may comply with Civil Code Section 798.30's requirement for a ninety-day notice of rent increase. (Ord. 770 § 1 (part), 1994)

### 2.18.230 Consumer Price Index defined.

"Consumer Price Index (C.P.I.)" means the San Francisco-Oakland Consumer Price Index - "all urban consumer" - as provided by the Bureau of Statistics. (Ord. 770 § 1 (part), 1994)

### 2.18.250 Service reductions.

A.   Any homeowner allegation of service reduction shall be made in writing, signed by either the homeowners claiming it or the homeowner's representative and filed with the city council. "Service" as used in this section also includes physical improvements or amenities.

B.   Each allegation of service reduction should state:

1.   The affected spaces;

2.   The prior level of service established by the park owner for that homeowner's mobile home space and common facilities used by that homeowner;

3.   The specific changes in the prior level of services comprising the alleged reduction in service;

4.   The date the service reduction was first noticed by the homeowner;

5.   The date of notice to the park owner of the alleged service reduction, and if such notice was given, whether the notice was given orally or in writing;

6.   When and how the park owner responded to the homeowner's notice, if notice was given;

7.   Whether the condition was improved or corrected and if so, when and how; and

8.   The status of the condition as of the date the allegation is signed.

C.   The council may either: (1) reject the application as not presenting sufficient facts to justify a hearing; or (2) set the matter for public hearing.

D.   If the city council finds that a material service reduction has occurred, the city council shall determine the percentage of reduction of the residents' enjoyment of their tenancies that was caused by the reduction of the service. Rents shall be reduced by that percentage together with a rent adjustment necessary to compensate the affected homeowners for past detriment. An exception shall be the elimination or reduction of a recreational facility after being approved in writing by a majority of the homeowners. One hundred percent, or such other percent as is approved by a majority of homeowners of the cost savings resulting from such elimination or reduction shall be passed through to the homeowners by subtraction from the rent. Any service or improvement so eliminated may not be reinstituted at any cost to the homeowners without written approval of a majority of homeowners. (Ord. 770 § 1 (part), 1994)

## Article III. Limited Period Rent Increases

## 2.18.300 Limited period rent increases for certain capital improvements.

A.   Limited period rent increases (see Section 2.18.210 for a definition) for capital improvements which would create an improvement, or feature thereof, which did not previously exist in any fashion (for example, a swimming pool when none previously was operating) may only be allowed when the improvement, the amount and duration of the limited period rent increase (including financing costs, if any), have been approved in writing by a majority of the homeowners.

B.   Limited period rent increases will not be allowed for the replacement or repair of any previously existing improvement, unless required by Article IV (Fair Rate of Return). All currently imposed limited period rent increase shall terminate on their expiration dates. (Ord. 770 § 1 (part), 1994)

## 2.18.310 Limited period rent listed separately.

Any limited period rent, and its expiration date shall be listed separately from base rent on monthly rent bills and notices of rent increase. (Ord. 770 § 1 (part), 1994)

## Article IV. Fair Rate of Return

### 2.18.400 Fair rate of return defined.

"Fair rate of return" shall have the meanings assigned to that term by courts which would have competent jurisdiction in the event that any civil action was brought to challenge the validity of any decisions made by the city council concerning the subject of fair rate of return. (For example see the discussion in **Fisher vs. City of Berkeley** (1984), 37 Cal. 3rd 644, 209 Cal. Rpt. 682, 713). If such a distinction is relevant, fair rate of return shall be determined with reference to reasonable investment rather than property value. (Ord. 770 § 1 (part), 1994)

### 2.18.405 Change in park ownership.

Changes in ownership of a park after the effective date of Ordinance No. 459 (November 8, 1979) shall not entitle any succeeding park owner to higher rents than would have been paid if the original owner had remained the park owner. (Ord. 770 § 1 (part), 1994)

### 2.18.410 Fair rate of return application.

It will be presumed that application of this chapter and previous rent review ordinances has resulted in a fair rate of return. A park owner who believes that presumption can be overcome may apply to the city council for determination of the minimum increase necessary to produce a fair rate of return. Any such application must articulate the definition of fair rate of return under which the claim is being made and cite the authority which establishes that the existing return is less than the minimum fair rate of return. The application should also contain all such supporting information as is necessary for an accurate disposition of the application. If the application is successful, rents shall be increased to the minimum amount necessary to produce a fair rate of return. (Ord. 770 § 1 (part), 1994)

### 2.18.420 Cost of expert analysis.

Upon the receipt of a fair rate of return application, the city council should determine if the employment of experts will be necessary for a proper analysis of the applicant's presentation. If the city council so determines it shall also determine the anticipated cost of employing any such experts. The resulting figure shall be communicated to the applicant. The application shall not be further processed until the applicant has paid to the city the estimated cost of expert analysis of the application. Any unused portion of payments so collected shall be refunded to the applicant. An application for a fair rate of return adjustment shall be decided within sixty days of the date that the application, including the receipt of fees for expert analysis, has been completed. Any experts hired pursuant to this section shall be instructed to give an unbiased analysis. (Ord. 770 § 1 (part), 1994)

## Article V. Procedures

### 2.18.500 Homeowner representative.

The homeowners in each park should designate a representative. The homeowners should select a

park representative by a written designation or by means of an election at a meeting attended by a majority of the homeowners. Any such designation should be signed by persons owning a majority of the homes located within the applicable park. The person submitting the designation should certify under penalty of perjury that the signatures thereon are true and correct to the best of the declarant's knowledge. If the homeowners fail to designate a representative through the foregoing procedures, the city manager may establish any such procedure, such as mailed sealed ballots, reasonably likely to yield a democratically selected representative. Once a representative has, for any particular year, been properly designated, all notices to homeowners may be directed to that representative. Any homeowner who can show that his or her individual interests are not likely to be fully represented by the homeowners' representative may request that the city manager allow that person, or group of persons, to represent him, her or themselves. An example would be a homeowner who claimed to be the victim of retaliatory park owner practices not directed against a majority of the homeowners of a park. (Ord. 770 § 1 (part), 1994)

## 2.18.510 Park owner submittals.

A.  At least three months before the anticipated date of any intended rent increase under Section 2.18.220, the park owner must submit its calculations to the city manager. For good cause shown, the city manager may extend those deadlines, but not later than November 20th. If either the city manager or the homeowner representative, within ten days of its receipt, disagree with the park owners mathematics concerning the Section 2.18.220 rent increase, the dispute shall expeditiously be set for city council determination.

B.  If the park owner makes application for a limited period rent increase under Section 2.18.300 or fair rate of return application under Article IV, the city manager may require the submittal of any additional information which the city manager believes is necessary for proper council deliberation and determination.

C.  Rent Rosters. Any application for a rent increase shall include a roster of all spaces in the park, which shall include space number, existing rent, and rent in the event the application is granted. If the park owner does not intend to submit a rent increase application for the next calendar year, a rent roster showing existing rents shall be submitted by October 30th of each year.

D.  Claim of Exemption Prior to December 30, 1994. On or before December 30, 1994, the owner of any nonexempt park shall submit to the city manager, a list of any rent increases made at any time since December 30, 1989 which were greater than increases allowed under Section 2.18.220 during that period. If the park owner claims that any such rent increase was the result of a legal exemption (whether by federal, state or local law) from the requirements of Section 2.18.220, the park owner shall specify: the nature of the exemption, the period of time the exemption was or is applicable, the rent charged immediately preceding the effective date of the exemption, and a schedule of all rent increases since the date of such increase. If the exemption is claimed under Civil Code Section 798.17, copies of all applicable leases shall be submitted.

E.  After that initial list of exemptions has been supplied, whenever a park owner institutes any rent increase on the basis that such increase is exempt from Section 2.18.220 limitations (see Section 2.18.200), a written statement shall be submitted to the city manager no later than ten days prior to the date the exemption is applied, containing the information required of exemptions claimed under Section 2.18.510(D). If circumstances make that impossible, the information shall be supplied within two business days of the date the park owner knows the exemption will apply. (Ord. 770 § 1 (part), 1994)

## 2.18.520 Hearing procedures.

Hearings conducted pursuant to this chapter shall be conducted according to the following rules:

A.    The mayor may establish a reasonable time limit upon the total time used for the presentation by each side to a hearing.

B.    Except as provided in Section 2.18.500, the homeowner representative shall have exclusive authority to apportion time amongst the various speakers speaking on behalf of the homeowners' position.

C.    The mayor may determine the order of presentation.

D.    The hearing need not be conducted according to technical rules of evidence and witness. Any relevant evidence shall be considered if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of such evidence over objection in civil actions. Unduly repetitious or irrelevant evidence shall be excluded upon order by the mayor.

E.    Ordinarily, witnesses testifying to factual information (as opposed to those who are merely commenting upon submitted evidence) will be sworn. However, the failure to swear any witness will not be grounds for invalidating any decision.

F.    Cross-examination will be limited to situations in which no feasible alternative exists. Any cross-examiner who appears to lack the skill and training necessary to cross-examine in a productive manner (i.e., the ability to avoid compound questions, to avoid argumentative questions, and the ability to ask questions rather than make statements) will be excluded from conducting cross-examination.

G.    Any person wishing to have the proceeding memorialized by a court reporter should, in advance of the hearing, make appropriate arrangements with the city clerk including, but not limited to, making arrangements for paying the costs of the court reporter. In the absence of a court reporter, the clerk should endeavor to tape record the proceedings.

H.    Upon good cause shown, the council may grant appropriate continuances. (Ord. 770 § 1 (part), 1994)

## 2.18.530 Request for findings.

Any party desiring city council findings regarding decisions made by the council under this chapter must request them in writing. Such request must be received in the city manager's office within ten calendar days of the date the council made its decision and shall specify those issues upon which findings are requested. (Ord. 770 § 1 (part), 1994)

## 2.18.540 Certification.

Upon request of any park owner or homeowner, the city staff shall, within five days of the request, provide a certificate or other documentation setting forth permissible rent levels for the unit. A recipient of such certificate who believes it does not reflect the determinations made in the proceedings established in this chapter may appeal to the city council as provided in Civil Code Section 1947.8(b). (Ord. 770 § 1 (part), 1994)

**EXHIBIT B**

## Chapter 17.90 MOBILE HOME PARKS

### Note

\*    Prior ordinance history: Ord. 576

### 17.90.010 Findings and declarations of purpose.

A.    Mobile home owners make considerable investments in purchasing, maintaining, and improving their mobile homes, but must rent a space for the home in a mobile home park and cannot easily move the mobile home due to the shortage of mobile home spaces and the high cost and risk of damage involved in moving a mobile home. In recognition of the unique situation and vulnerability of mobile home owners created by these facts, the State Mobile Home Residency Law, Civil Code Section 798, et seq., and Government Code Sections 65863.7 and 66427.4, limit the grounds on which mobile home owners may be evicted from a mobile home park, protect their right to sell their mobile homes in a place in a mobile home park and authorize local jurisdictions to impose reasonable measures to mitigate the adverse impacts on displaced mobile home owners when a mobile home park closes or converts to another use. Pursuant to these state laws, this chapter provides a procedure and standards for reviewing applications for change of use or closure of mobile home parks, determining reasonable mitigation measures and protecting residents from tactics such as intimidation and excessive rent increases, designed to pressure mobile home owners to relocate without receiving assistance pursuant to this chapter. Without such assistance mobile home owners may lose the investment in their homes, which may be their only asset, and may not be able to relocate to decent, affordable housing.

B.    Nothing in this chapter shall be construed to mean that the city supports any change of use of any mobile home park. (Ord. 759 (part), 1993)

### 17.90.020 Definitions.

As used in this chapter, the following words and phrases shall have the following meanings:

"Applicant" means a person or entity who has filed an application for change of use of a mobile home park.

"Change of use" includes all activities specified in Section 798.10 of the California Civil Code and amendments to the general plan or any applicable specific plan, rezoning of property, land use permits, such as a conditional use permit or a variance, tentative parcel or tentative tract maps, and building permits when the effect of the change will be to decrease the number of spaces available for mobile home habitation.

"Change without new use" refers to what Civil Code Section 798.56(g)(2) describes as a "change of use [requiring] no local governmental permit" [other than approval of the RIR].

"Comparable housing" means housing which, on balance, is comparable in floor area, number of bedrooms, and amenities, proximity to public transportation, shopping, schools, employment opportunities and medical services and other relevant factors to the mobile home to which comparison

is being made.

"Comparable mobile home park" means a mobile home park substantially equal in terms of park condition, amenities and other relevant factors, including, but not limited to, proximity to public transportation, shopping, medical services, employment opportunities and schools.

"Director" means the community development director.

"Eligible mobile home resident" or "eligible resident" means a mobile home resident whose mobile home was located in a mobile home park on the date of an application for change of use. Eligible resident includes the spouse, parents, children and grandchildren of the eligible resident when those persons resided in the mobile home on the date of the application.

"Legal owner" means any person or entity having an ownership interest in a mobile home other than the registered owner, such as a lender or mortgagor.

"Mobile home" has the meaning set forth in Section 798.3 of the California Civil Code.

"Mobile home owner" means the registered owner or registered owners of a mobile home, regardless of the number of such owners or the form of such ownership.

"Mobile home park" or "park" has the meaning set forth in Section 798.4 of the California Civil Code.

"Mobile home park owner" or "park owner" means the person, persons or entity that owns a mobile home park and includes any person authorized by the park owner to seek approval of an application for change of use or respond to a rent review petition filed pursuant to this chapter.

"Mobile home owner" means a mobile home owner who resides in the mobile home he or she owns. Unless the context indicates otherwise, it includes the mobile home owner's spouse, parents, children and grandchildren who reside in the mobile home.

"Mobile home tenant" or "tenant" is a person who occupies a mobile home within a mobile home park pursuant to a bona fide lease or rental agreement and who, during his or her tenancy, was not the owner of that mobile home.

"Handicapped mobile home resident" means a mobile home resident with any medically determinable physical or mental impairment as demonstrated by a finding of a state or federal agency or a medical certificate, or who requires special care facilities in the mobile home or special care equipment, such as, but not limited to, a wheelchair.

"Low income" means an income of eighty percent or less of current median income as established annually by the United States Department of Housing and Urban Development ("HUD") for the statistical area in which Capitola is located, as adjusted for household size. (Ord. 759 (part), 1993)

## 17.90.025 Application and relocation impact report (RIR)—Duty to file.

Prior to a change of use of a mobile home park, a relocation impact report (RIR) complying with the requirements of this chapter must be filed with the director. It is the park owner's responsibility to comply with the notice requirements of subsections g(l) and (2) of Civil Code Section 798.56. Because the Civil Code Section 798.56(g)(2) notice cannot be given until after the approval of both the project and the sufficiency of the (RIR), the park owner is encouraged to consult with staff (especially if any waiver of Municipal Code Section 17.90.030 requirements will be requested) early in the process about the contents of the RIR. (Ord. 759 (part), 1993)

## 17.90.030 Contents of relocation impact report.

All relocation impact reports (RIRs) required by this chapter, Civil Code Section 798.56 or Government Code Section 65863.7 shall contain the following information, unless the director determines that any of the following is unduly burdensome to produce when weighed against its informative value:

A.    A detailed description of any proposed or change of use, or change without new use;

B.    A timetable for conversion of the park;

C.    A legal description of the park;

D.    The number of spaces in the park, length of occupancy by the current occupant of each space and current rental rate for each space;

E.    The date of manufacture and size of each mobile home;

F.    Appraisals addressing relevant issues identified by the director. A qualified appraiser shall be selected by the city and the cost of the appraisals shall be borne by the applicant. The appraisals shall identify those mobile homes which cannot be moved due to type, age or other considerations. Appraisal information shall be provided on the effect upon the homeowner's investment in the mobile home, such as the change in value of effected mobile homes that would result from the proposed change in use;

G.    The results of questionnaires to all homeowners/occupants regarding the following: whether the occupant owns or rents, whether this is the only residence, occupants' ages, whether the occupants have disabilities that would be aggravated by the moving process, the purchase date and price paid by the mobile home owner, the costs incurred by the mobile home owner in improving the home, and the amount and relevant terms of any remaining mortgage. Answering such questionnaire shall be voluntary;

H.    The name and mailing address of each eligible resident, mobile home tenant, mobile home resident, resident mobile home owner and legal owner of a mobile home in the park;

I.    The purchase price of condominiums similar in size to the mobile homes within a reasonable distance, and the rental rates and moving costs involved in moving to an apartment or other rental unit within a reasonable distance including, but not limited to, fees charged by moving companies and any requirement for payment of the first and last month's rent and security deposits;

J.    A list of comparable mobile home parks within a twenty-mile radius and a list of comparable mobile home parks within a radius of twenty-five to fifty miles of the applicant's mobile home park. For each comparable park, the list should, if possible, state the criteria of that park for accepting relocated mobile homes, rental rates and the name, address and telephone number of the park representative having authority to accept relocated homes, including any written commitments from mobile home park owners willing to accept displaced mobile homes. The purpose of the requirements in this subsection are to provide information necessary to create appropriate relocation compensation. It is not meant to suggest that the city, in any sense, favors tenants having to move out of any mobile home park in Capitola.

K.    Estimates from two moving companies as to the minimum and per mile cost of moving each mobile home, including tear-down and set-up of mobile homes and moving of improvements such as porches, carports, patios and other moveable amenities installed by the residents. Said moving companies shall be approved by the director prior to inclusion in the final RIR.

L.    Proposed measures to mitigate the adverse impacts of the conversion upon the mobile home park residents.

M.    Identification of a relocation specialist to assist residents in finding relocation spaces and alternate housing. The specialist shall be selected by the applicant, subject to the city's approval, and

shall be paid for by the applicant. (Ord. 759 (part), 1993)

## 17.90.040 Filing of relocation impact report.

An RIR shall not be considered filed, within the meaning of Government Code Section 65863.7, until the applicant has caused to be submitted to the director both a draft RIR which applicant believes meets the requirements of Municipal Code Section 17.90.030, and a written statement that such draft RIR is being filed pursuant to Government Code Section 65863.7. (Ord. 759 (part), 1993)

## 17.90.045 Refusal to review relocation impact report.

If the city attorney determines that the proposed change of use or change without new use would be illegal, the director shall not process the RIR until and unless a court of competent jurisdiction rules that the proposed use would be legal. (Ord. 759 (part), 1993)

## 17.90.050 Notice to new occupants regarding pending change in status of park.

When an application for change of use of a mobile home park (or for city approval of a RIR) has been filed with the director, the applicant shall thereafter, in addition to Civil Code Section 798.56 (g) (1) notices, give notice to all known prospective mobile home purchasers and prospective mobile home tenants within the park, and in all cases prior to execution of any new rental agreement, that the application for change of use has been filed. The park owner shall obtain a signed acknowledgment of receipt of such notice from each prospective purchaser or tenant and file it with the director. If the prospective purchaser or tenant refuses to sign, a dependable record of delivery of notice shall be maintained by the park owner. (Ord. 759 (part), 1993)

## 17.90.060 Application for exemption from relocation assistance obligations.

A.    Any person who files an application for change of use may file an application for total or partial exemption from the obligation to provide relocation assistance.

B.    If such application for exemption is filed, notice thereof, containing the information contained in the application, shall be given pursuant to subsections B and C of Section 17.90.070.

C.    An application for total exemption may be made on one of two grounds.

1.    That imposition of any relocation obligations would eliminate substantially all reasonable use or economic value of the property for alternate uses;

2.    The park is exempt from the requirement of relocation assistance under state law governing changes of use of mobile home park.

D.    Any application for partial exemption shall state that it is made on grounds either:

1.    That imposition of particular relocation obligations would eliminate substantially all reasonable use or economic value of the property for alternate uses; or

2.    That it would exceed limitations imposed by Government Code Section 65863.7(e). The application shall specify the particular relocation obligations which would cause this result.

E.    An application for exemption made pursuant to subsections (C) (1) and (D) (1) of this section shall contain, at a minimum, an estimate of the value of the subject property by a qualified real estate

appraiser if the park were permitted to be developed for the use proposed in the application for change of use, or other use consistent with applicable zoning, and an estimate of the value of such park by such appraiser if use of the property as a mobile home park is continued. An application for exemption pursuant to subsection (C) (2) of this section shall specify the provisions of state law providing the claimed exemption and documentation demonstrating entitlement to such exemption.

F.    If an exemption is granted after the applicant has purportedly provided Civil Code Section 798.56(g)(2) notice, renoticing will be necessary. (Ord. 759 (part), 1993)

## 17.90.070 Application for change of use—Public hearing—Findings.

A.    Upon the filing of an RIR, the director shall examine the same and advise the applicant in writing within thirty days after receipt thereof whether it is complete. When an application and RIR have been accepted as complete, the director shall set a time, date and place for a hearing before the planning commission not later than sixty days after the date of acceptance. Because certain required information in an RIR (e.g., appraisals, tenant data) cannot be obtained until after filing an application for change of use, the initial application for change of use and RIR should contain all pertinent available information in order to start the process of obtaining the information required for a complete application and/or RIR.

B.    Not less than thirty days prior to the scheduled public hearing before the planning commission, the park owner shall, by certified mail or personal delivery, transmit to the registered and legal owner of each mobile home occupying a site within the mobile home park and to each resident a copy of the approved RIR and notice (in form approved by the director) of the date, time and place of the public hearing on the application.

C.    Not less than fifteen days prior to the scheduled public hearing before the planning commission on the RIR, the park owner shall file with the director a verification that he or she has complied with the requirements of this section pertaining to notices and transmittal of copies of the RIR and with all notice requirements in Government Code Section 65863.7, et seq. The form and manner of such verification shall be subject to approval by the city attorney.

D.    Planning Commission Hearing, Findings and Advisory Decision. Upon review of an application for change of use or exemption and the RIR and consideration of the written and oral evidence received at the hearing, the commission shall render its findings and recommendation to the city council by resolution within ninety-five days of the date the application and RIR were accepted as complete. In rendering its advisory decision, the commission may recommend reasonable measures not exceeding the reasonable costs, or estimates thereof, of relocation to mitigate the adverse impacts on eligible residents displaced by the change of use or mobile home owners who may have to move their mobile homes, which may include, but are not limited to the following:

1.    Payment of the cost of physically moving the mobile home to a new site, including tear-down and setup of mobile homes, including, but not limited to, movable improvements such as patios, carports and porches;

2.    Payment of a lump sum based on consideration of any increase in security deposit at the new mobile home park which the resident or tenant lacks the ability to pay;

3.    Payment of a lump sum based on consideration of any differential between rental rates at the closing mobile home park and the new mobile home park during the first year of the new tenancy;

4.    For those mobile home residents who move to apartments or other rental housing alternatives, payment of a lump sum based on consideration of any differential in the rental rate between the closing

park and the comparable housing, requirements for payment of security deposits and cleaning fees. Mobile home households may be compensated based on the number of bedrooms in the mobile home so that a one bedroom mobile home may be compensated based on a one bedroom apartment, a two bedroom mobile home based on a two bedroom apartment, etc.;

5.    Provision of a replacement space within a reasonable distance of the closing mobile home park;

6.    For residents whose mobile home cannot be relocated to a comparable park within a fifty-mile radius of the closing mobile home park, payment of a lump sum based upon consideration of the value of the mobile home, including resident improvements (i.e., landscaping, porches, carports, etc.), any increase in mortgage obligations of the resident on the mobile home, and the costs of purchasing a mobile home on-site in a comparable park or acquiring other comparable replacement housing;

7.    The park owner shall make the monetary payments contemplated in this subsection a reasonable period of time (to be set by the city council) in advance of the actual relocation of a resident or homeowner. The resident or homeowner shall not be under a legal obligation to relocate by the method used to measure mitigation costs.

E.    Time periods in this chapter may be extended as necessary to comply with C.E.Q.A. or the Coastal Act.

F.    Notwithstanding any other provision in this section, the total of the mitigation measures required shall be subject to and shall not exceed the limitation in Government Code Section 65863.7 which provides: "the steps taken to mitigate shall not exceed the reasonable costs of relocation."

G.    City Council Hearing, Findings and Decision.

1.    The application for change of use and any application for exemption shall be set for hearing before the city council within forty-five days of the date of the planning commission decision recommending the mitigation measures to be imposed on the change of use of a park or exemption from the provision of relocation assistance.

2.    The city council, after review and consideration of the application, the RIR and the written and oral evidence received at the hearing, shall by resolution render its findings and decision within eighty days of the date of the planning commission decision.

3.    The city council may impose reasonable measures not exceeding the reasonable costs of relocation to mitigate the adverse impacts of the change of use on eligible mobile home residents pursuant to subsections (D) and (E) of this section. The decision of the city council shall be final. Pursuant to Code of Civil Procedure 1094.6, the statute of limitations for bringing a judicial challenge to any decision concerning a change of use of mobile home park shall be ninety days and notice of the city's decision to the applicant, park owner and affected residents shall include notice that the ninety-day statute of limitations in 1094.6 is applicable. (Ord. 759 (part), 1993)

## 17.90.080 Measures to prevent avoidance of relocation assistance obligations.

A.    If any change of use or RIR approval application is withdrawn or denied, those previously given notices or announcements shall be so informed in writing by the park owner.

B.    No prospective mobile home resident or existing mobile home resident may be required to sign a waiver, or a lease or rental agreement which includes a waiver, of their rights under this chapter. Any waiver of rights under this chapter by such a mobile home resident shall be deemed invalid unless the resident or prospective resident and the park owner obtain the prior approval of the waiver from the director, who may grant such approval only upon a finding that the waiver is voluntary and was made after being fully informed of the terms of this chapter. (Ord. 759 (part), 1993)

## 17.90.090 Compliance with relocation assistance required as a condition of approval of a change of use.

A.   The applicant shall execute and record a certificate, and file proof thereof with the director, accepting the mitigation measures imposed on the approval of a change of use within ninety days of the final council action approving the change of use and shall give the six- or twelve-month notice of the termination of tenancy and closure of the park required by Civil Code Section 798.56(g) within one hundred twenty days of that action. An approval of a change of use shall automatically become null and void if the certificate accepting the conditions is not filed and executed within ninety days of the date of the approval of the change of use and the notice of termination of tenancy has not been given within one hundred twenty days of that resolution. All mitigation measures imposed on the approval of a change of use shall be fully performed as to each resident prior to that resident's required vacation of the mobile home park, unless otherwise provided in the mitigation measure. No eligible resident shall be required to vacate a mobile home space unless the applicant is in full compliance with all mitigation measures imposed pertaining to such resident, and has otherwise fulfilled the notice requirements of the California Mobile Home Residency Law relating to termination of tenancy.

B.   No building permit shall be issued for the development of any real property which has been, or is being, converted from a mobile home park pursuant to this chapter unless and until the city has adopted a resolution approving the change of use and the park owner has fully complied with the relocation assistance required by that resolution. (Ord. 759 (part), 1993)

## 17.90.100 Modification and revocation of approved change of use.

A.   Modification.

1.   After a change of use has been approved and after the applicant has executed and recorded a certificate of acceptance of the conditions of any approval, modification of the mitigation measures imposed, including additions and deletions, may be considered upon the filing of a written application by the applicant. Modification may be granted on the grounds that there has been a change in circumstances or new information, which could not reasonably have been known or considered at the time of the hearings on the application, has become available. Examples of such new information or changed circumstances include, but are not limited to, revised plans by the applicant and a change in the availability of relocation spaces. Modification shall not be granted when it would unreasonably prejudice the ability of the residents to relocate to comparable spaces or comparable alternate housing.

2.   Any application for modification shall be subject to the notice and hearing procedures set forth in Sections 17.90.070 and 17.90.080. The decision in connection with a modification request shall take place as with the initial approval.

B.   Revocation.

1.   The city council may initiate revocation proceedings on the grounds that the park owner or applicant has violated the provisions of this chapter or the terms of the approval of the change of use. The approval shall specify the grounds asserted for revocation of the approval of the change of use by the park and shall set a hearing before the city council to consider the revocation not sooner than forty-five and not later than sixty days after the date of the approval.

2.   Notice of revocation proceeding shall be sent to the park owner by certified mail or personal delivery together with notice that any response by the park must be filed at least twenty days prior to the date set for the revocation hearing.

3.   The city council shall render its findings and decision concerning revocation within ninety days after initiating revocation proceedings. (Ord. 759 (part), 1993)

## 17.90.110 Expiration and extension of approval.

A.   Approval of a change of use shall become null and void if the notice of termination of tenancy has not been given within the time provided in Section 17.90.090 and relocation pursuant to the conditions of approval has not occurred within twelve months of the effective date of the approval of the change of use, unless otherwise extended as provided in subsection (B) of this section, or unless otherwise provided in the resolution approving it.

B.   Upon application by the park owner filed with the director on or before the time provided for giving the notice of termination or the expiration of the approval of the change of use, the date for giving notice and the approval may be extended by the city council upon a showing of good cause. The request may be denied if the council finds that the park owner has unreasonably delayed implementation of the mitigation measures or that further delay will result in prejudice or further adverse impacts upon eligible residents remaining in the park. Approval of an extension may be conditioned on reasonable measures designed to mitigate the adverse impacts resulting from the delay. The application for extension shall be subject to the notice and hearing procedures set forth in Section 17.90.100(B). (Ord. 759 (part), 1993)

## 17.90.120 Change without new use.

Government Code Section 65863.7 and Civil Code Section 798.56 require submission and approval of an RIR even in situations where no other local government permit is required for the contemplated change of use or change without new use. It is the park owner's responsibility to file the RIR in time for the review required by this chapter. (Ord. 759 (part), 1993)

## 17.90.130 Preemption.

In the event the provisions of this chapter conflict with any code, ordinance or regulation of the city, the provisions of this chapter shall govern. In the event any provisions of this chapter conflict with a provision of state law, this chapter shall be interpreted and applied in conformity with state law. (Ord. 759 (part), 1993)

## 17.90.140 Severability.

If any part or provision of this chapter, or the application of such to any person or circumstance is held invalid, the remainder of the chapter, including the application of such part or provision to other persons or circumstances, shall not be effected and shall continue in full force and effect. To this end the provisions of this chapter are severable. (Ord. 759 (part), 1993)

**EXHIBIT  C**

Case 5:07-cv-05043-RS    Document 7    Filed 11/08/2007    Page 20 of 24

**Capitola Municipal Code**

Up    Previous    Next    Main    Collapse    Search    Print    No Frames

Title 16 SUBDIVISIONS

# Chapter 16.70 CONVERSION OF MOBILE HOME PARKS TO RESIDENT OWNERSHIP

## 16.70.010 Purpose and intent.

The purpose of this chapter is to establish requirements and procedures that are necessary and appropriate to comply with state laws related to the conversion of mobile home parks to resident ownership. The city of Capitola further declares that the purposes of this chapter are also:

A.   To ensure that conversions of mobile home parks to resident ownership are bona fide resident conversions in accordance with state law;

B.   To balance the need for increased home ownership opportunities with the need to protect existing affordable housing opportunities;

C.   To ensure the public health and safety in converted parks; and

D.   To ensure that park residents receive appropriate and timely information to assist them in fully understanding their rights and obligations under the state law. (Ord. 923 § 1, 2007)

## 16.70.020 Definitions.

For the purpose of this chapter, the following words, terms and phrases shall be defined as follows:

A.   "Mobile home park conversion to resident ownership" means the conversion of a mobile home park composed of rental spaces to a condominium or common interest development, as described in and/or regulated by Government Code  Section 66427.5 and/or Section 66428.1.

B.    "Resident" or "tenant" means the person or persons owning a mobile home in a space within a mobile home park pursuant to a rental agreement. (Ord. 923 § 1, 2007)

## 16.70.030 Applicability.

The provisions of this chapter shall apply to all conversions of mobile home parks to resident ownership, except those conversions for which mapping requirements have been waived pursuant to Government Code Section 66428.1. These provisions do not apply to the conversion of a mobile home park to an alternate use pursuant to Government Code Section 65863.7 and Section 66427.4. (Ord. 923 § 1, 2007)

## 16.70.040 Information and disclosure requirements for resident survey.

To assist the residents in determining how to respond to the resident survey required by subdivision (d) of Government Code Section 66427.5, the following information and disclosures shall be provided by the park owner to each tenant household sufficiently in advance of the survey to allow its consideration:

A.   A statement describing the effects that the mobile home park conversion will have on the application of the rent control provisions of Capitola Municipal Code Chapter 2.18 for both lower

income households and for other households who continue residency as tenants. The statement shall specifically describe the effects that the conversion will have on the application of the vacancy control provisions of Chapter 2.18 of this code, and a statement describing the effects of vacancy decontrol under Government Code Section 66427.5 on the resale value of mobile homes of both lower income households and of other households which continue residency as tenants. Included with this statement shall be a separate statement prepared by the city summarizing the major provisions of the city's mobile home park rent stabilization ordinance (Chapter 2.18 of this code.)

B.    A statement specifying the income level that is applicable pursuant to subdivision (f)(2) of Government Code Section 66427.5, to determine whether households in the mobile home park qualify as a lower income household or are not lower income household, and requesting that the households identify whether they are a lower income household, or are not a lower income household.

C.    A statement specifying whether the subdivider will begin the phase-in of market level rents pursuant to subdivision (f)(1) and the rent adjustment provisions of subdivision (f)(2) of Government Code Section 66427.5 upon the sale of one lot, upon the sale of more than fifty percent of the lots, or upon the sale of some other percentage of lots.

D.    A statement specifying the method by which the fair market rent levels authorized by subdivision (f)(1) of Government Code Section 66427.5 will be established, or in the alternative, the specification of the range of rent levels that will be applicable to the subdivided units in the mobile home park, including, but not limited to, the inclusion of any inflation adjustment formula to be utilized.

E.    A statement specifying how space rents will be set for purchasers of mobile homes owned by lower income households and by other households (who continue residency as tenants under subdivision (f) of Government Code Section 66427.5).

F.    A statement specifying the method by which the sales prices of the subdivided mobile home space parcels will be established, or in the alternative, the specification of a range of purchase prices that will be applicable to the subdivided mobile home space parcels in the mobile home park, including, but not limited to, the inclusion of any inflation adjustment formula to be utilized.

G.    A statement specifying the method for determining and enforcing the controlled rents for nonpurchasing households pursuant to Government Code Section 66427.5 (f)(2), and, to the extent available, identification of the number of tenant households likely to be subject to these provisions;

H.    A statement assessing the potential for nonpurchasing residents to relocate their homes to other mobile home parks within Santa Cruz County, including the availability of sites and the estimated cost of home relocation;

I.    An engineer's report on the type, size, current condition, adequacy, and remaining useful life of each common facility located within the park, including but not limited to water systems, sanitary sewer, fire protection, storm water, streets, lighting, pools, playgrounds, and community buildings. A pest report shall be included for all common buildings and structures. "Engineer" means a registered civil or structural engineer, or a licensed general engineering contractor;

J.    If the useful life of any of the common facilities or infrastructure is less than thirty years, an engineer's estimate of the cost of replacing such facilities over their useful life, and the subdivider's plan to provide funding for same;

K.    An estimate of the annual overhead and operating costs of maintaining the park, its common areas and landscaping, including replacement costs as necessary, over the next thirty years, and the subdivider's plan to provide funding for same.

L.    A maintenance inspection report conducted on site by a qualified inspector within the previous

twelve calendar months demonstrating compliance with Title 25 of the California Code of Regulations ("Title 25 Report"). Proof of remediation of any Title 25 violations or deficiencies shall be confirmed in writing by the California Department of Housing and Community Development (HCD).

M.   A detailed description of the city and state procedures to be followed for the proposed conversion, including, but not limited to, a tentative timeline.

N.   The phone number and address of an office designated by the city council that can be contacted for further information relating to the proposed mobile home park conversion.

O.   The subdivider shall attach a copy of this chapter to each survey form. (Ord. 923 § 1, 2007)

## 16.70.050 Information and disclosure requirements for impact report.

The report by the subdivider on the impact of the mobile home park conversion required by subdivision (b) of Government Code Section 66427.5 shall include, but not be limited to, the following disclosures:

A.   That information specified by subsections A through M of Section 16.70.040, required to be provided to park tenants for purposes of the resident survey.

B.   A statement specifying the number of mobile home spaces in the park and the rental rate history for each such space over the four years prior to the filing of the application.

C.   A statement specifying the method and timetable for compliance with Government Code Section 66427.5 (a), and, to the extent available, an estimate of the number of existing tenant households expected to purchase their units within the first four years after conversion including an explanation of how the estimate was derived.

D.   An estimate of the number of residents in the park who are lower income households pursuant to subdivision (f)(2) of Government Code Section 66427.5, including an explanation of how the estimate was derived.

E.   An estimate of the number of residents in the park who are seniors (sixty-two years of age or older) or disabled, including an explanation of how the estimate was derived. (Ord. 923 § 1, 2007)

## 16.70.060 Application submittal requirements.

The following information shall be submitted as part of the resident survey results with any subdivision application for conversion to a resident owned mobile home park pursuant to Government Code Section 66427.5:

A.   A statement of the total number of spaces occupied by residents (excluding any spaces occupied by the subdivider, a relative of the subdivider, or employee of the subdivider); and the total number of votes of such residents in favor of the conversion and the total number of votes of such residents in opposition to the conversion, with no more than one vote allocated for each mobile home space.

B.   The subdivider shall demonstrate that the procedures and timing used to conduct the survey were in accordance with an agreement between the subdivider and an independent resident homeowners association, if any. In the event that more than one resident homeowners association purports to represent residents in the park, the agreement shall be with the resident homeowners association which represents the greatest number of tenant homeowners in the park.

C.   A written statement signed by the authorized representative(s) of an independent resident

homeowners' association verifying that the survey form was approved by the association in accordance with the requirements of subdivision (d)(2) of Government Code Section 66427.5.

D. A copy of the information and disclosures provided to tenant households pursuant to Section 16.70.040.

E. A copy of the tenant impact report required pursuant to Section 16.70.050.

F. A tentative subdivision and final map or parcel map unless waived pursuant to Government Code Section 66428.1. A parcel map shall be required for all projects that contain less than five parcels and do not create more condominium units or interests than the number of rental spaces that exist prior to conversion. If additional interests are created or if the project contains more than five parcels a tentative and final subdivision map shall be required. The number of condominium units or interests to be created shall not determine the type of map required unless additional condominium units or interests are created over and above the number of rental spaces that exist prior to conversion. (Ord. 923 § 1, 2007)

## 16.70.070 Criteria for approval of conversion application.

In addition to any applicable findings for the approval of subdivision or parcel maps set forth in the California Subdivision Map Act or Title 16 of this code, an application for the conversion of a mobile home park to resident ownership shall be approved only if the decision maker finds that:

A. A survey of resident support has been conducted and the results filed with the city in accordance with the requirements of Government Code Section 66427.5 and this chapter;

B. A tenant impact report has been completed and filed with the city in accordance with the requirements of Government Code Section 66427.5 and this chapter;

C. The conversion is a bona fide resident conversion. For purposes of determining whether a proposed conversion is a bona fide resident conversion, the following presumptions shall be applied based on the results of the survey of resident support conducted in accordance with Government Code Section 66427.5 and with this chapter. The presumptions created by this subsection may be overcome through the submission of substantial evidence either at or prior to the hearing.

1. Where the survey of resident support shows that fifty percent or more of the resident survey vote supports the conversion to resident ownership, the proposed conversion shall be presumed to be a bona fide resident conversion.

2. Where the survey of resident support shows that less than fifty percent of the resident survey vote supports the conversion to resident ownership, the proposed conversion shall be presumed to not be a bona fide resident conversion and the subdivider shall have the burden of demonstrating that the proposed conversion is a bona fide resident conversion. (Ord. 923 § 1, 2007)

## 16.70.080 Tenant notification.

The following tenant notifications are required:

A. If the application for conversion is approved, the subdivider shall give each resident household written notice of its exclusive right to contract for the purchase of the dwelling unit or space it occupies at the same or more favorable terms and conditions than those on which such unit of space shall be initially offered to the general public. The right shall run for a period of not less than ninety days from the issuance of the subdivision pubic report ("white paper") pursuant to California Business and Professions Code Section 11018.2, unless the subdivider received prior written notice of the resident's

Case 5:07-cv-05043-RS    Document 7    Filed 11/08/2007    Page 24 of 24    5 of 5

intention not to exercise such right.

B.    If the application for conversion is approved, the subdivider shall give each resident household written notice of its right to continue residency as a tenant in the park as required by Government Code Section 66427.5 (a). (Ord. 923 § 1, 2007)