1  Robert S. Coldren, Esq., Bar No. 81710
   Mark D. Alpert, Esq., Bar No. 138152
2  Beau M. Chung, Esq., Bar No. 240451
   malpert@hkclaw.com
3  HART, KING & COLDREN
   A PROFESSIONAL LAW CORPORATION
4  200 Sandpointe, Fourth Floor
   Santa Ana, California 92707
5  Telephone:   (714) 432-8700
   Facsimile:   (714) 546-7457
6
7  Attorneys for Plaintiff, SURF AND SAND, LLC

8            UNITED STATES DISTRICT COURT OF CALIFORNIA

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 SURF AND SAND, LLC, a California          )   Case No.:  C07 05043 RS
   Limited Liability Company,                )
12                                           )   Judge:     Hon. Richard Seeborg
                 Plaintiff,                  )   Dept.:     Ctrm. 4
13                                           )
         v.                                  )   **E-FILING**
14                                           )
   CITY OF CAPITOLA; and DOES 1              )   **PLAINTIFF'S OPPOSITION TO**
15 through 100, inclusive,                   )   **MOTION TO DISMISS**
                                             )
16               Defendants.                 )   DATE:   December 19, 2007
                                             )   TIME:   9:30 a.m.
17                                           )   CTRM:  3
                                             )
18 _____         )   Complaint Filed:  October 1, 2007
                                                 Trial Date:        None Set
19

20

21

22

23

24

25

26

27

28

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

38019.004/4830-3859-8402v.1

*PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS - C07 05043 RS*

# TABLE OF CONTENTS

**Page**

1.    INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

2.    FACTUAL BACKGROUND ..........................................................................................3

    A.    The Capitola Rent Control Ordinance ............................................................. 3
    B.    The Capitola Park Closure Ordinance Is Adopted........................................... 5
    C.    The City Facilitates the Conversion of Mobilehome Parks to City and Tenant
        Ownership ........................................................................................................ 6
    D.    The City Prevents Surf & Sand Mobilehome Park Conversions...................... 7

3.    ARGUMENT ................................................................................................................8

    A.    Surf and Sand States a Claim For Private Taking............................................ 8
    B.    Surf and Sand States a Claim For Denial of Equal Protection ...................... 13
    C.    Surf and Sand States a Claim For Denial of Substantive Due Process.......... 14
    D.    Surf and Sand's Claims Are Ripe .................................................................. 16
    E.    The Ripeness Requirement Only Applies to Taking Claims ......................... 17
    F.    Surf and Sand Is Not Required to Pursue An Administrative Process That Cannot
        Remedy the Taking ........................................................................................ 18
    G.    This Court Has Authority to Hear Surf and Sand's Taking Claims .............. 20

        1.    The Court Retains Prudential Jurisdiction ........................................ 20
        2.    The Court May Hear A Supplemental State Inverse Condemnation
            Claim ................................................................................................ 21
    H.    Surf and Sand Properly States A Taking Claim............................................. 22
    I.    Surf and Sand Asserts Timely Claims All Triggered By the Adoption of The
        Conversion Ordinance .................................................................................... 25

4.    CONCLUSION.............................................................................................................26

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

## TABLE OF AUTHORITIES

**Page**

*99 Centrals Only Stores v. Lancaster Redevelopment Agency,*
    237 F. Supp. 2d 1123 (CD Cal. 2001) ..................................................................12

*477-478,*
    162 L. Ed. 2d, at 450 ..............................................................................................13

*Abbott Laboratories v. Gardner,*
    387 U.S. 136 (1967).................................................................................................24

*Agins v. Tiburon,*
    447 U.S. 255 (U.S. 1980).........................................................................................25

*Armendariz v. Penman,*
    75 F.3d 1311 (9th Cir. 1996) .............................................................................10, 12

*Armstrong v. United States,*
    364 U.S. 40 ..............................................................................................................26

*Cienega Gardens v. United States,*
    331 F.3d 1319 (Fed Cir. 2003) ...............................................................................26

*City of Chi. v. International College of Surgeons,*
    522 U.S. 156 (U.S. 1997)........................................................................................25

*Cleburne v. Cleburne Living Center, Inc.,*
    473 U.S. 432, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985)..................................12, 15

*De Anza Properties X, Ltd. v. County of Santa Cruz*
    (9th Cir. 1991) 936 F.2d 1084 ...............................................................................27

*Department of Agriculture v. Moreno,*
    413 U.S. 528, 37 L. Ed. 2d 782, 93 S. Ct. 2821 (1973)...................................12, 15

*Equity Lifestyle Properties v. County of San Luis Obispo,*
    2007 U.S. App. LEXIS 22142 (9th Cir. 2007) ........................................................19

*Forseth v. Village of Sussex,*
    199 F.3d 363 (7th Cir. 2000) ..................................................................................18

*Hacienda Valley Mobile Estates v. City of Morgan Hill,*
    353 F.3d 651 (9th Cir. 2003) ...............................................................................3, 23

*Hawaii Housing Authority v. Midkiff,*
    467 U.S. 229 ...............................................................................................10, 12, 14

*Heiner v. Donnan,*
    285 U.S. 312 (1932)................................................................................................17

*Hillsborough Township v. Cromwell,*
    326 U.S. 620 (1946)................................................................................................23

*Hoehne v. County of San Benito,*
    870 F.2d 529 (9th Cir. 1989) .............................................................................18, 19

*Holmes v. California Army National Guard,*
    124 F.3d 1126 (9th Cir. 1997) ................................................................................17

*Kelo v. City of New London,*
    545 U.S. 469 (U.S. 2005).............................................................................10-13, 15

*Kinzli v. City of Santa Cruz,*
    818 F.2d 1449 (9th Cir. 1987) ................................................................................19

*Kirk v. Secretary of Health and Human Services,*
    667 F.2d 524 (6th Cir. 1981) ..................................................................................17

*Lucas v. S.C. Coastal Council,*
    505 U.S. 1003 (U.S. 1992)......................................................................................13

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

# TABLE OF AUTHORITIES

Page

*Lynch v. Household Finance Corp.,*
405 U.S. 538 (U.S. 1972)..................................................................25-26

*MHC v. City of San Rafael,*
2006 U.S. Dist. LEXIS 89195 (D. Cal. 2006) ..............................12, 22

*Mine Workers v. Gibbs,*
383 U.S. 715, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966)........................25

*Missouri Pacific R. Co. v. Nebraska,*
164 U.S. 403 (1896)...............................................................................10

*Nollan v. Cal. Coastal Commission,*
483 U.S. 825, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987).....................25

*Norco Construction, Inc. v. King County,*
801 F.2d 1143 (9th Cir. 1986) ..............................................................19

*Palazzolo v. Rhode Island,*
533 U.S. 606 (2001)..........................................................................3, 22

*Patel v. Penman,*
103 F.3d 868 (9th Cir. 1996) ................................................................25

*Penn Central Transport Co. v. New York City,*
438 U.S. 104 (1978)...............................................................................25

*Shelley v. Kraemer,*
334 U.S. 1 ...............................................................................................26

*Shelter Creek Development Corp. v. Oxnard,*
838 F.2d 375 (9th Cir. 1988) ................................................................19

*St. Clair v. Chico,*
880 F.2d 199 (9th Cir. 1989) ................................................................19

*Suitum v. Tahoe Reg'l Planning Agency,*
520 U.S. 725 (U.S. 1997).................................................................4, 24

*Ventura Mobilehome Communities v. City of San Buenaventura,*
371 F.3d 1046 (9th Cir. 2004) ..............................................................17

*Weinberger v. Wiesenfeld,*
420 U.S. 636 (1975)...............................................................................23

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

*PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS*

## TABLE OF AUTHORITIES

Page

*Williamson County Reg'l Planning Commission v. Hamilton Bank,*
    473 U.S. 172 (1985)......................................................................3-14, 17-19, 22-24

*Willowbrook v. Olech,*
    528 U.S. 562 (2000)......................................................................12, 15

*Yee v. City of Escondido,*
    503 U.S. 519 (U.S. 1992)......................................................................25

### STATE CASES

*Cotati Alliance for Better Housing v. City of Cotati*
    (1983) 148 Cal. App. 3d 280 ......................................................................22

*Donohue v. Santa Paula West Mobile Home Park*
    (1996) 47 Cal. App. 4th 1168 ......................................................................10

*El Dorado Palm Springs v. City of Palm Springs,*
    96 Cal. App. 4th 1153 (Cal. Ct. App. 2002) ......................................................................10

*Kavanau v. Santa Monica Rent Control Board,*
    16 Cal. 4th 761 (1997) ......................................................................19, 23

*Oceanside Mobilehome Park Owners' Association v. City of Oceanside,*
    157 Cal. App. 3d 887 (1984) ......................................................................22

### FEDERAL STATUTES

28 U.S.C. § 1367(a) ......................................................................25

### STATE STATUTES

Government Code § 66427 ......................................................................8
Government Code § 66427.5 ......................................................................10

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

## 1.    INTRODUCTION AND SUMMARY OF ARGUMENT

Surf and Sand Mobilehome Park ("Park") is located on the Santa Cruz coastline. It is some of the most valuable real estate in America, or at least it would be without the maze of City regulations. Years of application of a rent control have caused an ever increasing erosion of market returns, such that the Reeds, who built the park approximately 50 years ago[1], are subsidizing 85% of the fair market rent. The tenants of Surf and Sand are not only benefiting from these ridiculously low rents, with no showing of economic need, but also are profiting by selling decades old mobile homes with little or no value outside the Park for hundreds of thousands of dollars. (Complaint ¶18)  For example, a 50 year old mobilehome sold for $479,000.[2]

The Motion to Dismiss is predicated on this Court accepting Defendant City of Capitola's ("City") fictional justification for adopting a mobile home conversion ordinance on its face.  The reality is that the City adopted the mobilehome conversion ordinance to stop Plaintiff Surf and Sand, LLC ("Surf and Sand") from subdividing and converting the Park to tenant ownership to prevent Surf and Sand from selling lots in the Park for fair market value.

The City claims it adopted the conversion ordinance as an "urgency ordinance" in order to "implement" the purpose of a state mobilehome park subdivision law that had existed for years before the Conversion Ordinance was adopted. The City claims it was trying to prevent "sham conversions."  The reality is that the City adopted the conversion ordinance in order to prevent Surf and Sand's bona fide conversion from moving forward.  The City acted to make certain that the tenants, not the park owner would have the beneficial value of the underlying real property.

When Surf and Sand took the first step to begin subdivision conversion-- a tenant meeting to simply discuss a proposed conversion to a tenant owned park, the

---

[1]    Decades before rent control was adopted.

[2]    This specific example is not alleged in the complaint, but can be considered an "offer of proof" for trial.

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

City responded within a week by adopting a conversion ordinance as an "urgency" ordinance. This action was obviously designed to prevent Surf and Sand from subdividing without the consent of the tenants[3]. The effect of this ordinance will be to prevent subdivision without offering tenants the right to buy lots at a fraction of fair market price. The City has decided to take the vast majority of the market value of this ocean front property from the Reeds and give it to the tenants. The City will not allow a conversion to move forward that would frustrate that goal. Thus, ironically enough, the conversion ordinance the City says was adopted to prevent sham conversions, was actually adopted to prevent a real conversion from being completed.

The substantive thrust of the Motion to Dismiss is predicated on the assumption that this Court cannot consider evidence of the actual motivation that drove the City's decision, that it must accept the self-serving findings made in adopting the conversion ordinance as true. This Court can and must look beyond the findings and allow a trial on the merits where the actual motivation of the City is diaphanously clear.

The procedural thrust of the Motion to Dismiss is based on the assertion that Surf and Sand's constitutional claims are not ripe. In fact, the ripeness doctrine under *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985) ("*Williamson*") is only relevant to Surf and Sand's taking claims. Surf and Sand's claims for private taking, denial of equal protection and denial of substantive due process are not subject to the ripeness requirement of *Williamson*.

The ripeness doctrine should not be applied to taking claims where the nature and extent of the regulation is known. *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001) Similarly, the ripeness doctrine does not apply where it can be established that seeking state compensation would be futile. *Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003). Finally, the ripeness doctrine is

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

---

[3]    As discussed below, the conversion ordinance creates a "presumption" that the conversion is not bona fide, but establishes no criteria or standard for allowing the park owner to rebut the presumption.

prudential, rather than mandatory. *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 (U.S. 1997)

In this case, it is clear that the only "state compensation" remedy available to Surf and Sand—a "fair return" rent increase—cannot significantly alter the nature of the regulation. Indeed, the City's rent control law <u>requires</u> the City to disregard the Park's market value and instead base a rent increase on the investment the Reeds made 50 years ago when they built the park. Thus, the only "state compensation" remedy available to Surf and Sand cannot remedy the taking.

Finally, the Motion to Dismiss asserts that Surf and Sand cannot state a facial challenge to the rent control ordinance or closure ordinance because the laws were adopted more than two years prior to the filing of the complaint. The City ignores the fact that all Surf and Sand's facial constitutional claims are triggered by the adoption of the conversion ordinance in 2007.

## 2.    FACTUAL BACKGROUND

Surf and Sand Mobilehome Park (the "Park") was built by the Reed family approximately 50 years ago and is still owned and managed by the Reeds. (Complaint ¶ 7) The Park is located on some of the most valuable ocean front property in America, in Santa Cruz County. (Complaint ¶ 7) Title to the park is held by Surf and Sand, LLC ("Surf & Sand"), a California limited liability company managed by Ronald Reed. (Complaint ¶ 3)

Until approximately 1981 the Park operated, without rent control, in unincorporated Santa Cruz County. In or about 1982, the County of Santa Cruz adopted a Mobilehome Rent Control Ordinance. (Complaint ¶ 8) In the mid-1990s, the Park became part of the City of Capitola and therefore became subject to the City's already existing Rent Control Ordinance ("RCO"). (Complaint ¶ 9)

### A.    The Capitola Rent Control Ordinance

The City initially adopted mobilehome rent control in 1979 ("RCO or Rent Control Ordinance") and has had some form of mobilehome rent control continuously

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

1  in place since that time. (Complaint ¶ 9)  Since at least 1994, the RCO has limited
2  annual "automatic" CPI adjustments to no more than sixty percent (60%) of the
3  increase in the CPI. (Complaint ¶ 9)  (A copy of the RCO is attached as Exhibit 1 to
4  the Request to Take Judicial Notice submitted with this Opposition.)

5  In applying the RCO, the City has officially determined that the question or
6  issue of whether application of the RCO causes a taking is "irrelevant" to its
7  administrative rent increase process. (Complaint ¶10)   Consistent with its
8  interpretation and application of the RCO, the City has established that rent increases
9  under the RCO will be based on the determination of whether the Park owner is
10  earning a "fair return." There is no definition of that term and the standard does not
11  consider the issue of whether the application of rent control has caused a taking.

12  The RCO mandates in § 2.18.400 that ". . . fair rate of return shall be
13  determined with reference to reasonable investment rather than property value."
14  (Complaint ¶ 11)  In addition, the RCO requires in §2.18.410 that:

15  It will be presumed that application of this chapter and previous rent
    review ordinances has resulted in a fair rate of return. A park owner who
16  believes that presumption can be overcome may apply to the city council
    for determination of the minimum increase necessary to produce a fair
17  rate of return." (Complaint ¶ 12)

18  Similarly, in Section 2.18.410, the RCO states "If the application is successful,
19  rents shall be increased to the minimum amount necessary to produce a fair rate of
20  return." (Complaint ¶ 13)

21  As a result, the RCO, by its explicit terms, prevents the City from considering
22  the underlying value of the property in determining a rent increase and requires the
23  City to keep rents at the lowest level possible that would provide a "fair return" on
24  "reasonable investment," rather than account for the underlying value of the property
25  or alternative uses. (Complaint ¶ 14)

26  Because the Reeds built the property many years ago, their actual investment,
27  even adjusted for inflation, is a small fraction of the actual underlying, unregulated
28  value of the property. (Complaint ¶ 15)

1    As a result of the statutory framework of the RCO, space rents have fallen
2  further and further below fair market rents over time. Space rents are currently, on
3  average, in the range of fifteen percent (15%) of fair market value. (Complaint ¶ 16)
4  The application of the RCO has forced Surf & Sand to bear the burden of a massive
5  subsidy of space rent. The City and its RCO have deprived Surf & Sand of the vast
6  majority of the value of the subject property. (Complaint ¶ 17)

7    In addition, residents of the Park have benefited from huge transfer premiums in
8  the sale of home—amounting to hundreds of thousands of dollars per home--
9  representing a transfer of the underlying value of the property from park owner to
10 tenants. (Complaint ¶ 18) Surf & Sand is informed and believes that when homes are
11 sold in place, only a very small percentage – less than 10% - of the sale price
12 represents the actual value of the home. The remainder is the "transfer premium"
13 based on the value of discounted future rent. (Complaint ¶ 18)

14    The RCO, as it has been interpreted and applied by the City, renders it
15 impossible for the Park owner to receive a rent adjustment in an amount that will
16 prevent this enormous subsidy from continuing to be borne by the Reeds and Surf and
17 Sand. (Complaint ¶ 18)

18    **B.    The Capitola Park Closure Ordinance Is Adopted**

19    The City adopted a Park Closure Ordinance ("PCO" or "Closure Ordinance") in
20 or about 1993. A copy of the PCO is attached as Exhibit 2 to the Request to Take
21 Notice. The PCO specifies a burdensome closure procedure, which, among other
22 things, requires a park owner to provide an appraisal of every mobilehome by an
23 appraiser selected by the City, pay for a relocation specialist approved by the City and,
24 most importantly, establishes proposed measures to "mitigate" the adverse impacts of
25 a park closure upon the mobilehome park residents. (See Ord. Section 17.90.030,
26 Complaint ¶ 19)

27    The PCO requires a Park owner to pay "relocation costs" which include paying
28 the residents for the "value" of their mobilehome and paying the residents the cost of

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

5
*PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS*

acquiring a comparable mobilehome or other comparable property.  (See Ord. Section 17.90.070(D), Complaint ¶ 21)  Because the application of the RCO has artificially inflated the "in place" value of mobilehomes in the City, the PCO effectively transfers the vast majority of the land value of the mobilehome from Plaintiff as the Park owner to the tenant.  (See Ord. Section 17.90.070(D), Complaint ¶ 21) The cost of acquiring "alternative comparable housing" would require Plaintiff to pay the fair market value of acquiring comparable housing.  The net effect of the demanded relocation costs would be to force the Park owner to buy its own property from the residents,  paying them the vast majority at the fair market value of the underlying property, in order to close the Park. (See Ord. Section 17.90.070(D), Complaint ¶ 21)

The PCO has an exemption for payment of such relocation costs, but only based on a showing that "imposition of any relocation obligations would eliminate substantially all reasonable use or economic value of the property for alternate uses." This exemption would therefore only be available to prevent the confiscation of almost one hundred percent  (100 %) of the economic value of the property. (See Ord. Section 17.90.070(D), Complaint ¶ 22)

**C.    The City Facilitates the Conversion of Mobilehome Parks to City and Tenant Ownership**

Surf and Sand alleges that as the RCO, individually and in concert with the PCO, has became more and more confiscatory and the City sought mechanisms to protect the purported "equity" of tenants, many of whom have paid tens of thousands of dollars more for mobilehomes than such are worth in order to obtain price fixed rent.   (Complaint ¶ 23)  Surf and Sand  alleges that the City determined that mobilehome parks would eventually have to be converted to publicly owned assets and/or tenant owned assets to allow tenants to keep the value of the underlying property the City took from park owners for said tenants in the first place. (Complaint ¶ 23)  The City's strategy has been hugely successful, resulting in the conversion of all but  two  mobilehome  parks  to  either  City  or  tenant  ownership  without

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

compensating the private park owners for the conversion of their property to public and/or private use. (Complaint ¶ 24)

The City has supported the conversion of mobilehome parks to private ownership where the terms of the sale protected the "equity" the City created through the application of the RCO. (Complaint ¶ 25)   Indeed, as recently as  2006 and 2007, the City "facilitated" and supported the confiscation of Turner Lane Mobilehome Park, approving its subdivision to tenant ownership on terms which allowed residents to purchase lots they had previously rented for a fraction of their true market value. (*Id.*)

### D.    The City Prevents Surf & Sand Mobilehome Park Conversions

Surf and Sand concluded that subdividing the Park was the only economically feasible method of recovering the beneficial ownership, control and underlying value of their property. (Complaint ¶ 27)  On or about August 3, 2007, the owners of Surf and Sand took the first steps toward an attempt to initiate the process of subdividing the Park, holding a tenant meeting for the purposes of initiating a survey of residents required to subdivide the Park under California Government Code § 66427. (Complaint ¶ 27)  Within a week of that meeting, the City adopted the Conversion Ordinance ("Conv. Ord.") as an "urgency ordinance" regulating the conversion of mobilehome parks to resident ownership. *Id.*  (A copy of the urgency ordinance is attached as Exhibit 3 to the Request to Take Notice.  The permanently adopted Conv. Ord. is attached as Exhibit 4).

The Conv. Ord. establishes a presumption that any conversion that does not have the majority approval of park residents is not a "bona fide" conversion.  While the Conv. Ord. provides that the presumption is "rebuttable," it does not state how the presumption is rebuttable or establish any criteria for determining a conversion is bona fide when the conversion does not have majority approval.  (Ord. §16.70.070©(1), Complaint ¶ 28)   No studies were undertaken by the City to assess the merits of mobilehome park subdivisions, the burdens imposed by the new regulatory scheme

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

1  upon innocent property owners, or the private transfer of wealth being promoted by
2  this proposed legislation. (*Id.* Complaint ¶ 30)

3      The City purported to adopt the Conv. Ord. as an "urgency" ordinance even
4  though its stated purpose was to assure compliance with statewide subdivision statutes
5  that already exist.  (Complaint ¶ 28)   In reality, the it was adopted to make it
6  impossible for Surf and Sand to proceed with a conversion unless the Park owner
7  would agree to and accept terms of conversion agreeable to a majority of park
8  residents.  (Complaint ¶ 27)  In other words, the City has acted to protect and make
9  permanent the transfer of wealth caused by the application of the RCO.  (Complaint ¶
10  27)

11      Surf and Sand alleges that the actions of the City are part of a pattern of
12  behavior undertaken by the City designed to facilitate the confiscation of mobile home
13  park owner's property for the use and benefit of the tenants.

14      Surf and Sand alleges the City has engaged in a course of conduct designed to
15  effectively confiscate privately held mobilehome parks for the benefit of park tenants
16  and to require Plaintiff and other park owners to provide "affordable housing" stock
17  for the City. (Complaint ¶ 32) In the process, the City has taken the vast majority of
18  the value of Surf & Sand's property without compensation.  (Complaint ¶ 32)

19  **3.**   **ARGUMENT**

20      **A.**   **Surf and Sand States a Claim For Private Taking**

21      The thrust of Surf and Sand's "private taking" theory is that the City adopted
22  the Conversion Ordinance in order to prevent Surf and Sand from subdividing and
23  selling lots at their fair market value in order to make permanent the transfer of wealth
24  caused by the application of rent control. (See Complaint ¶ ¶ 27-30, 34-36 )   Tenants
25  have been able to sell homes for hundreds of thousands of dollars more than they are
26  worth, effectively selling the underlying value of Surf and Sand's property in the form
27  of these sale "premiums."  (Complaint ¶ 18)  The City has transferred the value of the
28  property from park owner to tenant, but the conversion of the park to a resident owned

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

subdivision will allow Surf and Sand to recover some measure of that value by enabling Surf and Sand to sell lots at their fair market value. The adoption of the Conversion Ordinance made the City's confiscation of Surf and Sand's property for the benefit of the tenants permanent and irreversible.

A private taking occurs where a public agency takes taking property for the purpose of conferring a private benefit on a particular private party. *Kelo v. City of New London*, 545 U.S. 469, 477-478 (U.S. 2005), citing *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 245 and *Missouri Pacific R. Co. v. Nebraska*, 164 U.S. 403 (1896). The Ninth Circuit observed in *Armendariz v. Penman*, 75 F.3d 1311, 1320 (9th Cir. 1996) that "It is overwhelmingly clear from more than a century of precedent that the government violates the Constitution when it takes private property for private use . . ." (*Id* at 1320)

The City claims its purpose in adopting the Conversion Ordinance on an emergency basis was only to effectuate existing state laws designed to assure park conversions under Government Code § 66427.5 are not sham transactions. The City cites the official resolutions adopting the Conversion Ordinance in support of its position. The "urgency" conversion ordinance adopted by the City was supposedly adopted to "implement" the "mandatory provisions" a state law that already existed in order to prevent "sham conversions."[4]" (See Exhibit 3, §16.70.010) The readopted ordinance adopts the same justifications. (See Exhibit 4, § 16.70.010)

---

[4] The concern over "bona fide" conversions is that park owners may subdivide a mobile home park without any intention of actually converting the park to tenant ownership in order to take advantage of a rent control exemption. See *El Dorado Palm Springs v. City of Palm Springs*, 96 Cal. App. 4th 1153, 1166 (Cal. Ct. App. 2002) (If conversion fails and no units are ever sold, section 66427.5 cannot be used to evade a local rent control ordinance.) *Donohue v. Santa Paula West Mobile Home Park* (1996) 47 Cal. App. 4th 1168. In *Donahue*, the park owner argued the mere filing of a subdivision application resulted in an exemption from state rent control laws. The Court of appeal rejected that position, noting ". . . if respondents are correct, every park owner could purchase a lifetime exemption from local rent control for the cost of filing a tentative map, even if park residents have no ability to purchase and even if local government disapproves the tentative map. Park residents could then be economically displaced by unregulated rent increases. This is the very circumstance section 66427.5 was enacted to prevent." 47 Cal. App. 4th at 1175.

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

1    Surf and Sand asserts that the adoption of the Conversion Ordinance had

2  nothing to do with assuring that Surf and Sand genuinely intended to convert the park

3  to resident ownership.  The circumstances surrounding the adoption of the Conversion

4  Ordinance and the substance of the Ordinance strongly support this conclusion.

5    The idea that an emergency ordinance was necessary to implement a state law

6  that already exists—and has for many years—is itself highly suspect.  In addition, the

7  official findings supporting the ordinance do not specify any particular shortcoming,

8  flaw or gap in the existing state law.  (See Exhibit 3 to Request to Take Notice)  The

9  only "emergency" purportedly justifying the adoption of the urgency ordinance was

10  the fact that Surf and Sand was actually seeking to subdivide under the existing state

11  law. (*Id*. Section4)

12    There was no basis for the City to conclude that Surf and Sand does not

13  genuinely desire to convert the park and made no findings to that effect.  Indeed, the

14  only formal step that Surf and Sand had taken toward subdividing was a tenant

15  meeting to discuss conversion.    (Complaint ¶ 27)    Within a week, the urgency

16  ordinance was adopted.  *Id.*

17    The Conversion Ordinance has no provisions which were calculated to assure

18  that Surf and Sand was genuinely interested in subdividing the Park.  The Conversion

19  Ordinance is transparently calculated to prevent subdivision, no matter how genuine

20  the park owner's interest, without the consent of the tenants.   The Conversion

21  Ordinance presumes that without majority tenant approval, that the conversion is

22  presumed not to be bona fide and establishes no mechanism for rebutting that

23  presumption.  In short, the adoption of the Conv. Ord. had nothing to do with assuring

24  that the conversion was "bona fide."  Instead, it was adopted to prevent a bona fide

25  conversion, except on financial terms acceptable to the tenants.

26    The City's argument comes down to the conclusion that this Court must accept

27  the stated justification for adopting the Conversion Ordinance, even if there is

28  substantial reason to believe that its actual justification.  In *Kelo*, supra, the Supreme

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

Court recognized that an unusual use of government power could "would certainly raise a suspicion that a private purpose was afoot" *Id* at 487, citing with approval to *99 Cents Only Stores v. Lancaster Redevelopment Agency*, 237 F. Supp. 2d 1123 (CD Cal. 2001) and *Willowbrook v. Olech*, 528 U.S. 562, 564-565 (2000).

In *Armendariz, supra*, the Ninth Circuit concluded that courts were not required to simply accept the justifications offered by public agencies, observing:

> If officials could take private property, even with adequate compensation, simply by deciding behind closed doors that some other use of the property would be a "public use", and if those officials could later justify their decisions in court merely by positing "a conceivable public purpose" to which the taking is rationally related, the "public use" provision of the Takings Clause would lose all power to restrain government takings. (75 F.3d at 1322)

In *MHC v. City of San Rafael*, 2006 U.S. Dist. LEXIS 89195, 42-43 (D. Cal. 2006), this District recent reached the conclusion in the context of mobilehome rent control that a park owner could sustain a private taking claim based on the application of mobilehome rent control under similar facts, relying, in large part on language in *Kelo* and *MidKiff*. The Court in *MHC* recognized that deference to the official, stated purpose of the ordinance was appropriate, noting

> . . . Under the standards set out in *Midkiff* and *Kelo*, courts defer to legislative judgments of this kind: the court must accept the public purpose of the ordinance unless the City's findings are "palpably without reasonable foundation." *Midkiff*, 467 U.S. at 241.

However, as the Court in *MHC* observed, Justice Kennedy's deciding vote in *Kelo* made quite clear that judicial deference regarding the public use clause has limits:

> A court applying rational-basis review under the Public Use Clause should strike down a taking that, by a clear showing, is intended to favor a particular private party, with only incidental or pretextual public benefits, just as a court applying rational-basis review under the Equal Protection Clause must strike down a government classification that is clearly intended to injure a particular class of private parties, with only incidental or pretextual public justifications. See *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 446-447, 450, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985); *Department of Agriculture v. Moreno*, 413 U.S. 528, 533-536, 37 L. Ed. 2d 782, 93 S. Ct. 2821 (1973). As the trial court in this case was correct to observe: 'Where the purpose [of a taking] is

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

economic development and that development is to be carried out by private parties or private parties will be benefited, the court must decide if the stated public purpose--economic advantage to a city sorely in need of it--is only incidental to the benefits that will be confined on private parties of a development plan.' App. to Pet. for Cert. 263. See also ante, at 477-478, 162 L. Ed. 2d, at 450. (545 U.S. at 491)

Finally, Justice Kennedy provided direction to courts considering such claims:

A court confronted with a plausible accusation of impermissible favoritism to private parties should treat the objection as a serious one and review the record to see if it has merit, though with the presumption that the government's actions were reasonable and intended to serve a public purpose. (*Id.*)

This Court does not, of course, have the evidence it would have before it on a motion for summary judgment or at trial. The allegations of the complaint support the conclusion that the justifications adopted by the City for adopting the Conversion Ordinance were "palpably without reasonable foundation" and, under Justice Kennedy's formulation in *Kelo*, "intended to favor a particular private party, with only incidental or pretextual public benefits." There is certainly the possibility that a "plausible case" can be made by Surf and Sand of impermissible favoritism to park tenants. Surf and Sand's private taking claim cannot be dismissed without consideration of that case.

The question of whether the City of Capitola has caused a private taking cannot be decided based only on whether its staff and legal counsel were able to formulate some defensible basis for making the decision. In *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1025 (U.S. 1992), fn 12, the Supreme Court responded to a similar argument in the dissent of Justice Blackmun, who had cited the stated purposes of a South Carolina Coastal Act in asserting that a ban on development of coastal property did not constitute a taking:

In JUSTICE BLACKMUN's view, even with respect to regulations that deprive an owner of all developmental or economically beneficial land uses, the test for required compensation is whether the legislature has recited a harm-preventing justification for its action. See post, 505 U.S. at 1039, 1040-1041, 1047-1051. Since such a justification can be formulated in practically every case, this amounts to a test of whether the legislature has a stupid staff. We think the Takings Clause requires courts

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

to do more than insist upon artful harm-preventing characterizations.

The City's defense of a viable private taking claim cannot be resolved against Surf and Sand on a Motion to Dismiss simply based on the fact that its staff was able to prepare "artful harm-preventing characterizations" to justify actions undertaken to use the power of government to strip Surf and Sand of its property and give that property to a group of park tenants.

Finally, it is important to observe that the ripeness requirement of *Williamson* does not apply to private taking because the action challenges the right of the government to take. See, *Midkiff*, 467 U.S., at 245 ("A purely private taking could not withstand the scrutiny of the public use requirement; it would serve no legitimate purpose of government and would thus be void") Thus, it is irrelevant whether Surf and Sand has sought "state compensation."

## B.  Surf and Sand States a Claim For Denial of Equal Protection

Surf and Sand alleges that the City has adopted and interpreted the RCO, PCO and Conv. Ord. to intentionally deprive Surf and Sand of its property rights. (Complaint ¶ 34)  Surf and Sand alleges it has been treated differently than other property owners and mobile home park owners in the City as part of a concerted plan to convert Surf and Sand's property to the use and benefit of tenants.  *Id*.  The City is alleged to effectuate this plan by:  (1) intentionally depriving such Park owners of the economic value of their assets; (2) preventing such Park owners from closing the Parks; and (3) preventing the conversion of Parks in order to force Park owners to sell their property to the City or tenant-supported entities at a small fraction of its value. (Complaint ¶ 35)  In particular, the City adopted the Conversion Ordinance to prevent Surf and Sand from proceeding with the subdivision conversion of the Park, even though only a few months before it had approved the subdivision of Turner Lane—a park recently purchased by tenants under exactly the same existing state law. (Complaint ¶ 35)

Surf and Sand alleges the City's differential treatment of Surf and Sand is for

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

*PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS*

reasons wholly unrelated to any legitimate state objective. The City has intentionally caused the de facto conveyance of the property of Surf and Sand (and similarly situated Park owners) to be given to tenants and the City's actions were undertaken with the purpose of continuing to prevent conversion of Plaintiff's property through the application of the RCO, the adoption of the PCO, and the adoption of the Conversion Ordinance. (Complaint ¶ 36)

In *Willowbrook v. Olech*, 528 U.S. 562 (U.S. 2000), the Supreme Court concluded that the Circuit Court had probably reversed the dismissal of an equal protection claim maintained by a "class of one" where the plaintiff had alleged that state action was motivated solely by improper purposes wholly unrelated to any legitimate state objective. *Id.* at 563. As Justice Kennedy observed in his concurrence in *Kelo, supra*, a court applying rational-basis review under the Equal Protection Clause must strike down a government classification that is clearly intended to injure a particular class of private parties, with only incidental or pretextual public justifications. 545 U.S. at 491, citing *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 446-447, (1985); *Department of Agriculture v. Moreno*, 413 U.S. 528, 533-536, (1973).

Surf and Sand has alleged a substantial equal protection claim. Surf and Sand has alleged facts which make give rise to the conclusion that the stated justification for the adoption of the Conversion Ordinance was a mere pretext. This claim cannot be resolved on a motion to dismiss.

### C.    Surf and Sand States a Claim For Denial of Substantive Due Process

The City's defense to Surf and Sand's substantive due process claims is its reiteration of its conclusion that the Conversion Ordinance serves the valid purpose of preventing "sham" conversions of mobilehome parks. As with Surf and Sand's private taking and equal protection claims, the City's assumption that this Court can look only to the official stated purpose of the ordinance in considering a substantive due process claim is erroneous.

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

More importantly, the Motion simply ignores the substantive grounds for the substantive due process claims. The complaint alleges substantive due process claims based on the assertion of arbitrary, capricious and unreasonable conduct based on the allegation that the structure of the ordinance itself bears no rational relationship to its actual stated justification. Surf and Sand alleges:

1.    The Conversion Ordinance purports to determine whether a subdivision is a "bona-fide" effort by the Park owner to subdivide the Park, but irrationally and arbitrarily adopts as the only stated criteria in the Conversion Ordinance for determining whether the conversion is "bona-fide" is whether a majority of residents support conversion of the Park;

2.    The Conversion Ordinance purports to adopt a "rebuttable presumption" that a conversion is not bona fide where a majority of residents do not support the conversion (Ord. § 16.70.070(C)(1)), but sets forth no grounds or basis for the Park owner to rebut the presumption or any criteria for the City to determine whether the presumption has been rebutted;

3.    The City purported to adopt an "urgency" ordinance even though its stated purpose was to assure compliance with subdivision statutes that already existed, with the plain purpose of preventing Surf and Sand from proceeding with subdivision, except on such terms as would be dictated by the City and Park residents. (Complaint ¶ 49)

In short, the operative provisions adopted by the City have no rational relationship to determining whether Surf and Sand actually intends to subdivide the Park. The ordinance adopts a "rebuttable" presumption that a conversion which is not supported by a majority of residents is a sham conversion. This presumption is, itself, constitutionally invalid because it is not rationally related to the question of whether the park owner is truly intending to subdivide the park or is engaging in a sham transaction in an effort to avoid rent control. Even if 100 percent of the tenants opposed subdivision, it would not establish that the park owner did not truly intend to

1    subdivide the park.  A presumption must be rationally related to the fact it is
2    attempting to establish. See, e.g. *Holmes v. California Army National Guard*, 124 F.3d
3    1126, 1136 (9th Cir. 1997); *Kirk v. Secretary of Health and Human Services*, 667 F.2d
4    524, 534 (6th Cir. 1981).

5        Even assuming the rebuttable presumption created by majority resident
6    opposition is rationally related to the question of whether the conversion is bona fide,
7    the Ordinance does not provide any explanation, standard or mechanism for the park
8    owner to rebut that presumption.  Section 16.70.070(C) of the ordinance specifies the
9    presumption may be overcome "through submission of substantial evidence" but does
10   not say what sort of evidence could overcome the presumption that the conversion
11   was not bona-fide.  A statute creating a presumption which operates to deny a fair
12   opportunity to rebut it violates the due process clause of the Fourteenth Amendment.
13   *Heiner v. Donnan*, 285 U.S. 312, 329 (1932)

14       How would a park owner faced with a presumption that the subdivision is a
15   sham "prove" that the subdivision is bona fide in the face of the presumption created
16   by majority resident opposition?  The practical effect of this provision is to give the
17   tenants the right to decide whether and on what terms subdivision may occur.  If Surf
18   and Sand presents "substantial evidence" that it genuinely intends to subdivide its
19   property—whatever that evidence might be--there is no standard for the City to
20   determine whether that evidence meets the burden of overcoming the presumption.

21   **D.    Surf and Sand's Claims Are Ripe**

22       The City argues that all of Surf and Sand's constitutional claims are unripe,
23   pursuant to *Williamson, supra*.  *Williamson* establishes a two prong "ripeness" test for
24   as applied taking claims, requiring (1) a final decision by the government entity and
25   (2) establishing that the plaintiff cannot obtain state compensation.  Facial taking
26   claims, however, do not require a "final decision" because they derive from the
27   enactment of the Ordinance, not any implementation by the governmental authority.
28   *Ventura Mobilehome Communities v. City of San Buenaventura*, 371 F.3d 1046, 1052

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

1 (9th Cir. 2004)  Surf and Sand raises only facial constitutional claims, as the substance

2 of the complaint makes clear.  Thus, only the second "state compensation" prong is

3 relevant to Surf and Sand's claims.

### E.    The Ripeness Requirement Only Applies to Taking Claims

5 The City argues the *Williamson* ripeness requirement applies to all of Surf and

6 Sand's constitutional claims.  The argument is wrong and illogical.  The basic premise

7 that underlies the "state compensation" prong of *Williamson* is that there cannot be a

8 "taking without compensation" under the Fifth Amendment, until the governmental

9 entity has refused to compensation the property owner for the taking of its property.

10 The Supreme Court in *Williamson* explained why a taking claim required the property

11 owner to seek "state compensation" to be ripe:

12 A second reason the taking claim is not yet ripe is that respondent did not
   seek compensation through the procedures the State has provided for
13 doing so.  The Fifth Amendment does not proscribe the taking of
   property; it proscribes taking without just compensation.[citation]  . . .
14 Similarly, if a State provides an adequate procedure for seeking just
   compensation, the property owner cannot claim a violation of the Just
15 Compensation Clause until it has used the procedure and been denied just
   compensation.  (473 U.S. 172, 194-195 (U.S. 1985))

17 Thus, the "state compensation" prong of *Williamson* only applies to taking

18 claims because the refusal of "state compensation" is actually an element of proving a

19 "taking without compensation" under the Fifth Amendment.

20 Federal Courts have recognized that *Williamson's* ripeness requirements only

21 apply to takings claims.  See, e.g. *Forseth v. Village of Sussex*, 199 F.3d 363, 370 (7th

22 Cir. 2000) (bona fide equal protection claims arising from land-use decisions can be

23 made independently from a takings claim)  In *Hoehne v. County of San Benito*, 870

24 F.2d 529, 533 (9th Cir. 1989), the Ninth Circuit applied the "final decision" prong of

25 *Williamson* to due process and equal protection claims, but recognized the "state

26 compensation prong" was only relevant to taking claims:

27 The Supreme Court has held that, 'if a State provides an adequate
   procedure for seeking just compensation, the property owner cannot
28 claim a violation of the Just Compensation Clause until it has used the

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

procedure and been denied just compensation.' (870 F.2d at 533, quoting *Williamson*.)

None of the decisions cited by the City support the proposition that Surf and Sand's equal protection, due process, or private taking claims require Surf and Sand to first seek "state compensation." *St. Clair v. Chico*, 880 F.2d 199 (9th Cir. 1989) states the unremarkable proposition that a planning commission is not "ripe" for challenge until a final decision is reached. *Id.* at 202. *Shelter Creek Dev. Corp. v. Oxnard*, 838 F.2d 375, 378 (9th Cir. 1988); *Kinzli v. City of Santa Cruz*, 818 F.2d 1449 (9th Cir. 1987); and *Norco Constr., Inc. v. King County*, 801 F.2d 1143, 1145 (9th Cir. 1986) all have the same holding. The City has not cited a single case in which a court has held that the "state compensation" prong of *Williamson* applies to any of the remaining constitutional claims asserted by Surf and Sand.

**F.    Surf and Sand Is Not Required to Pursue An Administrative Process That Cannot Remedy the Taking**

Under California law, the remedy available for a property owner challenging rents as insufficient or confiscatory is a rent adjustment known as a "*Kavanau*[5] adjustment." *Equity Lifestyle Props. v. County of San Luis Obispo*, 2007 U.S. App. LEXIS 22142 (9th Cir. 2007) Thus, the only opportunity for "state compensation" under California law is an administrative rent increase process. The City argues that Surf and Sand must submit a rent increase application in order to request a "fair return" and that it cannot proceed with a taking claim unless it at least submits such an application. This argument erroneously assumes that a fair return application could substantially impact the level of regulation.

The RCO mandates in § 2.18.400 that ". . . fair rate of return shall be determined with reference to reasonable investment rather than property value." In addition, the RCO requires in §2.18.410 limits increases to of the minimum increase necessary to produce a fair rate of return." Similarly, in Section 2.18.410, the RCO

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

---

[5]    Based on the California Supreme Court decision *Kavanau v. Santa Monica Rent Control Bd.*, 16 Cal. 4th 761 (1997)

*PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS*

1   states "If the application is successful, rents shall be increased to the minimum amount

2   necessary to produce a fair rate of return."

3   As a result, the RCO, by its explicit terms, prevents the City from considering

4   the underlying value of the property in determining a rent increase and requires the

5   City to keep rents at the lowest level possible that would provide a "fair return" on

6   "reasonable investment," rather than account for the underlying value of the property

7   or alternative uses. (Complaint ¶ 14)    Applying the Ordinance in this fashion is

8   consistent with existing California decisional law under the substantive due process

9   "fair return" standard. See, e.g. *Cotati Alliance for Better Housing v. City of Cotati*

10  (1983) 148 Cal.App.3d 280, 287; *Oceanside Mobilehome Park Owners' Ass'n v. City*

11  *of Oceanside*, 157 Cal. App. 3d 887, 899 (1984)

12  Because the Reeds built their park approximately 50 years ago, their actual

13  investment will not reflect the enormous appreciation in real estate values since that

14  time, or since the adoption of rent control. The RCO not only has no mechanism that

15  will allow rents to be adjusted to reflect this appreciation in real estate, it prevents

16  such rent increases from being granted.  Thus, under the only procedure available to

17  the Reeds to increase rents, they cannot raise rents to prevent the enormous rent

18  subsidies from occurring or to prevent the huge wealth transfers from taking place.

19  Since such rent adjustments are, even according to the City, the only mechanism

20  available under California law to seek "state compensation," no purpose would be

21  served by requiring such an application.  Surf and Sand would continue in the position

22  of being forced to bear the burden of a private rent subsidy program.

23  In *Palazzolo v. Rhode Isla*nd, 533 U.S. 606 (2001), the Supreme Court declined

24  to require a developer of property to seek a permit for development as a condition of

25  bringing a taking claim, observing "once it becomes clear that . . . the permissible uses

26  of the property are known to a reasonable degree of certainty, a takings claim is likely

27  to have ripened."  *Id* at 620.  See also *MHC v. San Rafael, supra* at pg. 24,

28  *Williamson, supra,* recognizes an exception to the second prong of the ripeness

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

*PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS*

1  requirement which allows a claimant to bypass state procedures if such procedures are
2  shown to be "unavailable or inadequate." 473 U.S. at 197.

3      The claims asserted by Parkowners require no further development.    The
4  constraints on raising rents under the Ordinance set forth with more than sufficient
5  certainty the basis for determining Parkowners' constitutional claims.

6      Federal courts have recognized the "futility" doctrine to allow consideration of
7  facial claims without an administrative application where such an application would
8  be futile, including in the rent control context. *Hacienda Valley Mobile Estates v. City*
9  *of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003), (Plaintiff may bring a facial
10 (takings) challenge without obtaining a final decision from the governmental authority
11 charged with implementing the regulations where doing so would be futile).  Other
12 courts have held similarly that it would be futile to force administrative exhaustion
13 before hearing facial challenges where the administrative procedures afforded the
14 plaintiff could not grant the plaintiff the relief sought. (See, e.g., *Weinberger v.*
15 *Wiesenfeld*, 420 U.S. 636, 641 n. 8 (1975) (no exhaustion required where plaintiff
16 challenges statute that on its face bars relief); *Hillsborough Township v. Cromwell*,
17 326 U.S. 620, 625 (1946) (no exhaustion required where remedy inadequate).

18     The City's Motion to Dismiss does not dispute the interpretation of the RCO
19 asserted by Surf and Sand in the complaint.  If these allegations are true, proceeding
20 with a rent increase application or subsequent "*Kavanau* adjustment" would be a futile
21 exercise because the City will not grant a rent increase that reflects the market value
22 of the property.  Indeed, the RCO prevents the City from granting such a rent increase.
23 Surf and Sand cannot be required to pursue a "state compensation" remedy that cannot
24 compensate Surf and Sand for the asserted taking.

25 **G.    This Court Has Authority to Hear Surf and Sand's Taking Claims**
26     **1.    The Court Retains Prudential Jurisdiction**
27     Ripeness is a justifiability doctrine designed "to prevent the courts, through
28 avoidance of premature adjudication, from entangling themselves in abstract

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-149, (1967).   The ripeness doctrine under *Williamson* is "prudential" rather than mandatory. *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 (U.S. 1997)  Prudential ripeness is focused on the question of whether (1) whether an issue is fit for judicial decision and (2) whether and to what extent the parties will endure hardship if decision is withheld.  See *Abbott, supra*, 387 U.S. at 148-49.

This case does not involve a question of becoming entangled in an abstract dispute.  Surf and Sand brings a facial challenge based on the unambiguous language of its rent control, closure and conversion ordinance.  This Court need only assume the City's ordinances mean exactly what they say.

Surf and Sand will undoubtedly be harmed if its claims are split or it is forced to wade through years of expensive administrative proceedings in order to have its taking claims heard.  The City's confiscatory application of rent control has had the effect of denying the Reeds the resources necessary to "ripen" their claim in federal court.   The effect of denying prudential jurisdiction over Surf and Sand's taking claims until useless, but costly process of seeking state compensation is completed will inevitably lead to the denial of any opportunity for Surf and Sand to assert its claims in this Court.

## 2.    The Court May Hear A Supplemental State Inverse Condemnation Claim

Assuming this Court agrees with the City that Surf and Sand must proceed to seek "state compensation" for that taking claim through an inverse condemnation action and that such remedy exists under state law, Surf and Sand can proceed on its remaining federal claims in this Court and retains supplemental jurisdiction to hear takings claims arising out of state law.  While Surf and Sand does not include an

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

inverse condemnation claim as part of this complaint, it could amend the complaint to alleges such a claim based on substantially the same facts alleged as part of the federal taking claim.

The Supreme Court has long adhered to principles of pendent and ancillary jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that derive from a common nucleus of operative facts. *City of Chi. v. Int'l College of Surgeons*, 522 U.S. 156, 164-165 (U.S. 1997), citing *Mine Workers v. Gibbs*, 383 U.S. 715, 725, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966) (other citations omitted) The Ninth Circuit in *Patel v. Penman*, 103 F.3d 868, 877 (9th Cir. 1996) explained

> Under 28 U.S.C. § 1367(a), a federal court has supplemental jurisdiction over claims "that are so related to claims in the action within [the district court's] original jurisdiction that they form part of the same case or controversy under Article III." Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if (1) the claim raises novel or complex state-law issues; (2) the claim "substantially predominates" over the court's original-jurisdiction claims; (3) the court has dismissed all the original-jurisdiction claims; or (4) in "exceptional circumstances" if there are "other compelling reasons" to decline.

In this case, absent a ruling by this Court that Surf and Sand cannot proceed on its other federal claims, there would be no basis for this Court to decline supplemental jurisdiction to hear Surf and Sand's state inverse condemnation claim. If this Court concludes Surf and Sand's federal takings claims are not ripe, it should grant Surf and Sand leave to amend its complaint to assert an inverse condemnation claim under California law and hear that claim pursuant to its supplemental jurisdiction.

## H.    Surf and Sand Properly States A Taking Claim

The City's asserts that Surf and Sand cannot prevail on a facial taking claim. The City focuses on decisions which discuss the difficult burden of proving facial takings claims. The City ignores factual allegation of the complaint which establish why Surf and Sand may prevail on this facial taking challenge. The City ignores the substance of the taking claims which establish a taking without regard to the specific

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

application of the relevant statutes.

Surf and Sand asserts a facial taking claim, applying an ad hoc "balancing test" set forth in *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104 (1978). A "*Penn Central*" taking claim involve the balancing of (1) the economic impact of regulation, (2) its interference with reasonable investment-backed expectations, and (3) the character of the governmental actions. *Id.* There are two identifiable strands or theories that support a taking claim, either independently or considered together as part of the balancing analysis.

First, the adoption of the Conversion Ordinance on its face denies the Reeds a basis property right that gives rise to a taking claim. The adoption of the Conversion Ordinance itself is alleged to cause a taking because it prevents a change of use of the park without the consent of the residents. In other words, it takes away the Reed's right to decide whether to continue to operate the mobilehome park and gives that right to the tenants.

A taking occurs when a public agency has extinguished "a fundamental attribute of ownership," in violation of federal and state Constitutions. See *Agins v. Tiburon*, 447 U.S. 255, 262 (U.S. 1980)  A regulation which effectively forces a property owner  to continue to operate as a rental mobilehome park denies the property owner an essential attribute of ownership. See *Yee v. City of Escondido*, 503 U.S. 519, 527 (U.S. 1992)  Similarly, the right to exclude others is one of the most essential sticks in the bundle of property *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831, 107 S. Ct. 3141, 97 L. Ed. 2d 677 (1987)

The Supreme Court recognized in *Lynch v. Household Finance Corp.*, 405 U.S. 538, 544 (U.S. 1972)

> It cannot be doubted that among the civil rights intended to be protected from discriminatory state action by the Fourteenth Amendment are the rights to acquire, enjoy, own and dispose of property. Equality in the enjoyment of property rights was regarded by the framers of that Amendment as an essential pre-condition to the realization of other basic civil rights and liberties which the Amendment was intended to

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

guarantee." *Shelley v. Kraemer*, 334 U.S. 1, 10. [other citations omitted]. (405 U.S. at 544. )

The facial challenge does not require application of the Ordinance to be established. Second, Surf and Sand asserts that the adoption of the Conversion Ordinance, combined with the existing regulatory schemes, results in a taking under the ad hoc balancing test applied in *Penn Central, supra*. Surf and Sand's facial taking claim is predicated on the ad hoc, three-factor balancing test set forth in *Penn Central*. The Supreme Court in *Lingle, supra*, emphasized the overarching principle that guides the application of the "ad hoc" balancing test is:

> . . . barring government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. (*Id.* at 2080, citations omitted.)

Surf and Sand alleges that the effect of the adoption of the Conversion Ordinance is to make permanent an 85 percent rent subsidy imposed by the City on Surf and Sand, for the benefit of park tenants. (Complaint Para. 45(a)) The level of confiscation has increased over time. The RCO, on its face, prevents the Reeds from obtaining a rent increase that addresses this confiscation in a material way. Again, no purpose would be served by examining how these ordinances would be applied.

By forcing the Reeds to bear the burden this enormous private housing subsidy, the City has imposed a burden on the Reeds that should be borne by the community as a whole. Preventing such improper burden shifting is central to the purpose of the Fifth Amendment. *Armstrong v. United States*, 364 U.S. 40 1960. See also, In *MHC v. City of San Rafael*. at pages 36-37 (holding that the fact that mobile home park owners have been singled out to bear the cost of providing "allegedly affordable housing" weighs in favor of a *Penn Central* regulatory taking claim. The Federal Circuit has held that regulations which improperly impose the burden of affordable housing on individual property owners is an unconstitutional taking. *Cienega Gardens v. United States*, 331 F.3d 1319, 1338 (Fed Cir. 2003).

The City's brief "on the merits" starts and ends with the conclusion that Surf

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

24
*PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS*

1   and Sand can obtain a rent increase which will provide a "fair return." In other words,

2   the City argues the substantive due process "fair return" standard applies and ignores

3   Surf and Sand's taking claims. The assumption by the City that a decision that Surf

4   and Sand is earning a fair return would resolve a taking claim simply ignores the fact

5   that such an analysis is fundamentally different from the *Penn Central* three factor

6   balancing test for takings.

7   **I.    Surf and Sand Asserts Timely Claims All Triggered By the Adoption**

8   **of The Conversion Ordinance**

9   The City argues that Surf and Sand asserts facial challenges to the Rent Control

10  Ordinance and Closure Ordinance which it claims are not timely because both

11  ordinances were adopted more than two years before the filing of the complaint. The

12  City's argument ignores the fact that each and every claim asserted by Surf and Sand

13  was triggered by the adoption of the Conversion Ordinance in 2007. Surf and Sand

14  alleges causes of action for equal protection, private taking, substantive due process

15  and taking. As to each and every claim, the relevant triggering event was the City's

16  adoption of the Conversion Ordinance.

17  The statute of limitations does not run where a change in the law within the

18  statutory period had a material impact on the plaintiff's rights. See *De Anza*

19  *Properties X, Ltd. v. County of Santa Cruz* (9th Cir. 1991) 936 F.2d 1084, 1086. The

20  adoption of the Conversion Ordinance had a material impact on Surf and Sand's

21  taking claims and that impact is asserted to be the basis of the taking claim, either by

22  itself or as a result of how it affected existing conditions created by the adoption of the

23  RCO and Closure Ordinance. As a result all of Surf and Sand's claims are timely.

24

25

26

27

28

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

**4.    CONCLUSION**

For the reasons recited above, the City's Motion to Dismiss should be denied.

Dated: November 28, 2007

HART, KING & COLDREN

By:

Robert S. Coldren
Mark D. Alpert
Beau M. Chung
Attorneys for Plaintiff
SURF AND SAND, LLC

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707