*E-Filed 2/13/2008*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| SURF AND SAND, LLC., | NO. C 07-05043 RS |
| Plaintiff, | **ORDER RE MOTION TO DISMISS** |
| v. | |
| CITY OF CAPITOLA, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Surf and Sand, LLC owns and operates a mobile home park in the City of Capitola. Surf and Sand brings this challenge to certain municipal ordinances that regulate mobile home parks, contending those ordinances unconstitutionally interfere with its property rights. At heart, Surf and Sand contends the combined effect of the ordinances is to prevent it from enjoying the tremendous appreciation in the value of its land over the last several decades, and instead to transfer that increased value to tenants of the park. For the reasons explained below, Surf and Sand has failed to state a viable claim, and the motion to dismiss will be granted.

## II. BACKGROUND[1]

Surf and Sand is owned by members of the Reed family. The Reeds established the Surf and

---

[1] These facts are taken from the complaint, and for purposes of this motion, are presumed to be true.

1

1   Sand Mobilehome Park ("the Park") more than 50 years ago. At that time, the property was located
2   in an unincorporated portion of Santa Cruz County, and was not subject to any form of rent control.
3   In or around 1982, the county adopted a rent control ordinance, but Surf and Sand does not
4   challenge that ordinance here. In the mid-1990s, the Park was incorporated into the City of Capitola
5   and became subject to Capitola's then-existing Rent Control Ordinance ("RCO"). In or about 1993,
6   Capitola adopted a Park Closure Ordinance ("PCO") that requires a mobile home park owner to
7   undertake various measures intended to mitigate the consequences to tenants of any closure of a
8   mobile home park. Surf and Sand never challenged the constitutionality of either the RCO or the
9   PCO prior to filing this action.

10   Surf and Sand contends that although the RCO permits some rent increases, it does not
11   permit increases that would reflect the "true" value of the underlying real property. As a result, Surf
12   and Sand contends, it is effectively providing a "massive subsidy" to its tenants with respect to the
13   rent those tenants pay. Additionally, Surf and Sand alleges that tenants have been able to sell their
14   mobile homes to new owners for prices that reflect that "discounted future rent" rather than the
15   actual value of the home.

16   At some point in time, Surf and Sand concluded that the only "economically feasible"
17   method of recovering its perceived value in the property was to subdivide the Park. To that end,
18   Surf and Sand held a tenant's meeting in August of 2007 to initiate a residents' survey as required by
19   California Government Code § 66427.5.[2] Within a week thereafter, Capitola adopted an "urgency"
20   ordinance regulating the conversion of mobilehome parks to resident ownership (the "Conversion
21   Ordinance"). Under the Conversion Ordinance, any plan by an owner to convert a mobilehome park
22   to resident ownership will be presumed to be a "sham" conversion unless a majority of tenants have
23   approved it. The concern regarding possible "sham" conversions arises from California Government
24   Code section 66427.5 (f), which phases out rent control once a conversion is under way. In *El*

---

[2] That section provides, in pertinent part, "At the time of filing a tentative or parcel map for a subdivision to be created from the conversion of a rental mobilehome park to resident ownership, the subdivider shall avoid the economic displacement of all nonpurchasing residents in the following manner . . . (d)(1) The subdivider shall obtain a survey of support of residents of the mobilehome park for the proposed conversion."

2

1 *Dorado Palm Springs, Ltd. v. City of Palm Springs*, 96 Cal. App. 4th 1153, 1165 (2002) the court
2 recognized that under a prior version of the statute, a park owner theoretically could sell a single unit
3 (perhaps to itself) then price the remaining units prohibitively and enjoy perpetual exemption from
4 rent control without ever completing the conversion. In response to that concern, the California
5 Legislature subsequently amended the statute to require the residents' survey mentioned above.

6       Capitola's Conversion Ordinance purports to further the Legislature's expressed interest in
7 avoiding sham conversions by providing further detail as to how the residents' survey is to be
8 conducted. In addition to requiring that residents be provided certain information, the Conversion
9 Ordinance creates a rebuttable presumption that a conversion is a sham unless 50% or more of the
10 residents vote in its favor. Surf and Sand argues that the effect of the Conversion Ordinance,
11 particularly in conjunction with the RCO and the PCO, is that it will now be unable to realize the
12 true economic value of its real property, and that it has thereby been deprived of certain
13 constitutional rights.

### III. STANDARDS

15       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal
16 sufficiency of the claims alleged in the complaint. See *Parks Sch. of Business v. Symington*, 51 F.3d
17 1480, 1484 (9th Cir. 1995). Dismissal under FRCP 12(b)(6) may be based either on the "lack of a
18 cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal
19 theory." *Balistreri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir. 1990). Hence, the issue on a
20 motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail but
21 whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco*
22 *Development Corp*., 108 F.3d 246, 249 (9th Cir. 1997). When evaluating such a motion, the court
23 must accept all material allegations in the complaint as true and construe them in the light most
24 favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 340 (9th Cir. 1996).
25 "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a
26 motion to dismiss for failure to state a claim." *Epstein v. Washington Energy Co.*, 83 F.3d 1136,
27 1140 (9th Cir. 1996).

3

## IV. DISCUSSION

### A. Challenges to the RCO and the PCO

With certain exceptions not applicable here, the statute of limitations on facial challenges to an ordinance begins running when the ordinance is enacted. *See De Anza Properties X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084, 1086 (9th Cir. 1991). Claims such as these, brought under 42 U.S.C. § 1983, are subject to the statute of limitations applicable to personal injury claims in the state where the challenged action occurred. *Equity Lifestyle Properties, Inc. v. County of San Luis Obispo*, 505 F.3d 860, 869 (9th Cir. 2007). Here, the applicable rule can be found in Cal. Code of Civ. P. § 340(3) as codified in 1984, which set forth a one-year statute of limitations.[3]

Because the RCO and PCO were enacted more than a decade before this action was filed, any challenge to those statutes is time-barred. Surf and Sand makes a token effort to argue it is entitled to challenge the RCO and the PCO because the effects of which Surf and Sand complains arose only when the Conversion Ordinance was enacted, but it has failed to show that the mere enactment of the Conversion Ordinance is somehow sufficient to revive claims against the RCO and the PCO that would otherwise be time barred, given that there was *no* change to those ordinances.

That said, it does not appear that Surf and Sand necessarily intends to challenge the RCO and the PCO *per se*, despite some language to that effect in the complaint. The gravamen of Surf and Sand's complaint is that the *Conversion Ordinance* should not be enforced. Were Surf and Sand to prevail on that point, it does not appear it would also seek relief from the provisions of the RCO and the PCO. As such, many of the allegations regarding the effects of the RCO and the PCO appear to serve as background for Surf and Sand's challenge to the Conversion Ordinance rather than as independent claims against the older ordinances. Nevertheless, to the extent the complaint purports to challenge the validity and enforceability of either the RCO or the PCO, those claims are dismissed as barred by the statute of limitations.

---

[3] This statute governed until January 1, 2003, when the limitations period was increased to two years under Cal. Code of Civ. P. § 335.1.

4

### B. Challenges to the Conversion Ordinance

As an initial matter, Capitola's moving papers attempted to show that Surf and Sand had not stated a viable facial *or* "as-applied" challenge to the Conversion Ordinance. Surf and Sand's opposition, however, disclaimed any intent to make any "as-applied" claim. Accordingly, the only issue is whether Surf and Sand's facial challenge to the ordinance is tenable.

The central argument presented by the motion to dismiss is that the claims are not ripe, because Surf and Sand has not sought compensation through procedures provided by the state for doing so. *See Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985). Surf and Sand's primary response to this argument is its assertion that ripeness under *Williamson* is only a consideration with respect to its public takings claim. Surf and Sand argues there is no requirement that it first seek "state compensation" under its due process, equal protection, or private takings claims.

In response, Capitola insists that the Ninth Circuit has applied the *Williamson* ripeness analysis to due process and equal protection claims. *See*, *e.g.*, *Shelter Creek Development Corp. v. City of Oxnard*, 838 F.2d 375, 379 ("equal protection claims and substantive due process claims are to be analyzed for ripeness in the same way that regulatory taking claims are analyzed.") Although it appears claims other than those for public takings may very well be subject to the *first* prong of a *Williams* analysis (*i.e.*, has there been a final decision as to the applicability of the regulation to the plaintiff's property), it is far less clear that such claims would be subject to the *second* prong of the *Williams* inquiry (*i.e.*, whether the plaintiff is unable to receive just compensation under state procedures). As Surf and Sand points out, it would be illogical to require a plaintiff to seek compensation in state proceedings for a due process violation, because such violations, if proven, are not remedied by "compensation." *See Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 543 (2005) ("Due process violations cannot be remedied under the Takings Clause, because 'if a government action is found to be impermissible-for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process-that is the end of the inquiry. No amount of compensation

can authorize such action.'")[4]

Accordingly, it appears appropriate first to consider whether Surf and Sand's public takings claim is ripe under *Williamson*. Surf and Sand does not contend that it has made any effort to seek compensation in state proceedings. It argues instead that such efforts would be *futile*. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 686 ("*Williamson,* however, does not require the plaintiff to bring a state court action where it would be futile under existing state law.")

Surf and Sand's futility argument is based on its contention that it cannot obtain sufficient rent increases under a so-called "Kavanau adjustment"[5] to ever be made whole.[6] Courts, however, have discussed Kavanau adjustments as a potential compensation in connection with *as-applied* challenges to rent control regulatory schemes. *Equity Lifestyle Properties, supra*, 505 F.3d at 868-869. In the context of facial challenges, the relevant mechanism for seeking state compensation is an inverse condemnation action. *Id.* Surf and Sand expressly acknowledges that remedy exists and has not been pursued.[7] Accordingly, the public takings claim is unripe and must be dismissed.

Although the *Williamson* analysis is not applicable to Surf and Sand's remaining claims, those claims are also unripe for a more fundamental reason. Surf and Sand does not allege that it has carried out a tenant survey, or that a majority of tenants opposed conversion. Surf and Sand does not allege that it attempted, but failed, to rebut the presumption of a sham conversion that would arise from such survey results. Surf and Sand's *assumption* that a majority of the residents would oppose conversion except on terms unacceptable to Surf and Sand may be entirely reasonable, but it remains an assumption. It might also be reasonable to assume that Capitola would be inclined to discredit

---

[4] If the ripeness analysis applicable to public takings claims also applied to due process and other claims, there would have been little reason for cases such as *Equity Lifestyle Properties, Inc. v. County of San Luis Obispo*, 505 F.3d 860 (9th Cir. 2007) to address due process and equal protection claims separately after having already found a takings claims unripe. *See id.* at 870-872.

[5] See *Kavanau v. Santa Monica Rent Control Bd.*, 16 Cal. 4th 761 (1997).

[6] The Ninth Circuit has held that the Kavanau adjustment process provides an adequate remedy in an appropriate case although it may not have addressed the precise argument Surf and Sand is making here. *See Equity Lifestyle Properties, supra*, 505 F.3d at 867-868.

[7] Surf and Sand requests leave to pursue such a state law claim in this Court, under supplemental jurisdiction. Because the Court concludes no federal claim is cognizable, there is no basis to retain supplemental jurisdiction over a state law claim that has not yet been pleaded.

any attempt by Surf and Sand to rebut the presumption. Until and unless Surf and Sand makes such an effort, however, it simply cannot be known whether the Conversion Ordinance will have the effect Surf and Sand fears.[8] Accordingly, all of Surf and Sand's claims are unripe and must be dismissed.

### C. Leave to amend

As noted above, Surf and Sand requests leave to amend to state a state law inverse condemnation claim. That request is denied, for the reason that absent a ripe federal claim, there would be no basis to exercise supplemental jurisdiction. As to the constitutional claims, Surf and Sand has not suggested any way in which the ripeness issue could be cured by amendment. Nevertheless, because this is the first motion to dismiss, Surf and Sand will be granted 20 days leave to amend. Surf and Said should file an amended complaint if and only if it has a good faith basis for believing that the defect can be cured.

## V.  CONCLUSION

The motion to dismiss is granted, with leave to amend as specified above.

IT IS SO ORDERED.

Dated: February 13, 2008

RICHARD SEEBORG
United States Magistrate Judge

---

[8] Were Capitola to act unreasonably in rejecting evidence that Surf and Sand's intent to convert was *bona fide,* Surf and Sand likely would have a remedy in the state courts.

ORDER RE MOTION TO DISMISS
C 07-05043 RS

7