1  Robert S. Coldren, Esq., Bar No. 81710
   C. William Dahlin, Esq., Bar No. 91269
2  Mark D. Alpert, Esq., Bar No. 138152
   Beau M. Chung, Esq., Bar No. 240451
3  HART, KING & COLDREN
   A PROFESSIONAL LAW CORPORATION
4  200 Sandpointe, Fourth Floor
   Santa Ana, California 92707
5  Telephone: (714) 432-8700
   Facsimile:  (714) 546-7457
6
   Attorneys for Plaintiff Surf and Sand, LLC
7

8              UNITED STATES DISTRICT COURT OF CALIFORNIA

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 SURF AND SAND, LLC, a California )    Case No.: 07 05043 RS
   Limited Liability Company,       )
12                                   )    Judge:   Hon. Richard Seeborg
              Plaintiff,             )    Dept.:   Ctrm. 4
13                                   )
                                     )    **E-FILING**
14      v.                           )
                                     )    **PLAINTIFF'S FIRST AMENDED**
15 CITY OF CAPITOLA; and DOES 1      )    **COMPLAINT FOR:**
   through 100, inclusive,           )    **(1)    VIOLATION OF CIVIL**
16                                   )    **        RIGHTS - EQUAL**
              Defendants.            )    **        PROTECTION (42 U.S.C. §**
17                                   )    **        1983);**
                                     )    **(2)    VIOLATION OF FIFTH**
18                                   )    **        AMENDMENT (PRIVATE**
                                     )    **        TAKING);**
19                                   )    **(3)    VIOLATION OF FIFTH**
                                     )    **        AMENDMENT (FACIAL**
20                                   )    **        TAKING – Conversion**
                                     )    **        Ordinance);**
21                                   )    **(4)    VIOLATION OF FIFTH**
                                     )    **        AMENDMENT (FACIAL**
22                                   )    **        TAKING – Conversion**
                                     )    **        Ordinance, RCO & PCO);**
23                                   )    **(5)    VIOLATION OF CIVIL**
                                     )    **        RIGHTS - DUE PROCESS (42**
24                                   )    **        U.S.C. § 1983);**
                                     )    **(6)    INVERSE CONDEMNATION;**
25                                   )    **        and**
                                     )    **(7)    DECLARATORY RELIEF**
26                                   )
                                     )
27                                   )    REQUEST FOR JURY TRIAL
                                     )
28

                                    1

Plaintiff Surf and Sand, LLC, states and alleges as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this proceeding under 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 *et seq.* Surf and Sand further alleges this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2.    Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b) in that the named defendants are located within the Northern District, and the action arises out of events in Santa Cruz County.

## PARTIES

3.    Surf and Sand, LLC ("Surf & Sand") is a California Limited Liability Company managed by Ronald Reed. Surf and Sand LLC owns and operates Surf and Sand Mobilehome Park (the "Park"), a mobilehome park located and doing business in the City of Capitola, County of Santa Cruz, California. Ronald Reed is the controlling principal of Surf & Sand.

4.    Surf and Sand is informed and believes, and thereon alleges, that Defendant, City of Capitola (hereafter "Defendant" or "City") is and at all times mentioned herein, was a duly incorporated municipal corporation located within the State of California in the County of Santa Cruz.

5.    Surf and Sand is informed and believes, and thereon alleges, that each of the Defendants named herein as Does 1 through 100, inclusive, were and are in some manner responsible for the acts, omissions and actions as hereafter alleged and for the harm or damage caused by Defendants to Surf and Sand and are, therefore, jointly and severally liable for and all damages or harm caused to Surf and Sand.

6.    Surf and Sand is informed and believes, and thereon alleges, that at all times herein mentioned the Defendants, and each of them, including the fictitiously named Defendants, were the agents, employees or officers of each of the remaining Defendants, and, in doing the things hereafter alleged, were acting within the scope, course and purpose said agency or employment, and were acting within the apparent

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

1  scope of said agency, employment and position and acted with the permission and

2  consent of each of the remaining defendants.

3  ## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

4  7.    Surf and Sand MHP was built by the Reed family approximately 50 years

5  ago and is still owned by the Reed family.  The Park is located on some of the most

6  valuable ocean front property in America, in Santa Cruz County.

7  8.    Until approximately 1981 the Park operated, without rent control, in

8  unincorporated Santa Cruz County.   In or about 1982, the County of Santa Cruz

9  adopted a Mobilehome Rent Control Ordinance.

10  ### The Capitola Rent Control Ordinance

11  9.    In the mid-1990s, the Park became part of the City of Capitola and

12  therefore became subject to the City's already existing Rent Control Ordinance

13  ("RCO").  The City initially adopted mobilehome rent control in 1979 and has had

14  some form of mobilehome rent control continuously in place since that time.  Since at

15  least 1994, the Capitola Ordinance has limited annual "automatic" CPI adjustments to

16  no more than sixty percent (60%) of the increase in the CPI.

17  10.    In applying the RCO, the City has officially determined that the question

18  or issue of whether application of the RCO causes a taking is "irrelevant" to its

19  administrative rent increase process.  Consistent with its interpretation and application

20  of the RCO, the City has established that rent increases under the RCO will be based

21  on the determination of whether the Park owner is earning a "fair return." There is no

22  definition of that term and the standard does not consider the issue of whether the

23  application of rent control has caused a taking.

24  11.    The RCO specifies in Section 2.18.400 that:

25  "If such a distinction is relevant, fair rate of return shall be

26  determined with reference to reasonable investment rather

27  than property value."

28  12.    In addition, Section 2.18.410 of the RCO specifies that:

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

*FIRST AMENDED COMPLAINT*

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

"It will be presumed that application of this chapter and previous rent review ordinances has resulted in a fair rate of return. A park owner who believes that presumption can be overcome may apply to the city council for determination of the minimum increase necessary to produce a fair rate of return." (emphasis added)

13. In Section 2.18.410, the RCO states:

"If the application is successful, rents shall be increased to the minimum amount necessary to produce a fair rate of return."

14. As a result, the RCO, by its explicit terms, prevents the City from considering the underlying value of the property in determining a rent increase and requires the City to keep rents at the lowest level possible that would provide a "fair return" on "reasonable investment," rather than account for the underlying value of the property or alternative uses.

15. Because the Reeds built the property many (50+) years ago, their actual investment, even adjusted for inflation, is a small fraction of the actual underlying, unregulated value of the property.

16. As a result of the statutory framework of the RCO, space rents have fallen further and further below fair market rents over time. Space rents are currently, on average, in the range of fifteen percent (15%) of fair market value.

17. The application of the RCO has forced Surf & Sand to bear the burden of a massive subsidy of space rent. The City and its RCO have deprived Surf & Sand of the vast majority of the value of the subject property.

18. In addition, residents of the Park have benefited from huge transfer premiums in the sale of home, representing a transfer of the underlying value of the property from park owner to tenants. Surf & Sand is informed and believes that when homes are sold in place, only a very small percentage – less than 10% - of the sale price represents the actual value of the home. The remainder is the "transfer

*FIRST AMENDED COMPLAINT*

1  premium" based on the value of discounted future rent.  These "transfer premiums"
2  have arisen over time and were not apparent and did not exist when the RCO was
3  initially adopted.  The "transfer premiums" arose because of the confluence of (1)
4  appreciating return of investment in real estate; and (2) rents eroding over time.  See
5  *Hacienda Valley Mobile Estates v. City of Morgan Hill Rent Review Comm'n*, 353
6  F.3d 651, 656 (9th Cir. 2003) (statute of limitations begins to run when taking
7  premium reasonably discoverable).  The RCO, as it has been interpreted and applied
8  by the City, renders it impossible for the Park owner to receive a rent adjustment in an
9  amount that will prevent this enormous subsidy from continuing to be borne by the
10  Reeds and their park.

The Capitola Park Closure Ordinance Is Adopted

12    19.    The City adopted a Park Closure Ordinance ("PCO") in or about 1993.
13  The PCO specifies the procedures under which a Park owner can close a mobilehome
14  park.  The PCO specifies a burdensome closure procedure, which, among other things,
15  requires Park owner to (1) provide an appraisal of every mobilehome by an appraiser
16  selected by the City (2) pay for a relocation specialist approved by the City and, most
17  importantly, (3) establishes proposed measures to "mitigate" the adverse impacts of a
18  park closure upon the mobilehome park residents.

19    20.    The Park owner is required to provide a Relocation Impact Report
20  ("RIR") to the City.  Under the PCO, the City will not even consider the RIR until the
21  applicant has submitted to the City both a draft RIR which applicant believes meets
22  the requirements of Municipal Code Section 17.90.030, and a written statement that
23  such draft RIR is being filed pursuant to Government Code Section 65863.7.

24    21.    The PCO requires a Park owner to pay "relocation costs" which include
25  (1) paying the residents for the "value" of their mobilehome and paying the residents
26  the cost of acquiring a comparable mobilehome or other comparable property.
27  Because the application of the RCO has artificially inflated the "in place" value of
28  mobilehomes in the City, the PCO effectively transfers the vast majority of the land

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

5

*FIRST AMENDED COMPLAINT*

1  value of the mobilehome from Plaintiff as the Park owner to the tenant.  The cost of

2  acquiring "alternative comparable housing" would require Plaintiff as the Park owner

3  to pay the fair market value of acquiring comparable housing, the net effect of the

4  demanded relocation costs would be to force the Park owner to buy its own property

5  from the residents, the vast majority at the fair market value of the underlying

6  property, in order to close the Park.  The Park owner would have to pay these funds, in

7  almost all cases, to residents who have already benefited enormously from the space

8  rents which are a fraction of fair market value.

9      22.    The PCO has an exemption for payment of such relocation costs, but

10  only based on a showing that "imposition of any relocation obligations would

11  eliminate substantially all reasonable use or economic value of the property for

12  alternate uses."   This exemption would therefore only be available to prevent the

13  confiscation of almost one hundred percent (100 %) of the economic value of the

14  property.

<u>The City Facilitates the Conversion of Mobilehome</u>

<u>Parks to City and Tenant Ownership</u>

17      23.    Surf & Sand is informed and believes that as the RCO, individually and

18  in concert with the PCO, became more and more confiscatory, the City sought

19  mechanisms to protect the purported "equity" of tenants, many of whom have paid

20  tens of thousands of dollars more for mobilehomes than such are worth in order to

21  obtain price fixed rent.  Surf & Sand is informed and believes that the City of Capitol

22  determined that mobilehome parks would eventually have to be converted to publicly

23  owned assets and/or tenant owned assets to allow tenants to keep the value of the

24  underlying property the City took from park owners for said tenants in the first place.

25  The adoption of the PCO and confiscatory application of the RCO were designed to

26  "protect" this alleged "equity" and force Park owners to sell their parks to the City or

27  to resident organizations at prices that were vastly below their fair market value.

28      24.    The City's strategy has been hugely successful, resulting in the

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

6

*FIRST AMENDED COMPLAINT*

1 conversion of all but two mobilehome parks to either City or tenant ownership without

2 compensating the private park owners for the conversion of their property to public

3 and/or private use.

4    25.    Surf & Sand is informed and believes that in or about 2006 and 2007, the

5 City "facilitated" and supported the confiscation of Turner Lane Mobilehome Park.

6 Surf & Sand is informed and believes that the City facilitated the acquisition of Turner

7 Lane by residents in a two step process.  First, the City facilitated the purchase of

8 Turner Lane from its owner to a non-profit corporation or similar entity at a price that

9 reflected the rent-controlled value of Turner Lane rather than its true market value.

10 Second, the City facilitated and supported the conversion of Turner Lane to resident

11 ownership pursuant to California Government Code § 66427.  The conversion allows

12 residents to purchase lots they had previously rented for a fraction of their true market

13 value.    The City facilitated the permanent confiscation of a privately owned

14 mobilehome park from Park owner to tenants.  The City caused the conversion of

15 privately held property for the private use of the tenants.  The harm to the Park owner

16 was greater than if the City had simply condemned Turner Lane because the City did

17 not have to compensate the Park owner the fair market value of the property.  The

18 City took the property without proper compensation.

19    26.    The confiscation of Turner Lane is only the most recent example of the

20 City's consistent pattern of conduct whereby the City has undertaken to confiscate

21 property of Park owners for the purpose of giving that property to tenants.

22    **The City Prevents Surf & Sand Mobilehome Park Conversions**

23    27.    Surf & Sand is informed and believes that the City Council has stated

24 officially and unofficially that it intends to protect the "equity" of residents who have

25 paid large amounts of money to buy homes, in effect, desiring to make permanent the

26 confiscation of the vast majority of the value of the underlying property.

27    28.    Without the ability to seek a fair return of investment through the rental

28 income of the Park, and without the ability to close the Park and change the use of the

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

*FIRST AMENDED COMPLAINT*

park due to the zoning restrictions, Surf & Sand concluded that converting the Park to resident ownership was the only economically feasible method of recovering the beneficial ownership, control and underlying value of their property. On or about August 3, 2007, the owners of Surf & Sand took the first steps toward an attempt to initiate the process of subdividing the Park, holding a tenant meeting for the purposes of initiating a survey of residents required to subdivide the Park under California Government Code § 66427.

29.    At the August 3, 2007 meeting of the residents, three (3) City Council members attended the meeting. The meeting was a private meeting and the City Council members were not invited to partake in the meeting. In any event, the City Council members made comments at the meeting about the proposed conversion process, with one or more speaking against the conversion.

30.    On August 9, 2007, less than one week of the meeting between the owners of Surf & Sand and the residents, the City adopted an "urgency" ordinance regulating the conversion of mobilehome parks to resident ownership ("Conversion Ordinance").

31.    The Conversion Ordinance has the purpose and effect of making an owner-initiated conversion of a mobilehome park to resident ownership practically impossible, unless the Park owner will agree to and accept terms of conversion agreeable to a majority of park residents. In other words, the City has adopted additional new legislation that deprives Plaintiff's right and control of its ownership to property in an attempt to compel Plaintiff to deed its property for a fraction of the land's true value.

32.    The Conversion Ordinance imposes additional notice and disclosure requirements that require Plaintiff, as a Park owner, to spend tens of thousands of dollars simply to proceed with a resident survey. The Conversion Ordinance purports to address various disclosures, infrastructure expense analyses and other requirements which are part of the regulation of sales of real estate addressed by state real estate

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

*FIRST AMENDED COMPLAINT*

law. Cal. Code Regs., Title 10, § 2790 (2008), *et seq.* The requirements imposed by the Conversion Ordinance are irrelevant to determining whether a subdivision is bona fide. Such requirements are also duplicative of already existing state laws.

33.    The City purported to adopt an "urgency" ordinance under a superficial purpose to assure compliance with statewide subdivision statutes, but there was in fact no urgency other than the fact that Surf & Sand took the first steps toward conversion of the Park, as outlined by the MRL.

34.    With regard to subdivisions to effectuate a conversion from a rental mobilehome park to a resident owned mobilehome park, the MRL requires that the Park owner to (1) offer each existing tenant an option to either purchase his or her subdivided unit, or to continue residency as a tenant (Gov. Code § 66427.5(a)); (2) file a report on the impact of the conversion upon the residents of the mobilehome park and make a copy of that report available at least 15 days prior to the hearing by the advisory agency (Gov. Code § 66427.5(b)-(c)); and (3) obtain a survey of support of the residents of the mobilehome park that must be (i) conducted in accordance with an agreement between the subdivider and the resident homeowners' association; (ii) obtained pursuant to a written ballot; and (iii) conducted so that each occupied mobilehome space has one vote. Gov. Code § 66427.5(d)(1)-(4). The results of the survey must be submitted to the advisory agency to be considered as part of the subdivision map hearing. Gov. Code § 66427.5(d)(5).

35.    The hearing on the subdivision map application is limited to the issue of compliance with the obligations on the Park owner set forth in the MRL. Gov. Code § 66427.5(e).

36.    The City's Conversion Ordinance imposes additional requirements to what is set forth by the MRL.

37.    Capitola's Conversion Ordinance imposes a multitude of disclosure requirements that must be completed even before the Park owner obtains a survey of support of the residents. The Conversion Ordinance requires the Park owner to

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

9

*FIRST AMENDED COMPLAINT*

complete extensive disclosures before the Park owner is permitted to survey the residents. These disclosures are intended to discourage the residents from supporting the conversion. The Conversion Ordinance specifies in Section 16.70.040 (A)-(O) that the following statements are required before a Park owner is permitted to survey the residents:

    a. "A statement describing the effects that the mobile home park conversion will have on the application of the rent control provisions of Capitola Municipal Code Chapter 2.18 for both lower income households and for other households who continue residency as tenants. The statement shall specifically describe the effects that the conversion will have on the application of the vacancy control provisions of Chapter 2.18 of this code, and a statement describing the effects of vacancy decontrol under Government Code Section 66427.5 on the resale value of mobile homes of both lower income households and of other households which continue residency as tenants. Included with this statement shall be a separate statement prepared by the city summarizing the major provisions of the city's mobile home park rent stabilization ordinance (Chapter 2.18 of this code.)"

    b. "A statement specifying the income level that is applicable pursuant to subdivision (f)(2) of Government Code Section 66427.5, to determine whether households in the mobile home park qualify as a lower income household or are not lower income household, and requesting that the households identify whether they are a lower income household, or are not a lower income

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

household."

c. "A statement specifying whether the subdivider will begin the phase-in of market level rents pursuant to subdivision (f)(1) and the rent adjustment provisions of subdivision (f)(2) of Government Code Section 66427.5 upon the sale of one lot, upon the sale of more than fifty percent of the lots, or upon the sale of some other percentage of lots."

d. "A statement specifying the method by which the fair market rent levels authorized by subdivision (f)(1) of Government Code Section 66427.5 will be established, or in the alternative, the specification of the range of rent levels that will be applicable to the subdivided units in the mobile home park, including, but not limited to, the inclusion of any inflation adjustment formula to be utilized."

e. "A statement specifying how space rents will be set for purchasers of mobile homes owned by lower income households and by other households (who continue residency as tenants under subdivision (f) of Government Code Section 66427.5)."

f. "A statement specifying the method by which the sales prices of the subdivided mobile home space parcels will be established, or in the alternative, the specification of a range of purchase prices that will be applicable to the subdivided mobile home space parcels in the mobile home park, including, but not limited to, the inclusion of any inflation adjustment formula to be utilized."

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

g. "A statement specifying the method for determining and enforcing the controlled rents for nonpurchasing households pursuant to Government Code Section 66427.5 (f)(2), and, to the extent available, identification of the number of tenant households likely to be subject to these provisions;"

h. "A statement assessing the potential for nonpurchasing residents to relocate their homes to other mobile home parks within Santa Cruz County, including the availability of sites and the estimated cost of home relocation;"

i. "An engineer's report on the type, size, current condition, adequacy, and remaining useful life of each common facility located within the park, including but not limited to water systems, sanitary sewer, fire protection, storm water, streets, lighting, pools, playgrounds, and community buildings. A pest report shall be included for all common buildings and structures. "Engineer" means a registered civil or structural engineer, or a licensed general engineering contractor;"

j. "If the useful life of any of the common facilities or infrastructure is less than thirty years, an engineer's estimate of the cost of replacing such facilities over their useful life, and the subdivider's plan to provide funding for same;"

k. "An estimate of the annual overhead and operating costs of maintaining the park, its common areas and landscaping, including replacement costs as necessary,

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

over the next thirty years, and the subdivider's plan to provide funding for same."

l. "A maintenance inspection report conducted on site by a qualified inspector within the previous twelve calendar months demonstrating compliance with Title 25 of the California Code of Regulations ("Title 25 Report"). Proof of remediation of any Title 25 violations or deficiencies shall be confirmed in writing by the California Department of Housing and Community Development (HCD)."

m. "A detailed description of the city and state procedures to be followed for the proposed conversion, including, but not limited to, a tentative timeline.:

n. "The phone number and address of an office designated by the city council that can be contacted for further information relating to the proposed mobile home park conversion."

o. "The subdivider shall attach a copy of this chapter to each survey form."

38.    The Conversion Ordinance specifies in Section 16.70.050 (A)-(E) that the following information is required to be in any impact report:

a. "That information specified by subsections A through M of Section 16.70.040, required to be provided to park tenants for purposes of the resident survey."

b. "A statement specifying the number of mobile home spaces in the park and the rental rate history for each such space over the four years prior to the filing of the application."

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

c. "A statement specifying the method and timetable for compliance with Government Code Section 66427.5 (a), and, to the extent available, an estimate of the number of existing tenant households expected to purchase their units within the first four years after conversion including an explanation of how the estimate was derived."

d. "An estimate of the number of residents in the park who are lower income households pursuant to subdivision (f)(2) of Government Code Section 66427.5, including an explanation of how the estimate was derived."

e. "An estimate of the number of residents in the park who are seniors (sixty-two years of age or older) or disabled, including an explanation of how the estimate was derived."

39.     The Conversion Ordinance specifies in Section 16.70.060 (A)-(F) that the following material must be included in any application for subdivision:

a. "A statement of the total number of spaces occupied by residents (excluding any spaces occupied by the subdivider, a relative of the subdivider, or employee of the subdivider); and the total number of votes of such residents in favor of the conversion and the total number of votes of such residents in opposition to the conversion, with no more than one vote allocated for each mobile home space."

b. "The subdivider shall demonstrate that the procedures and timing used to conduct the survey were in accordance with an agreement between the subdivider and an independent resident homeowners association, if

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

14

*FIRST AMENDED COMPLAINT*

any. In the event that more than one resident homeowners association purports to represent residents in the park, the agreement shall be with the resident homeowners association which represents the greatest number of tenant homeowners in the park."

c. "A written statement signed by the authorized representative(s) of an independent resident homeowners' association verifying that the survey form was approved by the association in accordance with the requirements of subdivision (d)(2) of Government Code Section 66427.5."

d. "A copy of the information and disclosures provided to tenant households pursuant to Section 16.70.040."

e. "A copy of the tenant impact report required pursuant to Section 16.70.050."

f. "A tentative subdivision and final map or parcel map unless waived pursuant to Government Code Section 66428.1. A parcel map shall be required for all projects that contain less than five parcels and do not create more condominium units or interests than the number of rental spaces that exist prior to conversion. If additional interests are created or if the project contains more than five parcels a tentative and final subdivision map shall be required. The number of condominium units or interests to be created shall not determine the type of map required unless additional condominium units or interests are created over and above the number of rental spaces that exist prior to conversion."

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

40.     The Conversion Ordinance specifies in Section 16.70.070 (A)-(C) that the decision maker may also consider the following:

    a.  "A survey of resident support has been conducted and the results filed with the city in accordance with the requirements of Government Code Section 66427.5 and this chapter;"

    b.  "A tenant impact report has been completed and filed with the city in accordance with the requirements of Government Code Section 66427.5 and this chapter;"

    c.  **"The conversion is a bona fide resident conversion. For purposes of determining whether a proposed conversion is a bona fide resident conversion, the following presumptions shall be applied based on the results of the survey of resident support conducted in accordance with Government Code Section 66427.5 and with this chapter. The presumptions created by this subsection may be overcome through the submission of substantial evidence either at or prior to the hearing."**

        i.  **"Where the survey of resident support shows that fifty percent or more of the resident survey vote supports the conversion to resident ownership, the proposed conversion shall be presumed to be a bona fide resident conversion."**

        ii. **"Where the survey of resident support shows that less than fifty percent of the resident survey vote supports the conversion to resident**

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

**ownership, the proposed conversion shall be presumed to not be a bona fide resident conversion and the subdivider shall have the burden of demonstrating that the proposed conversion is a bona fide resident conversion."**

41.     The true purpose of the Conversion Ordinance is exposed by its presumption that any conversion that does not have the majority approval of park residents is not a "bona fide" conversion. While the Conversion Ordinance provides that the presumption is "rebuttable," it does not state how the presumption is rebuttable or any criteria for such a determination. Implicit in the City's presumption is that the resident's approval of the conversion is required for a showing of the Park owner's intent to subdivide the Park. As a result, any conversion process will be impossible unless the Park owner will agree to and accept terms of conversion agreeable to a majority of park residents.

42.     Surf & Sand is informed and believes and thereon alleges that the Conversion Ordinance was not adopted to assure compliance with existing state law. Rather, it was adopted to make conversion (by subdivision) economically and legally impractical and to give the tenants, rather than the Park owner, the right to decide whether Surf & Sand would be subdivided. No studies were undertaken by the City to assess the merits of mobilehome park subdivisions, the burdens imposed by the new regulatory scheme upon innocent property owners, or the private transfer of wealth being promoted by this proposed legislation.

43.     Surf & Sand is informed and believes and thereon alleges that the City's purpose in enacting the Conversion Ordinance was to deprive owners of privately owned mobilehome parks from the rights and ownership of their property. The Conversion Ordinance, in combination with the RCO and PCO, effectively transfers the value of Plaintiff's property to private individuals without substantially advancing a legitimate government purpose. The RCO permits a mobilehome resident to transfer

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

his or her mobilehome to a successor tenant with a perpetual rent-controlled leasehold, based on the RCO's ever increasing gap between market rent and the controlled rent. The PCO forces the Park, among other things, to pay for the fair market value of the resident's mobilehome, which is grossly inflated due to the premiums caused by the RCO, and to pay for the resident's relocation costs. In addition, the City has changed the zoning for Surf & Sand so that it may only be a mobilehome park. The Conversion Ordinance deprives the Park owner from any remaining rights of property and effectively forces the Park owner to either (i) continue operating the mobilehome park as a rental mobilehome park controlled by the RCO; or (ii) convert the mobilehome park into a resident owned mobilehome park at terms of conversion agreeable to a majority of park residents, forcing Park owners to sell their parks to the City or to resident organizations at prices that were vastly below their fair market value. The City enacted the Conversion Ordinance to prevent Surf & Sand from converting the Park to resident ownership.

Disparate Treatment Of Privately

Owned Mobilehome Parks

44. Surf & Sand is informed and believes and thereon alleges that the City does not uniformly apply the RCO, the PCO and other relevant laws to all landlords within the City and, more importantly, to all mobilehome parks within the City. There are only two (2) remaining privately owned mobilehome parks in the City. Surf & Sand is informed and believes that the City does not apply its laws governing the setting of rents, the closure of mobilehome parks (or the elimination of park spaces within a mobilehome park) or the subdivision of mobilehome parks in the same manner for privately owned parks as it does to City-owned or tenant owned parks. For example:

a. Surf & Sand is informed and believes and thereon alleges that the City actively supported the subdivision of Turner Lane after the Park was sold to a non-profit organization, but the City actively opposed the subdivision of Surf & Sand,

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

18

1  adopting an urgency ordinance in order to prevent the subdivision;

2      b.    Surf & Sand had the same bona fide intent to subdivide the park, as
3  any other mobilehome conversion approved by the City; and

4      c.    Surf & Sand is informed and believes and thereon alleges that the
5  City-owned mobilehome parks have been allowed to eliminate available mobilehome
6  spaces, convert mobilehomes spaces for use as other purposes, such as storage,
7  thereby reducing the availability of affordable housing, though such alternatives are
8  not equally available, and in similar terms, to Surf & Sand.

9      45.    The City has engaged in a course of conduct designed to effectively
10  confiscate privately held mobilehome parks for the benefit of park tenants and to
11  require Plaintiff and other park owners to provide "affordable housing" stock for the
12  City.  In the process, the City has taken the vast majority of the value of Surf &
13  Sand's property without compensation.

14  ## FIRST CAUSE OF ACTION

15  ### (Denial of Equal Protection - As Applied - 42 U.S.C. § 1983)

16      46.    Surf & Sand realleges the allegations contained in paragraphs 1 through
17  45 of this Complaint and incorporates same by reference as if fully set forth herein.

18      47.    Surf & Sand is informed and believes, and thereon alleges, that
19  Defendants' actions and positions in applying the RCO, PCO and adopting the
20  Conversion Ordinance, as alleged herein, were designed to deprive and deny Surf &
21  Sand equal protection under the law as guaranteed by the Fourteenth Amendment of
22  the United States Constitution. *Willowbrook v. Olech*, 528 U.S. 562, 564-565 (2000).

23      48.    Surf & Sand is informed and believes and thereon alleges that the
24  purpose for treating Surf & Sand differently from other property owners within the
25  City of Capitola, including resident-owned and City-owned mobilehome parks, is to
26  facilitate the City's efforts and goals to convert Surf & Sand's property to the use and
27  benefit of tenants.  The City by:  (1) intentionally depriving such Park owners of the
28  economic value of their assets; (2) preventing such Park owners from closing the

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

Parks; and (3) preventing the conversion of Parks in order to force Park owners to sell their property to the City or tenant-supported entities at a small fraction of their value has de facto confiscated and taken Plaintiff's property.  In particular, the City adopted the Conversion Ordinance to prevent Surf & Sand from proceeding with the subdivision conversion of the Park, even though only a few months before it had approved the subdivision of Turner Lane under exactly the same existing state law.

49.    The City's differential treatment of Surf & Sand is for reasons wholly unrelated to any legitimate state objective.  The City has intentionally caused the de facto conveyance of the property of Surf & Sand (and similarly situated Park owners) to be given to tenants and the City's actions were undertaken with the purpose of continuing to prevent conversion of Plaintiff's property through the application of the RCO, the adoption of the PCO, and the adoption of the Conversion Ordinance.

50.    After the City enacted the RCO and PCO, there are only two (2) privately owned mobilehome parks out of approximately ten (10) mobilehome parks within the City.

51.    On August 3, 2007, Surf & Sand held a private meeting to discuss the Parkowner's bona fide intent to convert Surf & Sand from a rental mobilehome park to a resident owned mobilehome park.

52.    Three (3) City Council members attended the meeting on August 3, 2007, uninvited.  The City Council members took part in the meeting and made comments to the residents, with one or more City Council members speaking out against the conversion.

53.    Less than one (1) week after the meeting on August 3, 2007, the City enacted the Conversion Ordinance which imposes additional requirements on Surf & Sand in order to complete the conversion process, and creates a presumption that a conversion is not "bona-fide" unless there is approval by a majority of the existing residents.

54.    The requirement for the survey, the presumption created by the survey

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

*FIRST AMENDED COMPLAINT*

and the substantive requirements enacted by the city which must be met prior to a survey are not rationally related to determining whether Surf & Sand has a bona fide intent to subdivide.

55.    The City's differential treatment is substantiated by the fact that the City approved the conversion of Turner Lane mobilehome park without enacting an "urgency" ordinance that imposed additional restrictions and without a presumption that a conversion is not "bona fide" unless it is approved by a majority of the existing residents.

56.    The City has denied Surf & Sand equal protection of the laws because the City has treated Plaintiff differently than any other mobilehome park that has gone through the conversion process.   Since there are only two (2) privately owned mobilehome parks remaining in the City, the City's enactment of the "urgency" ordinance is entirely arbitrary and capricious without any legitimate government purpose.   The true purpose of the Conversion Ordinance is to impose additional requirements on privately owned mobilehome parks and to prevent conversions of any privately owned mobilehome parks.

57.    The enactment of the Conversion Ordinance was a display of arbitrary power, and not an exercise of reasonable judgment.   The Conversion Ordinance has no bearing on whether the park owner had a bona fide intent to convert the mobilehome park.   As a result, Surf & Sand has been denied equal protection of the laws in violation of the United States Constitution.

58.    As a direct and proximate result of the above-described actions by Defendants and each of them, Surf & Sand has been damaged in an amount not fully known but believed to be in excess of Twenty Million Dollars ($20,000,000) and within the subject matter jurisdiction of this Court, all subject to proof at the time of trial herein.

59.    Surf & Sand has incurred and will continue to incur, attorneys' fees, expert witness fees, and other fees and costs, as a result of this proceeding, in amounts

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

1 that cannot yet be ascertained but which are recoverable pursuant to the provisions of

2 42 U.S.C. §§ 1983 and 1988.

### SECOND CAUSE OF ACTION

### (Violation of Civil Rights under 42 U.S.C. § 1983

### And The Fifth Amendment "Private Taking of Property"

60.    Surf & Sand realleges and repeats the allegations contained in paragraphs 1 through 59 hereinabove and incorporates same by reference as if fully set forth herein.

61.    Surf & Sand is informed and believes, and thereon alleges, that Defendants' actions and positions, as alleged herein, constitute a private taking of property for the private use of the Park residents, in violation of the Fifth Amendment, applied to state action pursuant to 42 U.S.C. § 1983, as set forth in *Armendariz v. Penman*, 75 F.3d 1311, 1320-21 (9th Cir. 1996); *99 Cents Only Stores v. Lancaster Redevelopment Agency*, 237 F. Supp. 2d 1123 (U.S. Dist. 2001).

62.    The purpose and effect of the Conversion Ordinance was to confer a benefit on a discrete number of private individuals who then resided in the Park and who would acquire the Park pursuant to the Conversion Ordinance.

63.    In particular, the City adopted the Conversion Ordinance to assure that those residents who lived in the Park would not be forced to pay the true fair market value of the underlying property, but instead would be allowed to keep the "equity" created by rent control, which was, in reality, the Park owner's property.

64.    The City has voted to enact and maintain the Conversion Ordinance purely to confer a private benefit.  No studies were undertaken by the City to assess the merits of mobilehome park subdivisions, the additional burdens imposed by the proposed Conversion Ordinance, or the private transfer of wealth being promoted by the proposed Conversion Ordinance.    Any public benefit is non-existent and pretextual.

65.    In fact, the City only enacted the Conversion Ordinance to prevent Surf

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

& Sand from subdividing its Park from a rent controlled mobilehome park to a resident owned mobilehome park.  Surf & Sand held a private resident meeting to discuss the subdivision on August 3, 2007.  Three (3) City Council members attended the meeting and made comments about the subdivision.  Less than one (1) week later, on August 9, 2007, the City Council adopted the Conversion Ordinance, which imposes unreasonable burdens on Plaintiff and adopts a presumption that effectively compels Plaintiff to sell its property to the private mobilehome residents at terms favorable to the majority of residents currently living at the Park.

66.    Because the City has sought to compel Plaintiff to sell its property to another private party at a distressed price, the Conversion Ordinance is arbitrary and irrational and fails to meet the "public use" requirement of the Fifth Amendment.

67.    Surf & Sand's Private Takings claim is ripe.  Plaintiff asserts a facial takings claim and is immediately ripe because it challenges the mere enactment of the Conversion Ordinance.  *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992); *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323, 340, f.n. 23 (2005); *Lingle v. Chevron*, 544 U.S. 528, 544-547 (2005).

68.    Under Ninth Circuit precedent, the first prong of the *Williamson* "final decision" requirement for ripeness does not apply to facial takings claims.  *Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1052 (9th Cir. 2004) ("[T]he 'final decision' requirement does not apply to facial takings claims because they, by definition, derive from the ordinance's enactment, not any implementing action on the part of governmental authorities.").

69.    Likewise, Surf & Sand is not required to seek compensation in State Court proceedings under the second prong of *Williamson* before seeking compensation in Federal Court because the "private taking" cannot be constitutional even if compensated *Armendariz, supra*, 75 F.3d 1311, 1321, fn. 5, citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194-197, 105 S.Ct. 3108 (1985).  In any event, any attempt to seek compensation would be futile.

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

*FIRST AMENDED COMPLAINT*

70.    As a direct and proximate result of the above-described actions by Defendants and each of them, Surf & Sand has been damaged in an amount not fully known but believed to be in excess of Twenty Million Dollars ($20,000,000) and within the subject matter jurisdiction of this court, all subject to proof at the time of trial herein.

71.    Surf & Sand has incurred and will continue to incur, attorneys' fees, expert witness fees, and other fees and costs, as a result of this proceeding, in amounts that cannot yet be ascertained but which are recoverable pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

## THIRD CAUSE OF ACTION

### (Violation of Civil Rights under 42 U.S.C. § 1983

### And Violation of the Fifth Amendment for Facial Taking – Conversion

### Ordinance)

72.    Surf & Sand refers to, realleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 71 of this Complaint.

73.    Surf & Sand is informed and believes, and thereon alleges, that the City's application of the RCO, PCO and conversion constitute a facial taking of property and is contrary to the Fifth Amendment of the United States Constitution on the following grounds:

a.    The adoption of the Conversion Ordinance forces Surf & Sand to continue in operation as a mobilehome park by eliminating the only economically possible alternative to continued operation and takes from Surf & Sand the right to decide whether and on what terms to sell its property.  The Conversion Ordinance gives the Park residents the right to determine whether such a sale can occur and under what terms.  The adoption of the Conversion Ordinance appropriates Surf & Sand's right to sell its property to persons of Plaintiff's choice and the City has thus "[extinguished] a fundamental attribute of ownership," in violation of federal and state Constitutions. *Agins v. Tiburon,* 447 U.S. 255 (1980).

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

24

1    b.    Surf & Sand raises this cause of action as a facial claim because

2 there is no circumstance under which a vote of tenants can be used as criteria for

3 determining whether a property owner can sell or change the use of its property.  So

4 long as the use of the property is consistent with existing land use regulations, the

5 property owner has the sole right to decide whether to continue that use or undertake

6 another use.  See *Yee v. City of Escondido*, 503 U.S. 519 (1992).

7    74.    Surf & Sand's Public Takings claim is ripe.  Plaintiff asserts a facial

8 takings claim and is immediately ripe because it challenges the mere enactment of the

9 Conversion Ordinance.  *Yee, supra*, 503 U.S. at 534 (1992); *San Remo Hotel, L.P. v.*

10 *City and County of San Francisco*, 545 U.S. 323, 340, f.n. 23 (2005); *Lingle v.*

11 *Chevron*, 544 U.S. 528, 544-547 (2005).

12    75.    Under Ninth Circuit precedent, the *Williamson* first prong "final

13 decision" requirement does not apply to facial takings claims.  *Ventura Mobilehome*

14 *Communities Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1052 (9th

15 Cir. 2004) ("[T]he 'final decision' requirement does not apply to facial takings claims

16 because they, by definition, derive from the ordinance's enactment, not any

17 implementing action on the part of governmental authorities.").

18    76.    Likewise, Surf & Sand is not required to seek compensation in State

19 Court proceedings under the second prong of *Williamson* before seeking

20 compensation in Federal Court any pursuit of a state law remedy would be futile.

21 *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194-

22 197, 105 S.Ct. 3108 (1985).  There is no need to satisfy the second prong of the

23 *Williamson* ripeness requirement when the state law procedures are shown to be

24 "unavailable or inadequate." (*Id.*)

25    77.    "[O]nce it becomes clear that . . . the permissible uses of the property are

26 known to a reasonable degree of certainty, a takings claim is likely to have ripened."

27 *Palazzolo v. Rhode Island*, 533, U.S. 606, 620 (2001).  The enactment of the

28 Conversion Ordinance, in conjunction with the RCO and PCO clearly limits the

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

permissible uses of Surf & Sand to a reasonable degree of certainty. The claims asserted by Plaintiff require no further development, and the enactment of the Conversion Ordinance provide more than sufficient certainty to provide a basis for Plaintiff's constitutional claims.

78.    Surf & Sand has been damaged by the taking of its property in an amount to be proven at trial, but Surf & Sand is informed and believes it has been damaged in an amount of not less than Twenty Million Dollars ($20,000,000).

79.    Surf & Sand has incurred and will continue to incur attorneys' fees, expert witness fees, and other fees and costs, as a result of this proceeding, in amounts that cannot yet be ascertained but which are recoverable pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

## FOURTH CAUSE OF ACTION

### (Violation of Civil Rights under 42 U.S.C. § 1983

### And Violation of the Fifth Amendment for Facial Taking – RCO, PCO and

### Conversion Ordinance)

80.    Surf & Sand refers to, realleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 79 of this Complaint.

81.    Surf & Sand is informed and believes, and thereon alleges, that the City's application of the RCO, PCO and conversion constitute a facial taking of property and is contrary to the Fifth Amendment of the United States Constitution on the following grounds:

a.    The effect of adoption of the Conversion Ordinance, when combined with the effect of the RCO, the PCO, and the California Mobilehome Residency Law ("MRL"), is to take all or substantially all of the fundamental attributes of property ownership from Surf & Sand. The City has confiscated the overwhelming majority of the value of Plaintiff's property. The PCO and Conversion Ordinance deny Surf & Sand the right to stop doing business as a mobilehome park and the MRL forces Surf & Sand to grant an indefinite right of possession to Park

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

tenants at space rents which are a minuscule fraction of fair market value. For all intents and purposes, the City has appropriated the Park for the benefit of the tenants and for the stated purpose of protecting affordable housing for the City. Property consists mainly of three powers: possession, use, and disposition. *U.S. v. General Motors Corp.*, 323 U.S. 373, 377-378 (1945). The MRL, combined with the RCO, the PCO and the Conversion Ordinance have deprived Surf & Sand of its rights and possession. With the adoption of the Conversion Ordinance, the City has effectively deprived Surf & Sand the right of any economic use and disposition;

      b.    The combined effect of the City's regulation is to compel Surf & Sand to bear a disproportionate individual cost of the City's alleged efforts to provide affordable housing. (*Armstrong v. United States*, 364 U.S. 40 (1960));

      c.    Based on combined effect of the consideration of the overall impact of the City's regulations as set forth herein, the nature of the state interest in regulation, and the reasonable expectations of the owner, as well as other factors recognized by the courts as part of the balancing analysis undertaken to determine a taking under cases such as *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104 (1978); *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302 (2002) and California State Courts in *Kavanau v. Santa Monica Rent Control Board* (1997) 16 Cal. 4th 761, 775-76, Plaintiff's property has been taken.

      82.    Surf & Sand's Public Takings claim is ripe. Plaintiff asserts a facial takings claim and is immediately ripe because it challenges the mere enactment of the Conversion Ordinance. *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992); *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323, 340, f.n. 23 (2005); *Lingle v. Chevron*, 544 U.S. 528, 544-547 (2005).

      83.    Under Ninth Circuit precedent, the *Williamson* first prong "final decision" requirement does not apply to facial takings claims. *Ventura Mobilehome Communities Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1052 (9th Cir. 2004) ("[T]he 'final decision' requirement does not apply to facial takings claims

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

1  because they, by definition, derive from the ordinance's enactment, not any

2  implementing action on the part of governmental authorities.").

3     84.    Likewise, Surf & Sand is not required to seek compensation in State

4  Court proceedings under the second prong of *Williamson* before seeking

5  compensation in Federal Court any pursuit of a state law remedy would be futile.

6  *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194-

7  197, 105 S.Ct. 3108 (1985). There is no need to satisfy the second prong of the

8  *Williamson* ripeness requirement when the state law procedures are shown to be

9  "unavailable or inadequate." (*Id.*)

10    85.    "[O]nce it becomes clear that . . . the permissible uses of the property are

11  known to a reasonable degree of certainty, a takings claim is likely to have ripened."

12  *Palazzolo v. Rhode Island*, 533, U.S. 606, 620 (2001). The enactment of the

13  Conversion Ordinance, in conjunction with the RCO and PCO clearly limits the

14  permissible uses of Surf & Sand to a reasonable degree of certainty. The claims

15  asserted by Plaintiff require no further development, and the enactment of the

16  Conversion Ordinance provide more than sufficient certainty to provide a basis for

17  Plaintiff's constitutional claims.

18    86.    Surf & Sand has been damaged by the taking of its property in an amount

19  to be proven at trial, but Surf & Sand is informed and believes it has been damaged in

20  an amount of not less than Twenty Million Dollars ($20,000,000).

21    87.    Surf & Sand has incurred and will continue to incur attorneys' fees,

22  expert witness fees, and other fees and costs, as a result of this proceeding, in amounts

23  that cannot yet be ascertained but which are recoverable pursuant to the provisions of

24  42 U.S.C. §§ 1983 and 1988.

25  / / /

26  / / /

27  / / /

28  / / /

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

# FIFTH CAUSE OF ACTION

## (Violation of Civil Rights under 42 U.S.C. § 1983

## And Violation of the Fifth Amendment - Due Process)

88.   Surf & Sand refers to, realleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 87 of this Complaint.

89.   Surf & Sand alleges that the actions of the City in adopting the Conversion Ordinance and the Conversion Ordinance itself are arbitrary, capricious and unreasonable, as alleged herein and in the following additional respects:

a.   Plaintiff took the first step toward conversion from a rental mobilehome park to a resident owned mobilehome park on August 3, 2007 by holding a private meeting with its residents to discuss the proposed subdivision and ultimate conversion and to express its bona fide intent in converting the mobilehome park to resident ownership;

b.   At the private meeting on August 3, 2007, three (3) City Council members attended the meeting uninvited and made comments about the proposed subdivision to the Park residents;

c.   Less than one (1) week after Plaintiff held the private resident meeting, the City Council enacted the Conversion Ordinance as an "urgency" ordinance;

d.   The Conversion Ordinance purports to determine whether a subdivision is a "bona-fide" effort by the Park owner to subdivide the Park in compliance with the state laws, but the only stated criteria in the Conversion Ordinance for determining whether the conversion is "bona-fide" is whether a majority of residents support conversion of the Park;

e.   The Conversion Ordinance purports to adopt a "rebuttable presumption" that a conversion is not bona fide where a majority of residents do not support the conversion, but sets forth no grounds or basis for the Park owner to rebut the presumption or any criteria for the City to determine whether the presumption has

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

been rebutted;

f.    The Conversion Ordinance imposes additional notice and disclosure requirements that require a Park owner to spend tens of thousands of dollars simply to proceed with a resident vote, while not applying the same requirements to prior park conversions, including a conversion approved only months before by City, and without making any findings explaining why such disclosure requirements should vary based on who owns the mobilehome park being converted;

g.    The City purported to adopt the Conversion Ordinance as an "urgency" ordinance, even though its stated purpose was to assure compliance with subdivision statutes that already existed, and the same subdivision statutes that the City previously used to approve other mobilehome park conversions;

h.    The only purpose of the Conversion Ordinance was to prevent Surf & Sand from proceeding with subdivision, except on such terms as would be dictated by the City and Park residents.

90.    Surf & Sand has been damaged by the denial of its rights of due process in an amount to be proven at trial, but Surf & Sand is informed and believes it has been damaged in an amount of not less than Twenty Million Dollars ($20,000,000).

91.    Surf & Sand has incurred and will continue to incur attorneys' fees, expert witness fees, and other fees and costs, as a result of this proceeding, in amounts that cannot yet be ascertained but which are recoverable pursuant to the provisions of 42 U.S.C. §§ 1983 and 1988.

## SIXTH CAUSE OF ACTION

### (Inverse Condemnation)

92.    Surf & Sand refers to, realleges and incorporates by reference, each and every allegation contained in paragraphs 1 through 91 of this Complaint.

93.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 in that the pendant State law claim for inverse condemnation arise from the same case or controversy as Plaintiff's Takings claims, Plaintiff's claim for denial of equal

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

1   protection, Plaintiff's claim for deprivation of substantive due process, and Plaintiff's
2   claim for declaratory relief.

3       94.     Surf & Sand allege that the City's adoption of the Conversion Ordinance
4   constitutes a regulatory action that has resulted in a deprivation of a substantial,
5   economically beneficial, and productive use of their land, and, as a result, the City has
6   effected a taking of Plaintiff's land in violation of the Fifth Amendment of the U.S.
7   Constitution.

8       95.     Surf & Sand is informed and believes, and thereon alleges, that the City's
9   application of the RCO, PCO and conversion constitute a facial taking of property and
10  is contrary to the Fifth Amendment of the United States Constitution on the following
11  grounds:

12          a.     The effect of adoption of the Conversion Ordinance, when
13  combined with the effect of the RCO, the PCO, and the California Mobilehome
14  Residency Law ("MRL"), is to take all or substantially all of the fundamental
15  attributes of property ownership from Surf & Sand.   The City has confiscated the
16  overwhelming majority of the value of Plaintiff's property.   The PCO and Conversion
17  Ordinance deny Surf & Sand the right to stop doing business as a mobilehome park
18  and the MRL forces Surf & Sand to grant an indefinite right of possession to Park
19  tenants at space rents which are a minuscule fraction of fair market value.   For all
20  intents and purposes, the City has appropriated the Park for the benefit of the tenants
21  and for the stated purpose of protecting affordable housing for the City.   Property
22  consists mainly of three powers: possession, use, and disposition.   *U.S. v. General*
23  *Motors Corp.*, 323 U.S. 373, 377-378 (1945).   The MRL, combined with the RCO, the
24  PCO and the Conversion Ordinance have deprived Surf & Sand of its rights and
25  possession.   With the adoption of the Conversion Ordinance, the City has effectively
26  deprived Surf & Sand the right of any economic use and disposition;

27          b.     The combined effect of the City's regulation is to compel Surf &
28  Sand to bear a disproportionate individual cost of the City's alleged efforts to provide

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

31

1   affordable housing.  (*Armstrong v. United States*, 364 U.S. 40 (1960));

2           c.      Based on combined effect of the consideration of the overall

3   impact of the City's regulations as set forth herein, the nature of the state interest in

4   regulation, and the reasonable expectations of the owner, as well as other factors

5   recognized by the courts as part of the balancing analysis undertaken to determine a

6   taking under cases such as *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104

7   (1978); *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302

8   (2002) and California State Courts in *Kavanau v. Santa Monica Rent Control Board*

9   (1997) 16 Cal. 4th 761, 775-76, Plaintiff's property has been taken.

10          96.     Plaintiff alleges that the actual purpose of the Conversion Ordinance, in

11  conjunction with the RCO and PCO, is to compel it to operate its Property as a

12  mobilehome park, to dedicate the Property to residential use without payment of just

13  compensation, to affect a forced ban on further development of the Property and to

14  effectively foreclose Plaintiff's ability to devote their Property to any other use, other

15  than as a mobilehome park.  The character of the governmental action taken by the

16  City, therefore, forces such an unreasonable economic loss on Plaintiff, and so

17  obviously and purposefully interferes with Plaintiff's fundamental ownership

18  expectations for their Property, that a de facto appropriation of their property has

19  occurred.

20          97.     Plaintiff alleges that the Conversion Ordinance prevents the best use of

21  their land, and serves only to extinguish a fundamental attribute of land ownership,

22  which is the right to possess, use and dispose of its property.  Plaintiff alleges that the

23  Conversion Ordinance destroys this important property right, and, as a result, has

24  suffered a severe diminution in value in its Property.  Plaintiff alleges that the

25  adoption of the Conversion Ordinance has rendered its Property unmarketable for any

26  use, except as a rental mobilehome park, the effect of which compels Plaintiff to

27  maintain the current use of its Property in perpetuity.  Plaintiff contends, therefore,

28  that they have been forever deprived of a vital property interest in their land without

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

*FIRST AMENDED COMPLAINT*

1 || just compensation.

2      98.    Plaintiff alleges that the adoption of the Conversion Ordinance is an

3 unreasonable and unjustified exercise of the City's police power, which amounts to a

4 regulatory taking of its Property by the City.

5      99.    Plaintiff alleges that no reasonable regulatory purpose is accomplished

6 under the Conversion Ordinance by compelling Plaintiff to remain in business as a

7 rental mobilehome park.  Plaintiff contends that in no manner does this advance a

8 legitimate State interest.

9      100.   Plaintiff further alleges that the Conversion Ordinance forces Plaintiff to

10 bear a manifestly disproportionate, unreasonable, and confiscatory burden of a

11 supposed, yet completely unsubstantiated, public benefit compared to other owners of

12 land within the City.

13      101.   As a result of the taking of Plaintiff's Property in this manner by the City,

14 Sand is informed and believes it has been damaged in an amount of not less than

15 Twenty Million Dollars ($20,000,000).  Plaintiff hereby seeks damages for the unjust

16 taking of their Property.

17      102.   Surf & Sand has incurred and will continue to incur attorneys' fees,

18 expert witness fees, and other fees and costs, as a result of this proceeding, in amounts

19 that cannot yet be ascertained but which are recoverable pursuant to the provisions of

20 42 U.S.C. §§ 1983 and 1988.

21                      **SEVENTH CAUSE OF ACTION**

22                          **(Declaratory Relief)**

23      103.   Surf & Sand refers to, realleges and incorporates by reference, each and

24 every allegation contained in paragraphs 1 through 102 of this Complaint.

25      104.   This cause of action is brought pursuant to the Declaratory Judgments

26 Act, 28 U.S.C. § 2201, *et seq.*, for a declaratory judgment and other incidental relief.

27 Plaintiff seeks a declaration and determination of its rights under the Conversion

28 Ordinance.

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

*FIRST AMENDED COMPLAINT*

105.    A party asserting a taking under the Fifth Amendment may pursue declaratory relief. *Babbitt v. Youpee*, 67 F.3d 194, 200 (9th Cir. 1995), *aff'd*, 519 U.S. 234, 243-244 (1997).

106.    Specifically, a controversy has arisen and now exists between Plaintiff and the City, relative to their respective rights and duties concerning whether the Conversion Ordinance has effected an unlawful taking of Plaintiff's property in violation of the Fifth Amendment of the United States Constitution.

107.    An actual controversy has arisen and now exists between Plaintiff and the City, as alleged above, wherein Plaintiff contends that by enacting the Conversion Ordinance, the City has taken action that is void, invalid, and in violation of Plaintiff's constitutional and statutory rights as alleged above.

108.    A judicial declaration that the Conversion Ordinance is unconstitutional and unenforceable is necessary so that Plaintiff may ascertain its rights, duties and obligations and avoid potential penalties, civil liability and action that have already arisen as a result of the controversy over the parties' rights under the Conversion Ordinance. A judicial declaration is appropriate because there is an actual controversy between Plaintiff and the City.

109.    This issue is capable of an immediate and definitive determination, and a resolution of this issue will aid in the termination of the dispute between Plaintiff and the City.

WHEREFORE, Plaintiff prays for judgment as follows:

1.    For a declaration by this Court that Defendant's actions regarding enactment, interpretation and enforcement of the RCO, PCO and Conversion Ordinance are unconstitutional and unlawful, deprive Plaintiff of fundamental constitutional and statutory rights and that Defendants' actions constitute a denial of equal protection under the law, a private taking and a facial taking of property under the United States Constitution;

2.    For a declaration that the Defendant's Mobilehome Rent Control

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

1  Ordinance, Park Closure Ordinance and Conversion Ordinance cannot legally be
2  applied to Plaintiff;

3       3.    For a declaration that the Defendants' adoption of the Conversion
4  Ordinance was unconstitutional and is therefore void and unenforceable;

5       4.    For monetary damages in the amount of $20,000,000.00, or such sum as
6  is proven at trial;

7       5.    For preliminary and permanent injunctive relief, according to proof;

8       6.    For reimbursement of reasonable attorney's fees, and such other costs as
9  are recoverable pursuant to 42 U.S.C. § 1983 et seq. and Section 798.85 of the
10  California Civil Code;

11       7.    For costs of suit incurred herein; and

12       8.    For such other and further relief as the Court deems just and proper.

14  Dated: March 4, 2008         HART, KING & COLDREN

17  By: _____
Robert S. Coldren
18  C. William Dahlin
Mark D. Alpert
19  Beau M. Chung
Attorneys for Plaintiff Surf and Sand, LLC

38019.004/4824-0403-0978v.1

*FIRST AMENDED COMPLAINT*

## REQUEST FOR JURY TRIAL

Plaintiff Surf and Sand, LLC, a California Limited Liability Company hereby requests trial by Jury in the foregoing matter.

Dated: March 4, 2008                    HART, KING & COLDREN

                                        By: _____
                                            Robert S. Coldren
                                            C. William Dahlin
                                            Mark D. Alpert
                                            Beau M. Chung
                                            Attorneys for Plaintiff Surf and Sand, LLC

**HART, KING & COLDREN**
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

36

*FIRST AMENDED COMPLAINT*