Henry E. Heater (State Bar #99007)
Donald R. Lincoln (State Bar #41672)
Linda B. Reich (State Bar #87619)
Endeman, Lincoln, Turek & Heater LLP
600 "B" Street, Suite 2400
San Diego, California 92101-4508
(619) 544-0123
Fax (619) 544-9110

John G. Barisone (State Bar #087831)
City Attorney, City of Capitola
Atchison, Barisone, Condotti & Kovacevich
333 Church Street
Santa Cruz, California 95060-3811
(831) 423-8383
Fax (831) 423-9401

Attorneys For Defendant
City of Capitola

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SURF AND SAND, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>CITY OF CAPITOLA, and DOES 1 through 10, Inclusive<br><br>Defendants. | CASE NO. C07 05043<br><br>Judge: Richard Seeborg<br><br>E-FILING<br><br>DATE:  May 14, 2008<br>TIME:  9:30 a.m.<br>COURTROOM: 3, 5th Floor<br>ACTION FILED: 10/01/07 |

**DEFENDANT'S NOTICE OF MOTION AND MOTION
TO DISMISS FIRST AMENDED COMPLAINT AND
SUPPORTING POINTS AND AUTHORITIES**

I:\1280.010\Pleadings\010 Defs Mot to Dismiss 1AC; P&A's.wpd

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
COMPLAINT AND SUPPORTING POINTS AND AUTHORITIES   C07 05043 RS

# TABLE OF CONTENTS

**PAGES**

NOTICE OF MOTION AND MOTION TO DISMISS ................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................... 2

SUMMARY OF ARGUMENT ............................................................... 2

BACKGROUND ...................................................................................... 2

    A.    Factual Background ................................................................. 2

        1.    City Enacts a Mobilehome Park
            Rent Stabilization Ordinance ........................................ 2

        2.    City Enacts a Mobilehome Park Closure Ordinance ......... 3

        3.    City Enacts an Urgency Ordinance Regulating
            Mobilehome Park Conversions ..................................... 4

    B.    Procedural Background ............................................................ 5

        1.    This Court Dismisses Parkowner's Original Complaint ... 5

        2.    Parkowner Files its First Amended Complaint .............. 6

ARGUMENT ........................................................................................... 7

I.    PARKOWNER'S CLAIMS AGAINST THE
      RCO AND PCLO ARE TIME-BARRED ............................................. 7

II.   PARKOWNER FAILS TO STATE A FACIAL CLAIM
      AGAINST THE CONVERSION ORDINANCE ..................................... 7

    A.    Parkowner Does Not State a Claim for
         Violation of Equal Protection ................................................. 8

    B.    Parkowner Fails to State a Claim for a Private Taking ............ 8

    C.    Parkowner Fails to State a Facial Takings Claim .................. 10

    D.    Parkowner's Substantive Due Process Claim Fails
        Because the PCONO is Rationally Related to a
        Legitimate Government Purpose ........................................... 12

CONCLUSION ...................................................................................... 12

I:\1280.010\Pleadings\010 Defs Mot to Dismiss 1AC; P&A's.wpd

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
COMPLAINT AND SUPPORTING POINTS AND AUTHORITIES    C07 05043 RS

-i-

# TABLE OF AUTHORITIES

**CASES**                                                                            **PAGES**

*99 Cents Only Stores v. Lancaster Redevelopment Agency*
   237 F. Supp. 2d 1123 (C.D. Cal. 2001) .................................. 9,10

*Armendariz v. Penman*
   75 F.3d 1311 (9th Cir. 1996) ............................................. 9

*Cogswell v. City of Seattle*
   347 F.3d 809 (9th Cir. 2003), *cert. denied*, 541 U.S. 1043 (2004) ............... 11

*El Dorado Palm Springs, Ltd. v. City of Palm Springs*
   96 Cal. App. 4th 1153 (2002) .......................................... 4,5, 8,12

*Garneau v. City of Seattle*
   147 F.3d 802 (1998) .................................................... 11

*Hacienda Valley Mobile Estates v. City of Morgan Hill*
   353 F.3d 651 (9th Cir. 1991) ............................................. 7

*Hawaii Housing Auth'y v. Midkiff*
   467 U.S. 229 (1984) .................................................... 8

*Keystone Bituminous Coal Association v. De Benedictus*,
   480 U.S. 470 (1987) .................................................... 11

*Levald, Inc. v. City of Palm Desert*
   998 F.2d 680 (9th Cir. 1993), *cert. denied*, 510 U.S. 1093 (1994) ............... 12

*United States v. Salerno*
   481 U.S. 739 (1987) .................................................... 10

**STATUTES**

Cal. Gov't Code §§ 66473.7, 66474.6 ......................................... 9

Cal. Gov't Code § 66474 .................................................... 9

Cal. Gov't Code § 66475(e) .................................................. 9

Cal. Gov't Code § 66499.30 ................................................. 9

I:\1280.010\Pleadings\010 Defs Mot to Dismiss 1AC; P&A's.wpd
NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
COMPLAINT AND SUPPORTING POINTS AND AUTHORITIES   C07 05043 RS
-ii-

## NOTICE OF MOTION AND MOTION TO DISMISS

To Plaintiff and Its Counsel:

On May 14, 2008, at 9:30 a.m. in Courtroom 3, 5th Floor of the above Court located at 290 South First Street, San Jose, California, Defendant City of Capitola ("City") will move the Court for an Order dismissing Plaintiff's First Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure, Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).

This Court lacks jurisdiction over Plaintiff's ("Parkowner") claims because:

1. Parkowner's facial takings and equal protection claims with respect to City's mobilehome rent stabilization Ordinance No. 770 [1] ("RCO") and mobilehome park closure Ordinance 576 [2] ("PCLO") are barred by the applicable statute of limitations.

2. Parkowner's facial public taking claims are unripe.

The First Amended Complaint fails to state a claim because:

1. The equal protection claims fail because: (a) on its face, City's mobilehome park conversion Ordinance ("PCONO")[3] does not treat similarly situated parkowners differently; and, (b) in any event there is a rational basis for treating privately owned parks differently from resident-owned parks.

2. The private takings claim fails because the PCONO serves a legitimate public purpose.

3. The facial public takings claim fails because on its face neither prevents the conversion of Parkowner's park, nor restricts the price at which its lots can be sold.

---

[1] The RCO is codified as Capitola Municipal Code Chapter 2.18. A copy is attached as Exhibit "A" to Defendant's Request for Judicial Notice ("DRJN").

[2] The PCLO is codified as Capitola Municipal Code Chapter 17.90. A copy is attached as Exhibit "B" to DRJN.

[3] The PCONO is codified as Chapter 16.70 of the Capitola Municipal Code. *See* DRJN, Exhibit "C."

I:\1280.010\Pleadings\010 Defs Mot to Dismiss 1AC; P&A's.wpd

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
COMPLAINT AND SUPPORTING POINTS AND AUTHORITIES    C07 05043 RS
-1-

4. Parkowner's fourth cause of action for violation of substantive due process fails because the PCONO is rationally related to a legitimate government purpose. City bases this motion on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the supporting Request for Judicial Notice ("DRJN"), and all pleadings, papers and records on file in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### SUMMARY OF ARGUMENT

On February 13, 2008, this Court filed its Order Re: Motion to Dismiss Parkowner's original Complaint. In it, the Court ruled that any facial challenges to the RCO and PCLO were time-barred. The Court found Parkowner's public takings claim was unripe because Parkowner had not sought compensation in state court. Finally, the Court ruled that Parkowner's other challenges to the PCONO were unripe because Parkowner had not taken any steps to initiate the conversion process. The court gave Parkowner leave to amend to cure this ripeness defect. In doing so, however, it cautioned Parkowner that it should amend its Complaint "if and only if it has a good faith basis for believing that the defect can be cured."

In contravention of this Court's Order, Parkowner's First Amended Complaint makes no allegations that show it has ripened its claims against the PCONO. To the contrary, Parkowner has now announced its intent to <u>close</u> - not <u>convert</u> - its Park. *See* DRJN, Exhibit "D."

Because Parkowner's claims are indistinguishable from those in its original Complaint, the Court should likewise dismiss them.

### BACKGROUND

A. **Factual Background**

1. **City Enacts a Mobilehome Park Rent Stabilization Ordinance**

In November 1979, City enacted Ordinance No. 459 ("RCO"), establishing review of proposed mobilehome park space rent increases. Although over the years there have

been several amendments, the Ordinance has continued in force to the present. The most current version is Ordinance No. 770, which is codified as Capitol Municipal Code Chapter 2.18 entitled, "Mobilehome Park Rent Stabilization." *See* DRJN, Exhibit "A".

Section 2.18.110 states the City's findings that prompted adoption of the Ordinance. The findings include: rapidly rising rents caused by a shortage of vacant spaces for mobilehomes; the large investment mobilehome owners have in their homes; and, the difficulty mobilehome owners face in moving their homes.

Section 2.18.130 prohibits all space rent increases except those permitted under the Ordinance and therefore is considered a "vacancy control" ordinance.[4] Section 2.18.220 permits parkowners to annually increase space rents by the lesser of sixty percent of the change in the applicable Consumer Price Index, or five percent of the existing base rent. This provision is sometimes referred as the "annual permissible increase."

Section 2.18.300 permits parkowners to obtain additional space rent increases to recoup expenses for capital improvements. This provision is sometimes referred to as the "temporary capital improvement increase."

Section 2.18.410 states the Ordinance's presumption that the above space rent increases will provide a parkowner with a fair rate of return. A parkowner may rebut this presumption by making an appropriate application (with necessary supporting documentation) that shows it is not receiving a fair return. If successful, a parkowner will receive an additional space rent increase to ensure its receipt of a fair return. This provision is sometimes referred to as a "special adjustment" or "fair return" provision.

### 2. City Enacts a Mobilehome Park Closure Ordinance

In 1993, City adopted Ordinance 576 ("PCLO") imposing certain procedural requirements on the closure or conversion of mobilehome parks. *See* DRJN, Exhibit "B"

---

[4] The term "vacancy control" refers to restrictions on rent increase upon sale or transfer of a home. It arose in the context of apartment rent control and in a bit of a misnomer with respect to mobilehome rent control because generally mobilehomes remain on their space when sold.

The PCLO essentially implements California Government Code sections 65863.7 and 66427.4 which require a mobilehome parkowner to file an impact report addressing, inter alia, relocation costs to be paid to park residents upon closure or conversion of a park. *See* PCLO § 17.90.010.

Section 17.90.030 specifies the content of the impact report. Section 17.90.060 creates several exemptions from relocation assistance obligation, including a situation where the assistance might cause an economic taking of parkowner's property, *e.g,*: [The] imposition of particular relocation obligations would eliminate substantially all reasonable use or economic value of the property for alternative uses." PCLO § 17.90.060 D.1.

### 3. City Enacts an Urgency Ordinance Regulating Mobilehome Park Conversions

In 2007, City adopted an Ordinance (PCONO) regulating the conversion of mobilehome parks to resident ownership. *See* DRJN, Exhibit "C." PCONO's purpose was to implement California Government Code section 66427.5(d). Section 66427.5(d) was amended effective January 1, 2003 to require a survey of park residents, prior to any hearing on a subdivision map application to convert a mobilehome park to resident ownership. The survey's purpose is to ensure that the proposed conversion is "bona fide" and not a sham. *See* Cal. Gov. Code § 66427.5(d)(West Ann. Supp. 2007), Historical and Statutory Notes at 128.

The issue of sham conversions arises from California Government Code section 66427.5(f)(1) which phases out rent control as to nonpurchasing residents upon the sale of the first unit. Thus a parkowner could purport to subdivide his park, sell only one unit, and price the remaining units so high that no one could buy one. He thereby could effectively remove his park from rent control. In *El Dorado Palm Springs, Ltd. v. City of Palm Springs ("El Dorado")*, 96 Cal. App. 4th 1153, 1165 (2002), the court recognized a city's identical concern over the prior version of section 66427.5. The

I:\1280.010\Pleadings\010 Defs Mot to Dismiss 1AC; P&A's.wpd

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
COMPLAINT AND SUPPORTING POINTS AND AUTHORITIES    C07 05043 RS
-4-

Court, however, held that the solution to closing that loophole was legislative-not judicial. *El Dorado, supra,* 96 Cal. App. 4th at 1165. ("We... agree that the argument that Legislature should have done more to prevent partial conversions or sham transactions is a legislative issue..."). The State Legislature thereafter responded to the *El Dorado* decision by amending section 66427.5 to require a resident survey to determine whether a proposed conversion was bona fide.

Section 66427.5(d) is silent as to the survey's contents. The PCONO therefore details what information is to be provided to residents in conjunction with the survey, in order that residents can make informed decisions as to whether they favor conversion. PCLNO section 1408.070 makes conversion approval contingent upon the conversion being bona fide. If 50% or more of the residents favor conversion, a rebuttable presumption arises that the conversion is bona fide. Conversely, where less than 50% of the residents favor conversion, a rebuttable presumption arises that the conversion is not bona fide. Either presumption may be overcome by the submission of substantial evidence either before or at the hearing.

**B.    Procedural Background**

**1.    This Court Dismisses Parkowner's Original Complaint**

On October 1, 2007, Parkowner filed its Complaint herein seeking declaratory relief, damages, and injunctive relief.

The first cause of action alleged that as-applied, the RCO, PCLO and PCONO, deprive Parkowner of equal protection of the law under the Fourteenth Amendment to the United States Constitution. Specifically, Parkowner alleged that City is treating it differently from the resident-owned Turner Lane mobilehome park, which was converted before the adoption of the PCONO.

The second cause of action alleged that City's actions (apparently in enacting the RCO, PCLO and PCONO) effect a private taking of Parkowner's property in violation of the Fifth Amendment to the United States Constitution.

I:\1280.010\Pleadings\010 Defs Mot to Dismiss 1AC; P&A's.wpd

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
COMPLAINT AND SUPPORTING POINTS AND AUTHORITIES    C07 05043 RS

The third cause of action alleged that City's "application" [*sic,* "enactment"?] of the RCO, PCLO and PCONO effected a "facial taking" of Parkowner's property in violation of the Fifth Amendment.

The fourth cause of action alleged that City's adoption of the PCONO violates substantive due process under the Fifth Amendment.

On November 8, 2007, City filed a Motion to Dismiss along with supporting points and authorities and a request for judicial notice. In it, City argued: the facial challenges to the RCO and PCLO were time-barred; to the extent Parkowner purported to allege as-applied claims, such claims were unripe; and, Parkowner's allegations in any event failed to state a claim on the merits.

Parkowner filed its Opposition and supporting judicial notice request on November 28, 2007. City's Reply was filed on December 5, 2007.

The motion was heard on December 19, 2007, and on February 13, 2008, the Court filed its Order Re: Motion to Dismiss. The Court granted the motion, ruling: (1) the facial challenges to the RCO and PCLO were time-barred; (2) and, the challenge to the PCONO was unripe because Parkowner had not availed itself of the procedures under the PCONO to convert its Park.

The Court also granted Parkowner leave to amend its Complaint to cure the ripeness defect "if and only if it has a good faith belief for believing that the defect can be cured.

2. **<u>Parkowner Files its First Amended Complaint</u>**

On March 4, 2008, Parkowner filed its First Amended Complaint ("FAC"). The FAC's first five causes of action are identical to those contained in its original Complaint. It adds a fifth cause of action for inverse condemnation under state law, and a sixth cause of action for declaratory relief which is basically parasitic to its other claims.

Although the FAC adds new rhetoric, the largest addition appears to large blocks of quotations of text from the PCONO. Significantly, the FAC contravenes the Court's

1  Order by not attempting at all to cure the ripeness defect - which defect was the sole
2  scope of amendment permitted by the Court.  Moreover, not only has Parkowner not
3  taken steps to ripen its PCONO claims, it has instead announced its contrary intent to
4  close the Park under the PCLO.

## ARGUMENT

## I.

## PARKOWNER'S CLAIMS AGAINST THE RCO AND PCLO ARE TIME-BARRED

As this Court previously has ruled, Parkowner's facial claims against the RCO and PCLO are time-barred.  The one-year limitations period began running on their enactment (Hacienda Valley Mobile Estates v. City of Morgan Hill, 353 F.3d 651, 655 (9th Cir. 1991), and has long since expired.  Nothing in the PCONO has altered the impact of these Ordinances on Parkowner so as to restart the limitations clock.

## II.

## PARKOWNER FAILS TO STATE A FACIAL CLAIM AGAINST THE CONVERSION ORDINANCE

In its prior Order, the Court found Parkowner's claims against the PCONO were unripe because it had not taken any steps to convert the Park.  Although a true facial claim may be instantly ripe upon an ordinance's enactment[5], the Court's ruling simply recognized that the PCONO would have no effect on Parkowner until such time as it underwent the conversion process and received a decision.  Under the circumstances, City respectfully submits that the true defect in Parkowner's challenge is that it does not state a claim.

///
///

---

[5] Any facial public takings claim would still have to satisfy the state compensation prong of Williamson.

### A. Parkowner Does Not State a Claim for Violation of Equal Protection

An equal protection claim has two elements: (1) disparate treatment from similarly situated property owners; and, (2) no rational basis for such disparate treatment. Parkowner does not satisfy either element.

First off, because Parkowner has not attempted to convert its Park, its claim is limited to a facial attack. Nothing on the face of the PCONO treats Parkowner differently from other similarly situated parkowners.

Parkowner complains that in the past, City had facilitated the conversion of Turner Lane Mobilehome Park without adopting an ordinance. Aside from the fact that this is not an equal protection claim against the PCONO, Turner Lane is not similarly situated with Parkowner's park. Turner Lane was owned by a resident-owned corporation. As such, it was not subject to rent control under the RCO and there was no danger of a sham conversion to avoid the RCO.

### B. Parkowner Fails to State a Claim for a Private Taking

Parkowner's second cause of action alleges the PCONO effected a private taking of its property. In order to assert such a claim, Parkowner must allege that the Ordinance serves no legitimate public purpose, and was enacted solely to transfer its property to its residents. *See Hawaii Housing Auth'y v. Midkiff* ("Midkiff), 467 U.S. 229, 245 (1984). Here, the PCONO serves legitimate public purposes.

The PCONO was enacted to implement "the mandatory provisions of [California] Government Code sections 66427.5." *See* DRJN, Exhibit "C," PCONO 1607.080, section 4. As discussed above, section 66427.5 was amended to require a survey of mobilehome park residents to ensure that any park conversion is bona fide. Section 4 explains *inter alia*, the need for an urgency ordinance, and the purpose of preventing sham conversions, a purpose that the *El Dorado* court *supra*, stated was a proper legislative response to a legitimate concern. *El Dorado, supra*, 96 Cal. App. 4th at 1165. The PCONO also requires an engineering report assessing the condition of park

infrastructure. PCONO § 1670.040 I. This requirement is not remarkable, but is consistent with other provisions of the Subdivision Map Act. *See* Cal. Gov't Code § 66499.30, *et seq*. The Act requires that local agencies ensure that each subdivision has adequate infrastructure to serve the subdivision, including roads, water, sewer, and public services (Cal. Gov't Code §§ 66473.7, 66474.6, and 66475-66489), that environmental impacts are mitigated (Cal. Gov't Code § 66475(e)) and that the proposed parcels and improvements are appropriate and safe for their intended use. Cal. Gov't Code § 66474.

Parkowner's reliance in its Complaint on *Armendariz v. Penman ("Armendariz")*, 75 F. 3d 1311 (9th Cir. 1996) and *99 Cents Only Stores v. Lancaster Redevelopment Agency ("99 Cents Only")*, 237 F. Supp.2d 1123 (C.D. Cal. 2001), *appeal dismissed*, 60 Fed. Appx. 123, 2003 U.S. App. LEXIS 4197 (9th Cir. 2003), is misplaced. In *Armendariz, supra*, Armendariz had his property condemned for violating local housing ordinances. Armendariz sued alleging there was a scheme to take his property so that a shopping center developer could buy the property. The Ninth Circuit held that Armendariz had stated a cause of action for a "private taking." The Court pointed out that because the City Council had never publicly set forth the purpose for its action, its action was not entitled to the normal deference. *Id.* at 1321.

Here, not only does the PCONO state legitimate public purposes for its enactment, but Parkowner has alleged no facts demonstrating that the City's true intent in enacting and enforcing it was to take away its property. In contrast, the plaintiffs in *Armendariz* submitted documents prepared by city officials that **acknowledged** that the purpose behind the regulations and mass code enforcement sweeps was to deprive the owner of its property. Moreover, here Parkowner can challenge the City's actions through the Ordinance's hearing processes. In contrast, the regulations in *Armendariz* had no hearing process, and the license revocations and building foreclosures occurred without any notice.

///

In *99 Cents Only*, a lessee in a regional shopping center, was informed by a city that Costco, the center's anchor tenant, wanted to expand into its space. After *99 Cents Only* turned down city's offer to purchase its leasehold, the city authorized the condemnation of *99 Cents Only's* leasehold interest, but did not include any findings of blight or other reasons justifying the public purpose of the condemnation action. The district court agreed that this was not a taking for public purpose, pointing out that although normally judicial deference was required, such deference was not appropriate where the ostensibly public use was "demonstrably pretextual."

In *Midkiff, supra*, 467 U.S. at 240, the United States Supreme Court noted:

> There is, of course, a role for courts to play in reviewing a legislature's judgment of what constitutes a public use, even when the eminent domain power is equated with the police power. But ... it is "an extremely narrow" one. ...[D]eference to the legislature's "public use" determination is required "until it is shown to involve an impossibility. ... In short, the Court has made clear that it will not substitute its judgment as to what constitutes a public use "unless the use be palpably without reasonable foundation."

Here the City did make findings justifying legitimate public purposes that are not demonstrably pretextual. Under the circumstances, Parkowner's private taking claim fails.

### C.    Parkowner Fails to State A Facial Takings Claim

Parkowner's third and sixth causes of action allege the PCONO effects a facial taking of its property.

Parkowner's burden on its facial takings claim is to show that no matter how it is applied the Ordinance will deprive it of substantially all economically viable use of its property. *United States v. Salerno*, 481 U.S. 739, 745 (1987)("A facial challenge to a legislative Act, is of course, the most difficult challenge to mount successfully since the challenger must establish that no set of circumstances exists under which the Act would

///

///

be valid." As the Ninth Circuit agreed in *Cogswell v. City of Seattle*, 347 F. 3d 809, 813-14 (9th Cir. 2003):

> In order to prevail on this facial challenge to the [restriction], [plaintiff] must meet a high burden of proof; [he] must 'establish that no set of circumstances exists under which the [restriction] would be valid. The fact that the [restriction] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.

In *Garneau v. City of Seattle ("Garneau")*, 147 F. 3d 802, 807 (1998), the Ninth Circuit noted the "uphill battle" a facial takings claimant had because "[i]n facial takings claims, the inquiry is further limited to whether 'mere enactment' of the regulation has gone too far." In *Keystone Bituminous Coal Ass'n v. De Benedictus*, 480 U.S. 470, 495 (1987) the United States Supreme Court stated:

> The test to be applied in considering this facial [takings] challenge is fairly straightforward. A statute regulating the uses that can be made of property effects a taking if it 'denies an owner economically viable use of his land....'

In *Garneau, supra,* 147 F. 3d at 807-08, the Ninth Circuit emphasized the type of economic impact a plaintiff must show to establish a facial regulatory taking:

> [Plaintiffs must show that the diminution in value [caused his property by the ordinance] is so severe that the [government agency] has essentially appropriated their property for public use.
> . . .
> Plaintiffs have failed to sow the type of '<u>extreme circumstances</u>' necessary to sustain a regulatory takings claim . . .. [Emphasis added.]
>
> Plaintiffs have not generally alleged that the [ordinance] makes it commercially impracticable for them to continue operating their apartment buildings. [Citation] Indeed, not a single member of the plaintiff class had pointed to a single apartment building that can no longer be operated for profit.

Nothing on the face of the PCONO suggests that its mere enactment effected a taking of Parkowner's Park. It neither prevents conversion of the Park nor sets a price limit on lots that may be sold to the Park residents. Until such time as Parkowner applies for subdivision map approval, the PCONO's economic impact, if any, on its property simply cannot be determined.

/ / /

**D.  Parkowner's Substantive Due Process Claim Fails Because the PCONO is Rationally Related to a Legitimate Government Purpose**

Parkowner's fourth cause of action alleges City's enactment of the PCONO and the PCONO itself are arbitrary, capricious, and unreasonable and therefore apparently (from the caption) violate substantive due process. Parkowner's claim is meritless.

In *Levald, Inc. v. City of Palm Desert,* 998 F. 2d 680 (9th Cir. 1993), the Ninth Circuit stated:

> In reviewing economic legislation on substantive due process grounds, we give great deference to the judgment of the legislature. "Ordinances survive a substantive due process challenge if they were designed to accomplish an objective within the government's police power, and if a rational relationship existed between the provisions and purpose of the ordinances."...

Here, as previously discussed, the *El Dorado* court expressly found that there was a legitimate government concern over sham mobilehome park conversions and that it was a proper subject for remedial legislation. 96 Cal. App. 4th at 1165. The California Legislature responded by amending Government Code section 66427.5 to require a resident survey for the purpose of determining whether the proposed conversion of a park is bona fide. The provisions of City's PCONO are rationally related to this legitimate state purpose.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Parkowner's First Amended Complaint.

Respectfully Submitted,

Dated: April 3, 2008

Henry E. Heater
Linda B. Reich
Endeman, Lincoln, Turek & Heater LLP

John G. Barisone
City Attorney, City of Capitola
Atchison, Barisone, Condotti & Kovacevich

By: _____
Henry E. Heater
Attorneys for Defendant City of Capitola

I:\1280.010\Pleadings\010 Defs Mot to Dismiss 1AC; P&A's.wpd

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT AND SUPPORTING POINTS AND AUTHORITIES    C07 05043 RS
-12-