Robert S. Coldren, Esq., Bar No. 81710
Mark D. Alpert, Esq., Bar No. 138152
Beau M. Chung, Esq., Bar No. 240451
malpert@hkclaw.com
**HART, KING & COLDREN**
**A PROFESSIONAL LAW CORPORATION**
**200 Sandpointe, Fourth Floor**
**Santa Ana, California 92707**
**Telephone: (714) 432-8700**
**Facsimile:  (714) 546-7457**

**Attorneys for Plaintiff, SURF AND SAND, LLC**

UNITED STATES DISTRICT COURT OF CALIFORNIA

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SURF AND SAND, LLC, a California Limited Liability Company, | Case No.: C07 05043 RS |
| Plaintiff, | Judge:    Hon. Richard Seeborg<br>Dept.:    Ctrm. 4 |
| v. | **E-FILING** |
| CITY OF CAPITOLA; and DOES 1 through 100, inclusive, | **PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| Defendants. | DATE: May 21, 2008<br>TIME:  9:30 a.m.<br>CTRM: 4 |
| | 1st Amended Complaint<br>          Filed:  March 3, 2008<br>Trial Date:       None Set |

*HART, KING & COLDREN*
*A PROFESSIONAL LAW CORPORATION*
*200 SANDPOINTE, FOURTH FLOOR*
*SANTA ANA, CALIFORNIA 92707*

38019.004/4836-0747-8530v.2

*PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS – C07 05043 RS*

# TABLE OF CONTENTS

**Page**

1.   INTRODUCTION AND SUMMARY OF ARGUMENT.................................1

2.   FACTUAL BACKGROUND...................................................................4

   A.   The Capitola Rent Control Ordinance............................................5
   B.   The Capitola Park Closure Ordinance Is Adopted.............................6
   C.   The City Facilitates the Conversion of Mobilehome Parks to City and Tenant Ownership. ...............................................................7
   D.   The City Prevents Surf & Sand's Conversion. ...............................7

3.   ARGUMENT.......................................................................................9

   A.   The Court's Standard Of Review.................................................9
   B.   Surf and Sand Adequately Alleges A Claim For Private Taking. .......9
   C.   Surf and Sand Adequately Alleges A Claim For Denial of Substantive Due Process. ......................................................12
   D.   Surf and Sand Adequately Alleges a Claim For Denial of Equal Protection............................................................................14
   E.   Surf and Sand's Claims For Private Taking, Denial Of Equal Protection And Denial Of Substantive Due Process Are Ripe. ..........16
   F.   Surf And Sand's Claims For Facial Takings Are Ripe.....................17

      1.   Surf And Sand's Facial Takings Claims Are Not Subject To The *Williamson* Prudential Requirements..........................17
      2.   In The Alternative, This Court Has Prudential Jurisdiction To Hear Surf And Sand's Facial Takings Claims. ...................18
      3.   Surf And Sand Would Not Be Required To Pursue Administrative Remedies That Are Futile Or Do Not Provide Adequate Compensation. .......................................................19
      4.   The Court May Exercise Supplemental Jurisdiction To Hear Surf And Sand's State Inverse Condemnation Claim. ...............................................................................22
      5.   Surf And Sand's Declaratory Relief Claim Does Not Require "State Compensation" ...........................................22

   G.   Surf and Sand Alleges Valid Facial Takings Claims..........................23
      H.   Surf and Sand Asserts Timely Claims All Triggered By the Adoption of The Conversion Ordinance .......................25

4.   CONCLUSION....................................................................................25

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

*PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS*

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*99 Centrals Only Stores v. Lancaster Redevelopment Agency,*
    237 F. Supp. 2d 1123 (C.D. Cal. 2001) ....................................... 11

*Abbott Laboratories v. Gardner,*
    387 U.S. 136 (1967) ................................................................. 17, 18

*Agins v. Tiburon,*
    447 U.S. 255 (1980) ....................................................................... 23

*Armendariz v. Penman,*
    75 F.3d 1311 (9th Cir. 1996) ........................................................... 9

*Armstrong v. United States,*
    364 U.S. 40 (1960) ........................................................................ 24

*Boone v. Redevelopment Agency of City of San Jose,*
    841 F.2d 886 (9th Cir. 1988) ......................................................... 13

*In re Chateaugay Corp.,*
    53 F.3d 478 (2d Cir. 1995) ............................................................ 23

*Cienega Gardens v. United States,*
    331 F.3d 1319 (Fed Cir. 2003) ...................................................... 24

*City of Chi. v. International College of Surgeons,*
    522 U.S. 156 (1997) ...................................................................... 22

*Cleburne v. Cleburne Living Center, Inc.,*
    473 U.S. 432 (1985) ...................................................................... 15

*De Anza Properties X, Ltd. v. County of Santa Cruz,*
    936 F.2d 1084 (9th Cir. 1991) ....................................................... 25

*Department of Agriculture v. Moreno,*
    413 U.S. 528 (1973) ...................................................................... 15

*Dodd v. Hood River County,*
    59 F.3d 852 (9th Cir. 1995) ........................................................... 12

*Eastern Enterprises v. Apfel,*
    524 U.S. 498 (1998) ...................................................................... 23

*Epstein v. Washington Energy Co.,*
    83 F.3d 1136 (9th Cir. 1999) ........................................................... 9

*Equity Lifestyle Properties, Inc. v. County of San Luis Obispo,*
    505 F.3d 860 (9th Cir. 2007) .................................................... 17, 20

*Euclid v. Ambler Realty Co.,*
    272 U.S. 365, 71 L. Ed. 303, 47 S. Ct. 114 (1926) ...................... 12

*Hacienda Valley Mobile Estates v. City of Morgan Hill,*
    353 F.3d 651 (9th Cir. 2003) ..................................................... 4, 19

*Harris v. County of Riverside,*
    904 F.2d 497 ................................................................................... 9

HART, KING & COLDREN<br>A PROFESSIONAL LAW CORPORATION<br>200 SANDPOINTE, FOURTH FLOOR<br>SANTA ANA, CALIFORNIA 92707

*PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS*

# TABLE OF AUTHORITIES

## (Cont'd)

**Page**

*Hawaii Housing Auth'y v. Midkiff,*
467 U.S. 229 (1984)........................................................9, 10, 11

*Hillsborough Township v. Cromwell,*
326 U.S. 620 (1946)..............................................................20

*Kelo v. City of New London,*
545 U.S. 469 (Kennedy, concurring)....................................2, 9, 15

*Keystone Bituminous Coal Association v. DeBenedictis,*
480 U.S. 470 (1987)..............................................................17

*Levald, Inc. v. City of Palm Desert,*
998 F.2d 680 (9th Cir. 1993).................................................14

*Lingle v. Chevron U.S.A., Inc.,*
544 U.S. 528 (2005)......................................................3, 16, 24

*Lynch v. Household Finance Corp.,*
405 U.S. 538 (U.S. 1972).......................................................23

*Macri v. King County,*
126 F.3d 1125 (9th Cir. 1997)................................................16

*Minnesota v. Clover Leaf Creamery Co.,*
449 U.S. 456 (1981)..............................................................12

*No. 84 Employer-Teamster Joint Council v. America W. Holding Corp.,*
320 F.3d 920 (9th Cir. 2003)....................................................9

*Nollan v. Calif. Coastal Commission,*
483 U.S. 825 (1987)........................................................12-13, 23

*Palazzolo v. Rhode Island,*
533 U.S. 606 (2001)............................................................4, 17

*Patel v. Penman,*
103 F.3d 868 (9th Cir. 1996).................................................22

*Penn Central Transport Co. v. New York City,*
438 U.S. 104 (1978)........................................................23, 24

*Shelley v. Kraemer,*
334 U.S. 1.........................................................................23

*Student Loan Marketing Association v. Riley,*
104 F.3d 397 (D.C. Cir. 1997)...............................................24

*Suitum v. Tahoe Reg'l Planning Agency,*
520 U.S. 725 (1997).......................................................4, 17-18

*Thompson v. Consolidated Gas Corp.,*
300 U.S. 55 (1937)................................................................9

**HART, KING & COLDREN**
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

# TABLE OF AUTHORITIES

## (Cont'd)

**Page**

*Usery v. Turner Elkhorn Mining Co.,*
    428 U.S. 1 (1976) ................................................................. 12

*Ventura Mobile home Communities v. City of San Buenaventura,*
    371 F.3d 1046 (9th Cir. 2004)....................................17-18

*Village of Willowbrook v. Olech,*
    528 U.S. 562 (2000) ............................................................ 14

*Washington ex rel. Seattle Title Trust Co. v. Roberts,*
    278 U.S. 116 (1928) ............................................................... 9

*Weinberger v. Wiesenfeld,*
    420 U.S. 636 (1975) ............................................................ 20

*Williamson County Reg'l Planning Commission v. Hamilton Bank,*
    473 U.S. 172 (1985) ...........................................3, 4, 16, 17, 18, 19, 23

*Yee v. Escondido,*
    503 U.S. 519 ................................................................. 10, 23

### STATE CASES

*Cotati Alliance for Better Housing v. City of Cotati*
    148 Cal. App. 3d 280 (1983)............................................. 21

*Donohue v. Santa Paula West Mobile Home Park*
    (1996) 47 Cal. App. 4th 1168 ........................................... 11

*El Dorado Palm Springs v. City of Palm Springs,*
    96 Cal. App. 4th 1153 (Cal. Ct. App. 2002) ................... 11

*Kavanau v. Santa Monica Rent Control Board,*
    16 Cal. 4th 761 (1997)..................................................20, 21

*Oceanside Mobile home Park Owners' Association v. City of Oceanside,*
    157 Cal. App. 3d 887 (1984)............................................. 21

### FEDERAL STATUTES

28 U.S.C. § 1367(a) ..................................................... 4, 23

### STATE STATUTES

California Government Code § 66427.................................... 8

California Government Code section 66427.5 .................... 11

### MISCELLANEOUS

Capitola Municipal Code 16.70.010.................................... 1

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

1. **INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant City of Capitola's (the "City") Motion to Dismiss is predicated on this Court accepting as true the City's superficial and fictional justification for adopting a mobile home conversion ordinance on its face.   Plaintiff Surf and Sand, LLC ("Surf and Sand") alleges that the City adopted the mobile home conversion ordinance[1] ("Conv. Ord.") to stop Surf and Sand from subdividing and converting the park to tenant ownership because such a conversion would allow Surf and Sand to sell lots in Surf and Sand Mobile home Park ("Park") for fair market value.  Surf and Sand amended the complaint to allege facts that support its allegation that the City enacted the Conv. Ord. for an improper purpose and that Surf and Sand's claims are ripe for judicial review.

On August 3, 2007, Surf and Sand took the initial step to subdivide and held a private tenant meeting to discuss the proposed conversion.  Three (3) out of five (5) City Council members attended the private tenant meeting uninvited and council members spoke openly against the proposed conversion to the tenants.  A few days later, the City Council adopted an "urgency" Conv. Ord. obviously designed to prevent Surf and Sand from completing the conversion process.  The practical and intended effect of the Conv. Ord. is to prevent an otherwise bona fide conversion without the approval of a majority of existing mobile home tenants.  With rents frozen at absurdly low levels by rent control, the residents would not consent to the conversion unless the prices of the converted lots were similarly discounted to a fraction of market value.  Likewise, it is obvious Surf and Sand would favor a conversion that would allow it to recover the underlying value of its property.  Under the circumstances, it is plain that the purpose of imposing a majority resident approval is to "protect" the residents from a bona fide conversion from occurring.

The City claims that it adopted the Conv. Ord. on an emergency basis in order to advance the purpose of a state subdivision law designed to assure that conversions

---

[1] Capitola Municipal Code ("Ordinance") § 16.70.010, *et seq.*

*PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS*

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

were "bona fide." Substantial evidence indicates that the City's self-serving finding was entirely pretextual, and designed to conceal the City's true purpose in preventing Surf and Sand from successfully completing the subdivision conversion process.

The substantive thrust of the City's Motion to Dismiss is predicated on the assumption that this Court cannot consider evidence of the circumstances which demonstrate that the actual motivation that drove the City's decision, and that it must accept the self-serving findings made in adopting the Conv. Ord. as true. Not only are the City's arguments entirely premature, the trier of fact can and must look beyond the City's superficial and pretextual findings and allow a trial on the merits where the actual motivation of the City is diaphanously clear. *Kelo v. City of New London*, 545 US. 469, 491 (Kennedy, concurring), Justice Kennedy observed:

> A court confronted with a plausible accusation of impermissible favoritism to private parties should treat the objection as a serious one and review the record to see if it has merits though with a presumption that the government's actions were reasonable and intended to serve a public purpose.

The First Amended Complaint ("FAC") alleges that the Conv. Ord. was adopted to prevent a lawful conversion. There is ample basis to reach this conclusion. The Conv. Ord. illogically presumes that a proposed conversion is not bona fide unless a majority of the current mobile home park tenants approve the conversion. There is no nexus between the ordinance's effect and the supposed objective to ensure bona fide conversions. The residents would never support a conversion that allowed Surf & Sand to sell lots at fair market value. The intended effect of the Conv. Ord. is not to determine whether the park owner has a bona fide intent to convert the park, but to enable the tenants to reject the conversion unless the park owner agrees to sell the converted lots at a level far below fair market value. In essence, the City is asking the Court on a motion to dismiss to ignore reality and common sense and instead adopt the fiction of the stated justification for the Conv. Ord.. The Court cannot dismiss Surf and Sand's substantive due process and private taking claims unless: (1) the trier of fact concludes that the Conv. Ord. is rationally related to establishing a bona fide

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

conversion; and (2) no trier of fact could conclude that the City adopted the Conv. Ord. to prevent conversion.

The City violated Surf and Sand's right to substantive due process because the Conv. Ord. has no rational relationship to its stated purposes, and there is substantial reason to believe the City's purpose in adopting the ordinance was to prevent a lawful bona fide conversion. The ordinance constitutes a private taking because the City's actions were clearly intended to facilitate the taking of property from the park owner for the benefit of the residents. The City violated the equal protection clause because the City treats other similarly situated properties within the City differently, with no rational relationship to a legitimate government purpose. Lastly, since the ordinance extinguishes a constitutionally protected and essential attribute of property ownership, it constitutes a facial regulatory taking. The ordinance gives the tenants of the mobile home park the beneficial value of the underlying real property, at the expense of the park owner.

The procedural thrust of the City's Motion to Dismiss is focused on the assertion that Surf and Sand's facial taking claims are not ripe. Surf and Sand's claims for private taking, denial of equal protection and denial of substantive due process are not subject to the ripeness requirement set forth in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985). Since Surf and Sand's claims for private taking, denial of equal protection and denial of substantive due process challenge whether the City acted in pursuit of a valid public purpose, these claims are "logically prior to and distinct from the question [of] whether a regulation effects a taking." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 543 (2005). Therefore, this Court must address Surf and Sand's claims for private taking, denial of equal protection and denial of substantive due process **before** addressing Surf and Sand's facial takings claims.

The City's argument that Surf and Sand must first seek "state compensation" in order to ripen its facial takings claims in federal court should not be applied in this

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

case for several reasons.  First, the doctrine is prudential, rather than mandatory. *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 (1997).  This Court can and should hear Surf and Sand's facial taking claims at the same time it hears Surf and Sand's independent federal claims.  Second, the ripeness doctrine should not be applied where the nature and extent of the regulation is reasonably certain. *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001).  Third, the ripeness doctrine does not apply where it can be established that seeking state compensation would be futile. *Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003).  Fourth, Surf and Sand's declaratory relief cause of action does not seek compensation and is thus not subject to the "state compensation" requirement of *Williamson County*.[2]  Fifth, even assuming that the facial takings claims are not ripe, Surf and Sand is entitled to exercise this Court's supplemental jurisdiction in the inverse condemnation action because it arises out of the same nucleus of facts and circumstances. 28 U.S.C. § 1367.

Finally, Surf and Sand's claims are not barred by the statute of limitations because all of Surf and Sand's facial constitutional claims are triggered by the adoption of the Conv. Ord. in 2007.

## 2.    FACTUAL BACKGROUND

Surf and Sand Mobilehome Park (the "Park") was built by the Reed family approximately 50 years ago and is still owned and managed by the Reeds.  FAC ¶ 7. The Park is located on some of the most valuable ocean front property in America, in Santa Cruz County.    FAC ¶ 7.    The Park operated, without rent control, in unincorporated Santa Cruz County until approximately 1981.  In the mid-1990s, the Park became part of the City of Capitola and therefore became subject to the City's already existing Rent Control Ordinance ("RCO").  FAC ¶ 9.

/ / /

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

---

[2]  The City fails to surmount any challenge to Surf and Sand's claim for declaratory relief, waiving any argument that there is no pending actual case or controversy ripe for judicial review.

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

A.     **The Capitola Rent Control Ordinance.**

The City initially adopted mobilehome rent control in 1979 ("RCO or Rent Control Ordinance")[3] and has had some form of mobilehome rent control continuously in place since that time. FAC ¶ 9. Since at least 1994, the RCO has limited annual "automatic" CPI adjustments to no more than sixty percent (60%) of the increase in the CPI. FAC ¶ 9.

In applying the RCO, the City has officially determined that the question or issue of whether application of the RCO causes a taking is "irrelevant" to its administrative rent increase process. FAC ¶10. Consistent with its interpretation and application of the RCO, the City has established that rent increases under the RCO will be based on the determination of whether the Park owner is earning a "fair return."[4] The RCO prevents the City from considering the underlying value of the property in determining a rent increase and requires the City to keep rents at the lowest level possible that would provide a "fair return" on "reasonable investment," rather than account for the underlying value of the property or alternative uses. FAC ¶¶ 11-14, Ordinance §§ 2.18.400 - 2.18.410.

The Reeds built the property many years ago, their actual investment, even adjusted for inflation, is only a small fraction of the actual underlying, unregulated value of the property. FAC ¶ 15.

As a result of the statutory framework of the RCO, space rents have fallen further and further below fair market rents over time. Space rents are currently, on average, in the range of fifteen percent (15%) of fair market value. FAC ¶ 16. The application of the RCO has forced Surf & Sand to bear the burden of a massive subsidy of space rent. The City and its RCO have deprived Surf & Sand of the vast majority of the value of the subject property. FAC ¶ 17.

---

[3] A copy of the RCO is attached as Exhibit 1 to the Request to Take Notice.

[4] There is no definition of "fair return," and the applicable standard does not consider the issue of whether the application of rent control has caused a taking.

In addition, residents of the Park have benefited from huge transfer premiums in the sale of home - amounting to hundreds of thousands of dollars per home - transferring the underlying value of the property from park owner to tenants due to the effect of the RCO. FAC ¶ 18. Surf & Sand is informed and believes that when homes are sold in place, only a very small percentage – less than 10% - of the sale price represents the actual value of the home. The remainder is the "transfer premium" based on the value of discounted future rent of Surf and Sand's extremely valuable property on the Santa Cruz coastline. FAC ¶ 18.

The RCO, as it has been interpreted and applied by the City, renders it impossible for the Park owner to receive a rent adjustment in an amount that will prevent this enormous subsidy from continuing to be borne by the Reeds and Surf and Sand. FAC ¶ 18.

**B.    The Capitola Park Closure Ordinance Is Adopted.**

The City adopted a Park Closure Ordinance[5] ("PCO") in or about 1993. The PCO specifies a burdensome closure procedure, which, among other things, requires a park owner to provide an appraisal of every mobilehome by an appraiser selected by the City, pay for a relocation specialist approved by the City and, most importantly, establishes proposed measures to "mitigate" the adverse impacts of a park closure upon the mobilehome park residents. See Ord. § 17.90.030, FAC ¶ 19.

The PCO requires a Park owner to pay "relocation costs" which include paying the residents for the "value" of their mobilehome and paying the residents the cost of acquiring a comparable mobilehome or other comparable property. See Ord. § 17.90.070(D), FAC ¶ 21. Because the application of the RCO has artificially inflated the "in place" value of mobilehomes in the City, the PCO effectively transfers the vast majority of the land value of the mobilehome from Plaintiff as the Park owner to the tenant. See Ord. § 17.90.070(D), FAC ¶ 21. The cost of acquiring "alternative comparable housing" would require Plaintiff to pay the fair market value of acquiring

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

---

[5] A copy of the PCO is attached as Exhibit 2 to the Request to Take Notice.

1  comparable housing.  The net effect of the demanded relocation costs would be to
2  force the Park owner to buy its own property from the residents, and to pay them the
3  vast majority at the fair market value of the underlying property, in order to close the
4  Park. See Ord. § 17.90.070(D), FAC ¶ 21.

5  **C.    The City Facilitates the Conversion of Mobilehome Parks to City and**
6  **Tenant Ownership.**

7  Surf and Sand alleges that as the RCO, individually and in concert with the
8  PCO, has became more and more confiscatory, the City sought mechanisms to protect
9  the purported "equity" of tenants, many of whom have paid tens of thousands of
10  dollars more for mobilehomes than such are worth in order to obtain price fixed rent.
11  FAC ¶ 23.  Surf and Sand alleges that the City determined that mobilehome parks
12  would eventually have to be converted to publicly owned assets and/or tenant owned
13  assets to allow tenants to keep the value of the underlying property the City took from
14  park owners for said tenants in the first place.  FAC ¶ 23.  The City's strategy has
15  been hugely successful, resulting in the conversion of all but two mobilehome parks to
16  either City or tenant ownership without compensating the private park owners for the
17  conversion of their property to public and/or private use.  FAC ¶ 24.

18  The City has supported the conversion of mobilehome parks to private
19  ownership where the terms of the sale protected the "equity" the City created through
20  the application of the RCO.  FAC ¶ 25.  Indeed, as recently as 2006 and 2007, the
21  City "facilitated" and supported the confiscation of Turner Lane Mobilehome
22  Park, approving its subdivision to tenant ownership on terms which allowed residents
23  to purchase lots they had previously rented for a fraction of their true market value.
24  *Id.*

25  **D.    The City Prevents Surf & Sand's Conversion.**

26  Surf and Sand concluded that subdividing the Park was the only economically
27  feasible method of recovering the beneficial ownership, control and underlying value
28  of their property.  FAC ¶ 28.  On or about August 3, 2007, the owners of Surf and

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

Sand took the first steps toward an attempt to initiate the process of subdividing the Park, holding a tenant meeting for the purposes of initiating a survey of residents required to subdivide the Park under California Government Code § 66427. FAC ¶ 29. But three (3) out of five (5) of the City Council members, a quorum, attended the meeting uninvited and spoke publicly at the meeting against the proposed conversion. FAC ¶ 29. <u>Only a few days after the City Council members invaded the private meeting</u>, the City adopted the Conv. Ord. as an "urgency ordinance" regulating the conversion of mobilehome parks to resident ownership.[6] FAC ¶ 30.

The Conv. Ord. establishes a presumption that any conversion, which does not have the majority approval of park residents, is not a "bona fide" conversion. Ordinance §16.70.070(c)(1), FAC ¶ 41. No studies were undertaken by the City to assess the merits of mobilehome park subdivisions, the burdens imposed by the new regulatory scheme upon innocent property owners, or the private transfer of wealth being promoted by this proposed legislation. *Id.*, FAC ¶ 42.

The City purported to adopt the Conv. Ord. as an "urgency" ordinance, even though its stated purpose was to assure compliance with statewide subdivision statutes that have been in existence for years. FAC ¶¶ 33-41. In reality, it was adopted to make it impossible for Surf and Sand to proceed with a conversion unless the Park owner would agree to and accept terms of conversion agreeable to a majority of park residents. FAC ¶ 42. The City has acted to protect and make permanent the transfer of wealth caused by the application of the RCO. FAC ¶ 42.

Surf and Sand alleges the City has engaged in a course of conduct designed to effectively confiscate privately held mobilehome parks for the benefit of park tenants and to require Plaintiff and other park owners to provide "affordable housing" stock for the City. FAC ¶ 32. In the process, the City has taken the vast majority of the value of Surf & Sand's property without just compensation. FAC ¶ 32.

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

---

[6] A copy of the urgency ordinance is attached as Exhibit 3 to the Request to Take Notice. The permanently adopted Conversion Ordinance is attached as Exhibit 4.

3.    **ARGUMENT**

A.    **The Court's Standard Of Review.**

All factual allegations set forth in the FAC must be "taken as true and construed in the light most favorable to plaintiffs" for purposes of a Rule 12(b) motion to dismiss. *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999). A FAC should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *No. 84 Employer-Teamster Joint Council v. Am. W. Holding Corp.*, 320 F.3d 920, 931 (9th Cir. 2003).

B.    **Surf and Sand Adequately Alleges A Claim For Private Taking.**

A public agency cannot take property for the benefit of another private person without justifying a public purpose, even if compensation is paid.    *Thompson v. Consolidated Gas Corp.*, 300 U.S. 55, 80 (1937).  Public agencies cannot avoid this limitation by taking property under the mere pretext of a public purpose, when its actual purpose was to bestow a private benefit." *Kelo v. City of New London*, 545 U.S. 469, 478 (2005).  This is because a "purely private taking could not withstand the scrutiny of the public use requirement; it would serve no legitimate purpose of government and would thus be void." *Hawaii Housing Auth'y v. Midkiff*, 467 U.S. 229, 245 (1984).  As a result, a city's ordinance may run afoul of the "public use" requirement and constitute a private taking where, as here, the City's ordinance was adopted "to benefit a particular class of identifiable individuals." *Id*.  The Ninth Circuit observed, "It is overwhelmingly clear from more than a century of precedent that the government violates the Constitution when it takes private property for private use." *Armendariz v. Penman*, 75 F.3d 1311, 1320 (9th Cir. 1996).

It is well established that a landowner has a constitutionally protected right to devote their land to any legitimate use. *Harris v. County of Riverside*, 904 F.2d 497, 503, citing, *Washington ex rel. Seattle Title Trust Co. v. Roberts*, 278 U.S. 116, 121 (1928).  Here, the Conv. Ord. presumes that a proposed conversion is not bona fide if

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

a majority of the tenants do not approve the conversion, completely disregarding the Park owner's intent to undergo a bona fide conversion. With rent controlled rents set at 15% of fair market, why would the residents ever agree to a conversion that would allow lots to be sold at fair market value? Under the circumstances, the park owner has every incentive to subdivide, while the residents have every incentive to fight subdivision. In context, it is apparent that the purpose of the Conv. Ord. was to prevent or challenge a bona fide conversion.

The City's argument requires the Court to pretend that the Conv. Ord. was adopted in some find of factual vacuum, and conclude that the purpose of adopting the Conv. Ord. was to assure that conversion was bona fide simply because the City said so. On a motion to dismiss, the Court cannot ignore the reality that the facts support Surf and Sand's contention that the City adopted the Conv. Ord. to facilitate and support the resident's confiscation of the Reed's property. The Conv. Ord. is designed to extinguish the park owner's constitutionally protected right to convert the mobile home park.

Surf and Sand's private takings claim is also based on the fact that the Conv. Ord. prevents Surf and Sand from subdividing and selling lots at their fair market value, creating a permanent the transfer of the Reeds' accumulated equity in the Park to the existing mobile home tenants. This effect is magnified by the City's application of the rent control ordinance and closure ordinance to the Park. See FAC ¶¶ 27-45. The primary effect of the City's rent control ordinance is that tenants have been able to sell homes for hundreds of thousands of dollars more than they are worth, effectively selling the underlying value of Surf and Sand's property in the form of these sale "premiums." FAC ¶ 18; *Yee v. Escondido*, 503 U.S. 519, 526-527.

The City's reliance on *Midkiff*'s legislative deference reasoning is misplaced because it is predicated on the assumption that the City's decision can never be examined by the Court. Opposition, p. 10, lines 9-14. *Midkiff* clarified that the City will not be entitled to deferential treatment when there is no reasonable foundation for

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

1  the supposed "public use." *Midkiff*, 467 U.S. at 240. Here, there is no reasonable

2  foundation for the City's artificial contention that the Conv. Ord. serves a legitimate

3  public purpose.

4      The City contends that the Conv. Ord. serves a "public" purpose to implement

5  the provisions of California Government Code section 66427.5. Opposition, p. 8,

6  lines 20-22. The "urgency" Conv. Ord. adopted by the City was supposedly adopted

7  to "implement" the "mandatory provisions" a state law that already existed in order to

8  prevent "sham conversions."[7] See, §16.70.010. But the City's stated "public"

9  purpose is demonstrably pretextual. See, *99 Cents Only Stores v. Lancaster*

10 *Redevelopment Agency*, 237 F.Supp.2d 1123 (C.D. Cal. 2001). California

11 Government Code section 66427.5 and the amendments the City relies on have been

12 in place since 2002.

13      The adoption of the Conv. Ord. had nothing to do with assuring that Surf and

14 Sand genuinely intended to convert the park to resident ownership. Surf and Sand

15 initiated the conversion process and held a private tenant meeting to discuss the

16 proposed conversion. A quorum of City Council members attended the meeting,

17 uninvited, and made comments against the proposed subdivision to the tenants. Only

18 a few days after the private meeting, the City Council adopted the Conv. Ord. to

19 prevent Surf and Sand from proceeding with its bona fide conversion. The City did

20

21 [7] The concern over "bona fide" conversions is that park owners may subdivide a mobile

22 home park without any intention of actually converting the park to tenant ownership in order to take advantage of a rent control exemption. See *El Dorado Palm Springs v. City of Palm*

23 *Springs*, 96 Cal. App. 4th 1153, 1166 (Cal. Ct. App. 2002) (If conversion fails and no units are ever sold, section 66427.5 cannot be used to evade a local rent control ordinance.) In

24 *Donahue*, the park owner argued the mere filing of a subdivision application resulted in an exemption from state rent control laws. The Court of appeal rejected that position, noting "if

25 respondents are correct, every park owner could purchase a lifetime exemption from local

26 rent control for the cost of filing a tentative map, even if park residents have no ability to purchase and even if local government disapproves the tentative map. Park residents could

27 then be economically displaced by unregulated rent increases. This is the very circumstance section 66427.5 was enacted to prevent." *Donohue v. Santa Paula West Mobile Home Park*

28 (1996) 47 Cal. App. 4th 1168, 1175.

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

not conduct any studies to assess the merits of mobile home park subdivisions, the burdens that would result from the adoption of the Conv. Ord., or whether the Conv. Ord. would result in a private transfer of wealth. FAC ¶ 42. With rents at a fraction of fair market, the City knew that resident approval would be impossible – unless the Reeds surrendered the appreciation in value of their property and sold the converted lots at a massive discount from fair market value. Why impose a majority support requirement in this context unless the purpose was to prevent conversion based on fair market value of the property? Surf and Sand has alleged a colorable claim that the City's stated basis for adoption was entirely pretextual. The trier of fact  should be allowed to determine whether, in fact, the City's true purpose was to prevent a bona fide conversion. As part of the Court's inquiry into whether the City imposed the Ordinance under the mere pretext of a public purpose, the Court must examine whether there is any connection between the operative provisions and the asserted purposes of the Ordinance. *Nollan v. Calif. Coastal Comm'n*, 483 U.S. 825, 837 (1987); *Yee*, 503 U.S. at 530.

## C.    Surf and Sand Adequately Alleges A Claim For Denial of Substantive Due Process.

To establish a violation of Surf and Sand's right to substantive due process, Plaintiff must allege that the County's actions were "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Dodd v. Hood River County*, 59 F.3d 852, 864 (9th Cir. 1995); citing, *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 71 L. Ed. 303, 47 S. Ct. 114 (1926).

Plaintiff must allege that the interference with property rights was irrational and arbitrary. *Id.*, citing, *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976). Federal judicial interference with a local government zoning decision is proper if the government body could have no legitimate reason for its decision. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981). An ordinance which has no

1  nexus between the effect of the ordinance and the objectives it is trying to advance

2  may adequately raise a substantive due process claim.    "Ordinances survive a

3  substantive due process challenge if they [are] designed to accomplish an objective

4  within the government's police power, and if a rational relationship exists between the

5  provisions and purpose of the ordinance." *Boone v. Redevelopment Agency of City of*

6  *San Jose*, 841 F.2d 886, 892 (9th Cir. 1988).    The Court must look beyond the mere

7  pretext of the City's purpose of the ordinance, and examine whether there is any

8  connection between the effect of the ordinance and the purported purpose of the

9  Ordinance. *Nollan, supra*, 583 U.S. at 837; *Yee*, 503 U.S. at 530.

10    The Conv. Ord. has no nexus between the effect of the ordinance and the

11  objectives it is trying to advance.    The Conv. Ord. presumes that a proposed

12  conversion is not bona fide unless a majority of the tenants approve the conversion.

13  With rents at 15% of market value, it would be irrational for the residents to approve a

14  subdivision that would allow the lots to be sold at their fair market value.    The City's

15  adoption of the Conv. Ord. must be considered in this factual context.    The assertion

16  that the goal of the City was to make sure Surf and Sand was truly trying to subdivide

17  is ludicrous in context.    The City adopted an exhaustive and expensive procedure for

18  conversion along with the majority vote presumption.    Yet, the City knew that such a

19  majority approval could never be reached, no matter how bona fide the seller's intent.

20  The Conv. Ord. has nothing to do with assuring that conversion is bona fide and

21  everything to do with preventing a conversion that would allow the Reeds to sell their

22  property at market value.    On a motion to dismiss, the Court cannot close its eyes to

23  the reality and simply accept the City's self-serving justifications on their face.

24    The fundamental flaw in the Conv. Ord. is that it improperly diverts the inquiry

25  of whether a park owner has a bona fide intent to convert the mobile home park from

26  the park owner to the tenants of the mobile home park.    As a result, the Conv. Ord.

27  takes the constitutionally protected right that the park owner has to devote his or her

28  property to any legitimate use and gives that constitutionally protected right to the

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

1    existing tenants of the mobile home park.

2    The City's reliance on *Levald* is misplaced. Opposition, p. 12, lines 8-11.

3    *Levald* dealt with the effect of a vacancy control ordinance in connection with an

4    existing rent control ordinance. *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680 (9th

5    Cir. 1993). The mobile home park owner did not allege specific facts relating to the

6    enactment of the vacancy control ordinance and merely claimed that the effect of the

7    vacancy control ordinance violated the park owner's right to substantive due process.

8    Unlike Surf and Sand, the park owner did not raise any additional facts that raised any

9    concern over the City Council's action. Thus, the *Levald* Court held that the

10    legislature is generally given deferential treatment if the legislation was ***designed*** to

11    accomplish their objective. *Id.*, emphasis added. Here, however, Surf and Sand have

12    alleged facts that show the legislation was not designed to accomplish their objective.

13    Surf and Sand has alleged that the ordinance (i) had no nexus between the effect of the

14    ordinance and its stated objective; (ii) that the City enacted the ordinance only a few

15    days after a quorum of City Council members invaded a private tenant meeting

16    discussing the proposed conversion; (iii) that the City Council Members openly spoke

17    to the tenants about the proposed conversion at the private meeting; and (iv) that the

18    City has approved the conversion of other mobile home parks, and did not have the

19    "urgency" to enact the emergency Conv. Ord., and (v) the true purpose of the

20    ordinance was to prevent a bona fide conversion.

21    **D.**    **Surf and Sand Adequately Alleges a Claim For Denial of Equal**

22    **Protection.**

23    A plaintiff adequately alleges a claim for denial of equal protection claim if "the

24    plaintiff alleges that it has been intentionally treated differently from others similarly

25    situated and that there is no rational basis for the difference in treatment." *Village of*

26    *Willowbrook v. Olech*, 528 U.S. 562 (2000). The allegations of arbitrary government

27    action "are sufficient to state a claim for relief under traditional equal protection

28    analysis." *Id.* at 564. *Olech* stands for proposition that a property owner targeted by

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

government action may be a "class of one" for the purposes of an equal protection claim.   As Justice Kennedy observed in his concurrence in *Kelo, supra*, a court applying rational-basis review under the Equal Protection Clause must strike down a government classification that is clearly intended to injure a particular class of private parties, with only incidental or pretextual public justifications.  545 U.S. at 491, citing *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 446-447, (1985); *Department of Agriculture v. Moreno*, 413 U.S. 528, 533-536, (1973).

Surf and Sand has adequately alleged that the City has approved other conversions without the "urgency" to adopt the emergency Conv. Ord..   The City concedes that at least one other mobile home park was converted under the Conv. Ord. without the overwhelming "urgency" to adopt the Conv. Ord..   Opposition, p. 8, lines 10-13.  In addition, Surf and Sand have adequately alleged that the City's enactment of the Conv. Ord. was irrational and arbitrary and had served no legitimate public purpose.   Specifically, Surf and Sand has alleged that (i) the City enacted the ordinance only a few days after a quorum of City Council members invaded a private tenant meeting discussing the proposed conversion; (ii) that the City Council Members openly spoke to the tenants about the proposed conversion at the private meeting; and (iii) that the City has approved the conversion of other mobile home parks, and did not have the "urgency" to enact the emergency Conv. Ord..

Surf and Sand has alleged that it has been treated differently than other property owners and mobile home park owners in the City as part of the City's concerted plan to convert Surf and Sand's property to the use and benefit of the tenants.   Surf and Sand have alleged that the City has effectuated this plan by (1) intentionally depriving such Park owners of the economic value of their assets; (2) preventing such Park owners from closing the Parks; and (3) preventing the conversion of Parks in order to force Park owners to sell their property to the City or tenant-supported entities at a small fraction of its value.  FAC ¶ 35.  Surf and Sand alleged that the City adopted the Conv. Ord. to specifically prevent Surf and Sand from proceeding with the

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

subdivision conversion of the Park, even though only a few months before it had approved the subdivision of Turner Lane under the same existing law without adopting the Conv. Ord..

Surf and Sand also alleges the City's differential treatment of Surf and Sand is for reasons wholly unrelated to any legitimate state objective.  The City has intentionally caused the de facto conveyance of the property of Surf and Sand (and similarly situated Park owners) to be given to tenants and the City's actions were undertaken with the purpose of continuing to prevent conversion of Plaintiff's property through the application of the RCO, the adoption of the PCO, and the adoption of the Conv. Ord.. (FAC ¶ 36)

Therefore, Surf and Sand has alleged a substantial and valid equal protection claim.  Surf and Sand has alleged facts which make give rise to the conclusion that the stated justification for the adoption of the Conv. Ord. was a mere pretext.  This claim cannot be resolved on a motion to dismiss.

**E.**     **Surf and Sand's Claims Not Subject For Private Taking, Denial Of Equal Protection And Denial Of Substantive Due Process Are Ripe.**

It is well established that claims for substantive due process, equal protection and private takings are not subject to the *Williamson* ripeness requirements because these claims are ripe for judicial review as soon as the government action occurs. *Macri v. King County*, 126 F.3d 1125, 1129 (9th Cir. 1997).  This is because these claims challenge the fact that the government did not act in pursuit of a valid public purpose, whereas facial or as-applied takings claims "presupposes that the government has acted in pursuit of a valid public purpose." See, *Lingle*, 544 U.S. at 543.  This makes sense, since a claim for a "private taking," along with claims for a denial of substantive due process and equal protection, cannot be remedied under the Takings Clause because if a government action is found to be impermissible – for instance because it fails to meet the "public use" requirement or is so arbitrary as to violate due process or equal protection, that is the end of the inquiry – no amount of compensation

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

1  can authorize such action. *Equity Lifestyle Properties, Inc. v. County of San Luis*
2  *Obispo*, 505 F.3d 860, 870, n. 16 (9th Cir. 2007).

3  **F.    Surf And Sand's Claims For Facial Takings Are Ripe.**

4      Ripeness is a justifiability doctrine designed "to prevent the courts, through
5  avoidance of premature adjudication, from entangling themselves in abstract
6  disagreements over administrative policies, and also to protect the agencies from
7  judicial interference until an administrative decision has been formalized and its
8  effects felt in a concrete way by the challenging parties." *Abbott Laboratories v.*
9  *Gardner*, 387 U.S. 136, 148-149, (1967).

10      **1.    Surf And Sand's Facial Takings Claims Are Not Subject To**
11          **The *Williamson* Prudential Requirements.**

12      *Williamson* establishes a two prong prudential "ripeness" test for as applied
13  taking claims, requiring (1) a final decision by the government entity and (2)
14  establishing that the plaintiff cannot obtain state compensation. *Williamson, supra,*
15  473 U.S. at 186-197. Facial taking claims, however, do not require a "final decision"
16  because they derive from the enactment of the Ordinance, not any implementation by
17  the governmental authority. *Ventura Mobile home Communities v. City of San*
18  *Buenaventura*, 371 F.3d 1046, 1052 (9th Cir. 2004). In addition, the United States
19  Supreme Court has clarified, after their decision in *Williamson*, that "'facial'
20  challenges to a regulation are generally ripe the moment the challenged regulation or
21  ordinance is passed . . . ." *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725,
22  736, n.10 (1997), citing, *Keystone Bituminous Coal Assn. v. DeBenedictis*, 480 U.S.
23  470, 495 (1987). In *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001), the Supreme
24  Court declined to require a developer of property to seek a permit for development as
25  a condition of bringing a taking claim, observing "once it becomes clear that . . . the
26  permissible uses of the property are known to a reasonable degree of certainty, a
27  takings claim is likely to have ripened." *Id.* at 620.

28      Here, Surf and Sand raises only facial takings claims and do not raise "as-

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

applied" takings claims. Since these claims ripen the moment the regulation is passed, Surf and Sand's facial takings claims are ripe for judicial review. The Conv. Ord. is the final piece of the puzzle which clarifies the permissible uses of Surf and Sand to a reasonable degree of certainty. The RCO imposes massive rent subsidies, at the park owner's expense, if the park owner seeks to continue operating the mobile home park. The PCO imposes numerous obligations on park owner's making it economically unfeasible to close a mobile home park. Finally, the Conv. Ord. imposes an unrealistic and illogical requirement that the existing tenants of the mobile home park agree to the terms of the conversion before the park owner attempts to convert a privately held Mobil home park to a tenant owned mobile home park. Since the Conv. Ord. clarifies the permissible uses of a mobile home park within the City, Surf and Sand's facial takings claims are ripe.

### 2.    In The Alternative, This Court Has Prudential Jurisdiction To Hear Surf And Sand's Facial Takings Claims.

If this Court rules that Surf and Sand's facial takings claims are subject to the *Williamson* prudential ripeness requirements, only the second "state compensation" prong is relevant to Surf and Sand's claims. See, *Ventura Mobile home Communities*, *supra*, 371 F.3d at 1052.

Ripeness is a justifiability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-149, (1967). The ripeness doctrine under *Williamson* is "prudential" rather than mandatory. *Suitum*, *supra*, 520 U.S. at 734. Prudential ripeness is focused on the question of whether (1) whether an issue is fit for judicial decision and (2) whether and to what extent the parties will endure hardship if decision is withheld. See *Abbott, supra*, 387 U.S. at 148-49.

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

This case does not involve a question of becoming entangled in an abstract dispute.    Surf and Sand brings two separate facial challenge based on the unambiguous language of the City's Conv. Ord., itself, and combined with its rent control and closure ordinance.    This Court need only assume the City's ordinances mean exactly what they say.    In addition, the existence of other related federal claims militates in favor of exercising prudential jurisdiction.

Surf and Sand will undoubtedly be harmed if its claims are split or it is forced to wade through years of expensive administrative proceedings in order to have its facial takings claims heard.    The effect of denying prudential jurisdiction over Surf and Sand's taking claims until it completes the useless and costly process of seeking state compensation will inevitably lead to the denial of any opportunity for Surf and Sand to assert its claims in this Court.

### 3.    Surf And Sand Would Not Be Required To Pursue Administrative Remedies That Are Futile Or Do Not Provide Adequate Compensation.

The basic premise that underlies the "state compensation" prong of *Williamson* is that there cannot be a "taking without compensation" under the Fifth Amendment, until the governmental entity has refused to compensate the property owner for the taking of its property.    *Williamson, supra*, 473 U.S. at 194-195.    The "state compensation" prong of *Williamson* only applies to taking claims because the refusal of "state compensation" is actually an element of proving a "taking without compensation" under the Fifth Amendment.    *Id.*

A recognized exception to the "state compensation" requirement is the "futility" exception, which permits a claimant to bypass state procedures if such procedures are shown to be "unavailable or inadequate."    *Id.* at 197; see also, *MHC v. San Rafael, supra* at 24.    This "futility" exception allows consideration of takings claims without an administrative application where such an application would be futile, including in the rent control context.    *Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

1    F.3d 651, 655 (9th Cir. 2003), (Plaintiff may bring a facial (takings) challenge without

2    obtaining a final decision from the governmental authority charged with implementing

3    the regulations where doing so would be futile). Other courts have held similarly that

4    it would be futile to force administrative exhaustion before hearing facial challenges

5    where the administrative procedures afforded the plaintiff could not grant the plaintiff

6    the relief sought. (See, e.g., *Weinberger v. Wiesenfeld*, 420 U.S. 636, 641 n. 8 (1975)

7    (no exhaustion required where plaintiff challenges statute that on its face bars relief);

8    *Hillsborough Township v. Cromwell*, 326 U.S. 620, 625 (1946) (no exhaustion

9    required where remedy inadequate).

10    Here, forcing Surf and Sand to apply for conversion will be a completely futile

11    exercise. The City has approved the conversion of other mobile home parks within

12    the City without issue. But only a few days after the City invaded a private tenant

13    meeting held by Surf and Sand to initiate the conversion process, the City adopted the

14    Conv. Ord. as an "urgency" ordinance, which presumes that any conversion is not

15    bona fide absent majority approval of the existing mobile home tenants. In fact, the

16    City Council members who attended the private tenant meeting spoke out publicly

17    against conversion. Of course, when the City adopted the ordinance, it knew that the

18    tenants would not approve any conversion, because the residents would lose their right

19    to rent spaces at a huge discount from fair market levels. In this context, it is obvious

20    that the City acted to prevent Surf and Sand's conversion. In addition, the ordinance

21    adopts expensive and time consuming requirements for conversion. It would truly be

22    an exercise in futility to require Surf and Sand to pursue an administrative process it

23    knows the City will not approve.

24    Under California law, the remedy available for a property owner challenging

25    rents as insufficient or confiscatory is a rent adjustment known as a "*Kavanau*[8]

26    adjustment." *Equity Lifestyle Props. v. County of San Luis Obispo*, supra, 371 F.3d

27    _____

28    [8] Based on the California Supreme Court decision *Kavanau v. Santa Monica Rent Control Bd.*, 16
Cal. 4th 761 (1997).

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

1046 (9th Cir. 2007). But the City's RCO ignores the fair market value of the property and prevents the Reeds from receiving a truly "fair return" on their property. The RCO mandates in § 2.18.400 that ". . . fair rate of return shall be determined with reference to reasonable investment rather than property value." In addition, the RCO requires in §2.18.410 limits increases to of the minimum increase necessary to produce a fair rate of return."[9]

As a result, the RCO, by its explicit terms, prevents the City from considering the underlying value of the property in determining a rent increase and requires the City to keep rents at the lowest level possible that would provide a "fair return" on "reasonable investment," rather than account for the underlying value of the property or alternative uses. FAC ¶ 14. Applying the Ordinance in this fashion is consistent with existing California decisional law under the substantive due process "fair return" standard. See, e.g. *Cotati Alliance for Better Housing v. City of Cotati*, 148 Cal.App.3d 280, 287 (1983); *Oceanside Mobile home Park Owners' Ass'n v. City of Oceanside*, 157 Cal. App. 3d 887, 899 (1984).

The City does not dispute the interpretation of the RCO asserted by Surf and Sand in the FAC. If these allegations are true, proceeding with the conversion or a rent increase application/"*Kavanau* adjustment" would be a futile exercise because the facts demonstrate that the City is openly opposed to the conversion and will not grant a rent increase that reflects the market value of the property. Surf and Sand cannot be required to pursue a "state compensation" remedy that cannot compensate Surf and Sand for the asserted taking. Thus, the claims asserted by Park owners require no further development and are ripe for judicial review.

/ / /

/ / /

/ / /

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

---

[9] Similarly, in Section 2.18.410, the RCO states "If the application is successful, rents shall be increased to the minimum amount necessary to produce a fair rate of return."

*PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS*

### 4.     The Court May Exercise Supplemental Jurisdiction To Hear Surf And Sand's State Inverse Condemnation Claim.

The Supreme Court has long adhered to principles of pendent and ancillary jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that derive from a common nucleus of operative facts. *City of Chi. v. Int'l College of Surgeons*, 522 U.S. 156, 164-165 (1997), (citations omitted). The Ninth Circuit in *Patel v. Penman*, 103 F.3d 868, 877 (9th Cir. 1996) explained:

> Under 28 U.S.C. § 1367(a), a federal court has supplemental jurisdiction over claims "that are so related to claims in the action within [the district court's] original jurisdiction that they form part of the same case or controversy under Article III." Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if (1) the claim raises novel or complex state-law issues; (2) the claim "substantially predominates" over the court's original-jurisdiction claims; (3) the court has dismissed all the original-jurisdiction claims; or (4) in "exceptional circumstances" if there are "other compelling reasons" to decline.

Assuming this Court agrees with the City that Surf and Sand must proceed to seek "state compensation" for that taking claim through an inverse condemnation action and that such remedy exists under state law, Surf and Sand can proceed on its remaining federal claims in this Court and retains supplemental jurisdiction to hear takings claims arising out of state law. Absent a ruling by this Court that Surf and Sand cannot proceed on its other federal claims, there would be no basis for this Court to decline supplemental jurisdiction to hear Surf and Sand's state inverse condemnation claim.

### 5.     Surf And Sand's Declaratory Relief Claim Does Not Require "State Compensation"

Surf and Sand seeks a declaratory relief determination that the adoption of the Conv. Ord. caused a taking. The Supreme Court has recognized that a federal court may issue declaratory judgment concerning whether the government's conduct constituted a "taking" even though the plaintiff had not yet sought "compensation."

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

1   *Eastern Enters v. Apfel*, 524 U.S. 498 (1998); see also, e.g., *Student Loan Marketing*

2   *Ass'n v. Riley*, 104 F.3d 397, 402 (D.C. Cir. 1997) (entertaining declaratory relief

3   request despite the availability of compensatory remedy under the Tucker Act, since

4   the compensatory remedy "does not wipe out equitable jurisdiction"); see also, *In re*

5   *Chateaugay Corp.*, 53 F.3d 478, 491-493 (2d Cir. 1995). In addition, Surf and Sand

6   does not seek compensation as to this claim, and is therefore not subject to the

7   *Williamson's* "state compensation" requirement. *Williamson, supra*, 473 U.S. at 194-

8   197. Since the City fails to address this cause of action, the motion to dismiss should

9   be denied on that basis alone.

10   **6.    Surf and Sand Alleges Valid Facial Takings Claims.**

11   A taking occurs when a public agency has extinguished "a fundamental

12   attribute of ownership," in violation of federal and state Constitutions. See *Agins v.*

13   *Tiburon*, 447 U.S. 255, 262 (1980). A regulation which effectively forces a property

14   owner to continue to operate as a rental mobile home park denies the property owner

15   an essential attribute of ownership. See *Yee v. City of Escondido*, 503 U.S. 519, 527

16   (1992) Similarly, the right to exclude others is one of the most essential sticks in the

17   bundle of property *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831 (1987)

18   The Supreme Court recognized in *Lynch v. Household Finance Corp.*, 405 U.S.

19   538, 544 (U.S. 1972)

20   It cannot be doubted that among the civil rights intended to be protected
     from discriminatory state action by the Fourteenth Amendment are the

21   rights to acquire, enjoy, own and dispose of property. Equality in the
     enjoyment of property rights was regarded by the framers of that

22   Amendment as an essential pre-condition to the realization of other basic
     civil rights and liberties which the Amendment was intended to

23   guarantee." *Shelley v. Kraemer*, 334 U.S. 1, 10. [other citations omitted].

24   (405 U.S. at 544. )

25   Surf and Sand asserts two separate a facial takings claims, applying an ad hoc

26   "balancing test" set forth in *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104

27   (1978). A "*Penn Central*" taking claim involve the balancing of (1) the economic

28   impact of regulation, (2) its interference with reasonable investment-backed

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

expectations, and (3) the character of the governmental actions. *Id*. There are two identifiable strands or theories that support a taking claim, either independently or considered together as part of the balancing analysis.

First, the adoption of the Conv. Ord. on its face denies the Reeds a basis property right that gives rise to a taking claim. The adoption of the Conv. Ord. itself is alleged to cause a taking because it prevents a change of use of the park without the consent of the residents. In other words, it takes away the Reed's right to decide whether to continue to operate the mobilehome park and gives that right to the tenants.

Second, Surf and Sand asserts that the adoption of the Conv. Ord., combined with the existing regulatory schemes, results in a taking under the ad hoc balancing test applied in *Penn Central, supra*. Surf and Sand's facial taking claim is predicated on the ad hoc, three-factor balancing test set forth in *Penn Central*. The Supreme Court in *Lingle* emphasized the overarching principle that guides the application of the "ad hoc" balancing test is:

> . . . barring government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. (*Id*. at 2080, citations omitted.)

By forcing the Reeds to bear the burden this enormous private housing subsidy, the City has imposed a burden on the Reeds that should be borne by the community as a whole. Preventing such improper burden shifting is central to the purpose of the Fifth Amendment. *Armstrong v. United States*, 364 U.S. 40 (1960). See also, *MHC v. City of San Rafael* at 36-37 (holding that the fact that mobile home park owners have been singled out to bear the cost of providing "allegedly affordable housing" weighs in favor of a *Penn Central* regulatory taking claim). The Federal Circuit has also held that regulations which improperly impose the burden of affordable housing on individual property owners are unconstitutional takings. *Cienega Gardens v. United States*, 331 F.3d 1319, 1338 (Fed Cir. 2003).

Surf and Sand alleges that the effect of the adoption of the Conv. Ord. is to make permanent an 85 percent rent subsidy imposed by the City on Surf and Sand, for

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

the benefit of park tenants.  FAC ¶ 45(a).  The level of confiscation has increased over time.  The RCO, on its face, prevents the Reeds from obtaining a rent increase that addresses this confiscation in a material way.  Again, no purpose would be served by examining how these ordinances would be applied.

### G.    Surf and Sand Asserts Timely Claims All Triggered By the Adoption of The Conversion Ordinance

The City argues that Surf and Sand asserts facial challenges to the Rent Control Ordinance and Closure Ordinance which it claims are not timely because both ordinances were adopted more than two years before the filing of the FAC.  The City's argument ignores the fact that each and every claim asserted by Surf and Sand was triggered by the adoption of the Conv. Ord. in 2007.  Surf and Sand alleges causes of action for equal protection, private taking, substantive due process and taking.  As to each and every claim, the relevant triggering event was the City's adoption of the Conv. Ord..

The statute of limitations does not run where a change in the law within the statutory period had a material impact on the plaintiff's rights.  See *De Anza Properties X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084, 1086 (9th Cir. 1991).  The adoption of the Conv. Ord. had a material impact on Surf and Sand's taking claims and that impact is asserted to be the basis of the taking claim, either by itself or as a result of how it affected existing conditions created by the adoption of the RCO and Closure Ordinance.  As a result all of Surf and Sand's claims are timely.

## 4.    CONCLUSION

For the reasons recited above, the City's Motion to Dismiss should be denied.

Dated:  April 23, 2008

HART, KING & COLDREN

By: _____
Robert S. Coldren
Mark D. Alpert
Beau M. Chung
Attorneys for Plaintiff
SURF AND SAND, LLC

HART, KING & COLDREN
A PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707